UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
:
ENIGMA SOFTWARE GROUP USA, LLC,            :
:
                                   Plaintiff,       :
                                                    :       Case No. ___1:16-cv-7885___
                                                    :
                    -against-                       :
                                                    :
MALWAREBYTES INC.,                                  :
                                                    :
                                   Defendant.       :       **COMPLAINT**
                                                    :
                                                    :
                                                    :
--------------------------------------------------------x

Plaintiff Enigma Software Group USA, LLC ("ESG"), by its attorneys, for its Complaint

against Defendant Malwarebytes Inc., formerly known as Malwarebytes Corporation

("Malwarebytes"), respectfully alleges as follows:

## SUMMARY OF THE CASE

1.       This is an action for civil remedies, including injunctive relief and damages, under

the federal Lanham Act and under New York State law, arising out of the unlawful, predatory

and bad faith practices of Malwarebytes, a direct competitor of ESG, aimed at unfairly

competing with ESG in the market for anti-malware and internet security software.

2.       Malwarebytes, a self-professed "industry-lead[er]," has since 2008 provided

consumers with anti-malware and internet security software aimed at protecting consumers'

computers from malicious software (i.e., malware) which includes viruses, spyware and adware.

Its flagship product is known as "Malwarebytes Anti-Malware" ("MBAM").  That product

directly competes with ESG's anti-malware software known as SpyHunter.

3.       As part of the MBAM product, Malwarebytes purports to detect "Potentially

Unwanted Programs" or PUPs and automatically quarantines PUPs and flags them as "threats" for its users as shown in the screen shot below:



4.      Malwarebytes knows that detecting and quarantining a competitor's products like SpyHunter and RegHunter as PUPs would cause immediate harm to the competitor in the form of lost sales and revenues and also cause irreparable harm to the competitor's business reputation as a result of being identified as a "threat" that a consumer should either not download or should remove from his or her computer.

5.      Malwarebytes also knows that a decision to identify competing products like SpyHunter and RegHunter as PUPs would likely result in other anti-malware companies following suit, which would cause exponentially more harm to its competitor in a short amount of time.

6.      Since its inception in 2008, Malwarebytes never identified SpyHunter or RegHunter as PUPs or any other type of malware.

7.      However, on October 5, 2016, Malwarebytes' CEO, Marcin Kleczynski, announced that Malwarebytes was revising its criteria to identify PUPs.  *See* Ex. 1.  Immediately thereafter, Malwarebytes' MBAM product began identifying SpyHunter and RegHunter as PUPs, meaning that Malwarebytes is now falsely representing to the consuming public that Enigma's programs are a "threat" and that the consuming public's security will be compromised if they download SpyHunter or RegHunter or, if already downloaded on a consumer's computer, the consumer does not remove SpyHunter or RegHunter.



8.      In addition, by identifying SpyHunter and RegHunter as PUPs, the MBAM product blocks and/or deactivates SpyHunter and RegHunter from operating on a consumer's computer.

9.      Malwarebytes' deliberate decision to change its PUP definition and begin falsely identifying SpyHunter and RegHunter as PUPs was not coincidental.  Rather, it was a bad faith decision made as a result of a lawsuit that ESG filed against Bleeping Computer LLC

("Bleeping") that is currently pending before this Court as Case No. 1:16-cv-00057-PAE (the "Bleeping Lawsuit").  Malwarebytes' actions show the extent to which Bleeping and Malwarebytes act in concert to promote their mutual interests.

10.     Malwarebytes and Bleeping have an affiliate relationship by which Bleeping promotes the MBAM product and earns commissions from Malwarebytes if a consumer purchases MBAM through a link on Bleeping's website.

11.     In the Bleeping Lawsuit, ESG alleges that Bleeping has engaged in a deliberate scheme of disseminating false, misleading and inaccurate information about ESG and its SpyHunter product and instructing consumers not to install or uninstall SpyHunter but instead to purchase Malwarebytes' competing MBAM product, thereby earning revenues for itself and for Malwarebytes while damaging ESG and thereby promoting Malwarebytes' business interests.

12.     Malwarebytes will be a witness in the Bleeping Lawsuit and in fact must respond to a subpoena for documents in the case by October 12, 2016.

13.     The transparent nature of Malwarebytes' bad faith conduct and its connection to the Bleeping Lawsuit are numerous.  For example, on Malwarebytes' forum where Mr. Kleczynski announced Malwarebytes' purported "New Criteria for Detecting Potentially Unwanted Products (PUPs)," the first question came from a Bleeping "Special Ops Tech" asking "what was added/removed/edited."  *See* Ex. 2.  In response, Malwarebytes explained "[t]he biggest change is this criteria we use: 'predominantly negative feedback or ratings from the user community.'"

14.     Bleeping has attempted to defend its unlawful conduct in the Bleeping Lawsuit by relying on supposed negative feedback from some unidentified "user community."

15.     Further, within hours of Malwarebytes publicly announcing its new stance on

4

PUPs, Bleeping's owner, Lawrence Abrams, posted a news story on the front page of Bleeping's website lauding Malwarebytes new "policy" and copying verbatim Malwarebytes "updated PUP criteria." *See* Exs. 3-4.

16.     The charade that is Malwarebytes' "new" policy was quickly recognized.  A Bleeping "Security Colleague" who posts under the name Angoid commented on Mr. Abrams' front page news story with a thinly veiled admission that Malwarebytes' policy was directed specifically at ESG and SpyHunter, given Bleeping's history of attacking ESG and the ongoing Bleeping Lawsuit: "What would be really strange is if anyone can think of any other anti-malware program that fits any one of those descriptions [the PUP criteria] . . . . not that I can think of one of course :)." *See* Ex. 4.

17.      ESG brings this lawsuit and, if necessary, will move for preliminary injunctive relief to put an immediate stop to the damage and irreparable harm that Malwarebytes has caused and will continue to cause to both ESG and the consuming public as a result of its bad faith campaign of unfair competition and false and misleading statements that identify SpyHunter and RegHunter as "threats" and PUPs and thereby deceive consumers.

## THE PARTIES

18.     Plaintiff ESG is a Florida limited liability company, having merged with a Connecticut limited liability company of the same name.  ESG does business in this District.

19.     Upon information and belief, Defendant Malwarebytes is a corporation organized under the laws of Delaware and headquartered at 3979 Freedom Circle, 12th Floor, Santa Clara, CA 95054.  Malwarebytes was originally incorporated under the laws of Delaware on January 6, 2014 as Malwarebytes Corporation.  On December 21, 2015, Malwarebytes filed a Restated Certificate of Incorporation with the Delaware Secretary of State that amended the company name to Malwarebytes, Inc.

20.     Malwarebytes currently employs a Regional Vice President in the greater New York City area.  *See* Ex. 5.

21.     Even now, Malwarebytes is expanding its presence in the state and district by seeking to hire a Senior Sales Engineer in New York to work with the Regional Sales Manager to "present[] Malwarebytes security solution to prospective customers" and "work closely with customers as their primary point of feedback and resolution of issues."  *See* Ex. 6.

22.     Upon information and belief, Malwarebytes advertises to, provides its software for download to, and has sold its software to consumers residing in the State of New York, including in the Southern District of New York.  That software is currently wrongly detecting ESG's SpyHunter and RegHunter as PUPs and thereby misleading and deceiving consumers in the state.

## JURISDICTION AND VENUE

23.     This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the laws of the State of New York.  This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

24.     Upon information and belief, this Court has personal jurisdiction over Malwarebytes because Malwarebytes regularly transacts business in the State of New York and this judicial district and Malwarebytes has committed tortious acts in the state by wrongly detecting and identifying SpyHunter and RegHunter as PUPs when its software runs scans on computers in this state and district, thereby misleading and deceiving consumers in this state and district.  As a result, Malwarebytes has intentionally availed itself of the privilege of conducting business in this state and district, has purposefully directed activity at this state and district, and has established sufficient minimum contacts with this state and district such that Malwarebytes can reasonably and fairly anticipate being haled into this Court.

6

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) because Malwarebytes is subject to personal jurisdiction in, and so resides in, this district.

## FACTS

### Background

26.     ESG develops and markets computer security products with a particular focus on protecting its millions of customers from computer hacks, system breaches, identity theft and system computing malware, as well as other computer security threats.

27.     ESG protects its customers from this array of serious risks by providing software that detects and removes malware, enhances Internet privacy, and eliminates other security threats.

28.     ESG's flagship anti-malware product is a software program called SpyHunter, which presently is in version 4.

29.     SpyHunter is an adaptive malware detection and removal tool that provides rigorous protection against the latest malware threats including spyware, Trojans, rootkits, and other malicious software.

30.     Consumers can download a free scanning version of SpyHunter through a link entitled "Download Free Scanner."  The scanner detects whether a computer has malware or other threats.

31.     ESG informs consumers that they also have the choice to buy a license to the full version of SpyHunter and provides consumers with a "Buy Now" link.  The full version of SpyHunter includes the scanner, tools to remove malware and other security protection tools.

32.     ESG's advanced Windows registry cleaner and PC optimizer is a software program called RegHunter.  It repairs, restores, and boosts the performance of computers running the Windows operating system by removing registry errors, cleaning computer file clutter,

defragmenting hard drives, and other optimizations.

33.     ESG sells licenses to SpyHunter and RegHunter solely over the Internet,
including at its website, <http://www.enigmasoftware.com>.  ESG enjoys worldwide sales of
SpyHunter and RegHunter, including sales to citizens of the State of New York.

34.     ESG's SpyHunter and RegHunter products have received top industry
certifications and have both been certified as TRUSTe Certified Downloads.

35.     ESG is a Better Business Bureau accredited business.  Better Business Bureau
accreditation standards include a "commitment to make a good faith effort to resolve any
consumer complaints."  ESG has received an "A+" rating from the Better Business Bureau.

36.     Malwarebytes is a direct competitor of ESG in the anti-malware software market
and offers free and paid versions of its competing MBAM software.

37.     MBAM operates by scanning a user's computer for malware and other computer
security threats, detecting any such threats, reporting to the user the results of the detection, and
then taking remedial action, such as preventing a malicious download, removing the threat from
the computer, or providing the user with an option to remove the detected program.

**ESG Files Suit Against Bleeping Computer**

38.     On January 5, 2016, ESG filed a lawsuit against Bleeping seeking redress for
Bleeping's pattern and practice of making false and misleading statements about ESG to drive
consumers away from purchasing ESG's products, including SpyHunter, and toward purchasing
Malwarebytes' products, including MBAM.  The details of Bleeping's smear campaign against
ESG are laid out in full in ESG's Second Amended Complaint, ECF No. 25, *Enigma Software
Group USA, LLC v. Bleeping Computer LLC et al.*, Case No. 1:16-cv-00057 (PAE) (S.D.N.Y.
Mar. 18, 2016).

39.     As alleged in the Bleeping Lawsuit, Malwarebytes directly profited and continues

to profit from Bleeping's false and misleading statements about ESG, which drive customers away from ESG and to Malwarebytes. *See id.* at ¶ 77.

40.   Indeed, Malwarebytes and/or its CEO, Mr. Kleczynski, have financially supported Bleeping in the Lawsuit by directly providing money to Bleeping in response to Bleeping's GoFundMe campaign to raise money for its defense costs.

41.   After the Court denied Bleeping's Motion to Dismiss ESG's Complaint finding, among other things, that the alleged false and misleading statements "unmistakably constitute advertisements" for Malwarebytes (ECF No. 45), the parties began fact discovery.

42.   On September 7, 2016, as part of that fact discovery, ESG served Malwarebytes with a subpoena to produce documents, information, or objects pursuant to Rule 45 of the Federal Rules of Civil Procedure ("Subpoena").

43.   The Subpoena requested that Malwarebytes produce documents reflecting the nature of its relationship with Bleeping and the extent of its involvement in Bleeping's smear campaign against ESG.

44.   Malwarebytes is required to produce documents responsive to the Subpoena by October 12, 2016.

**Malwarebytes Revises its Definition of a PUP**

45.   Less than a week before Malwarebytes is required by law to reveal the extent of its involvement in the illegal behavior ESG has pled in the Bleeping Lawsuit, Malwarebytes chose to level a new line of attack against ESG, this time directly interfering with ESG's relationships with existing and prospective customers and engaging in false statements about ESG's SpyHunter and RegHunter products.

46.   On October 5, 2016, Malwarebytes announced that it revised the criteria that its product MBAM uses to detect PUPs. *See* Ex. 1.

9

47.     Malwarebytes markets MBAM as an "anti-malware and anti-spyware scanner" that "detects and removes malware like worms, Trojans, rogues, spyware, bots, and more." *See* https://www.malwarebytes.com/antimalware/.

48.     PUPs, however, are not the malware or spyware programs MBAM purports to detect and remove.

49.     Instead, MBAM now defines PUPs as any program that demonstrates at least one of the criteria that Malwarebytes itself has unilaterally declared makes a program "potentially unwanted." *See* Ex. 7.

50.     Malwarebytes' announced PUP criteria include (1) "obtrusive, misleading, or deceptive advertising, branding, or search practices"; (2) "excessive or deceptive distribution, affiliate or opt-out bundling practices"; (3) "aggressive or deceptive behavior especially surrounding purchasing or licensing"; (4) "unwarranted, unnecessary, excessive, illegitimate, or deceptive modifications of system settings or configuration (including browser settings and toolbars)"; (5) "difficulty uninstalling or removing the software"; (6) "predominantly negative feedback or ratings from the user community"; (7) "diminishes user experience"; and (8) "other practices generally accepted as riskware, scareware, adware, greyware, or otherwise commonly unwanted software by the user community." *Id.*

51.     Malwarebytes further "reserve[d] the right to adjust, expand and update our criteria" for PUP identification "without prior notice or announcements." *Id.*

52.     Malwarebytes has specifically designed these vague and unbounded criteria to enable it to block its users' access to SpyHunter and RegHunter for anticompetitive purposes or merely at its malicious whim.

53.     Unsurprisingly, Malwarebytes' criteria for PUP identification track the allegations

Bleeping made against ESG in its Counterclaims in the Bleeping Litigation.

54.     In fact, upon information and belief, Malwarebytes' revision of its PUP criteria is merely a pretense to begin identifying SpyHunter and RegHunter as PUPs, to damage ESG's business and gain leverage in the Bleeping Lawsuit.

55.      Demonstrating the connection between Malwarebytes' conveniently timed "revision" to its PUP definition and the Bleeping Lawsuit, on *the same day* that Malwarebytes announced its revised definition Bleeping announced the Malwarebytes change as the main story on the front page of its website, proclaiming "Malwarebytes going to battle with PUPs and Adware."  *See* Ex. 3.

### Malwarebytes Begins Detecting and Blocking SpyHunter and RegHunter

56.     Once Malwarebytes announced its new PUP criteria, MBAM began to detect SpyHunter and RegHunter as PUPs and to block their download and installation.

57.     Before October 5, 2016, MBAM had ***never*** designated SpyHunter or any other ESG program a PUP or any other type of "threat" for which the program scans, despite the fact that Malwarebytes and SpyHunter have coexisted in the market for over seven years.

58.     Instead, Malwarebytes designated SpyHunter and RegHunter a "threat" only after it was served with the Subpoena in the Bleeping Litigation and was approaching the date it would have to reveal the extent of its involvement in Bleeping's unlawful and anticompetitive smear campaign.

59.     Since Malwarebytes revised its PUP criteria to specifically target ESG's products, when a user has MBAM installed and attempts to download and install SpyHunter and RegHunter, MBAM prevents the download and installation from completing.

60.     MBAM places the SpyHunter and RegHunter files in a "quarantine."  It further explains to the user that the "threats," *i.e.* legitimate and non-malicious SpyHunter and

RegHunter files, placed in the quarantine "do not pose a threat when quarantined" and if "deleted from quarantine will be permanently removed from [the user's] computer."

61.     MBAM then provides the user with the option to "delete," "delete all," or "restore" the quarantined files.

62.     Even if the user ignores MBAM's unjustified warning against SpyHunter and RegHunter and restores the SpyHunter and RegHunter files on the computer, every subsequent time MBAM scans the computer for threats, it again detects and reports SpyHunter and RegHunter as PUPs and encourages the user to remove the associated files.

63.     As of October 6, 2016, in at least some instances MBAM even more aggressively was automatically preventing the installation of SpyHunter entirely, without the user's consent and without providing the user an option to override MBAM's block.

64.     SpyHunter and ESG's other products are legitimate and pose no security threat to a user's computer.

65.     Malwarebytes knows ESG's products do not pose any security threat.

66.     Malwarebytes has listed ESG's products as PUPs solely as an anticompetitive attempt to avoid adverse consequences in the Bleeping Lawsuit and attempt to drive ESG out of business.

67.     Malwarebytes' conduct is willful and malicious.

68.     Malwarebytes' unlawful conduct is causing and will continue to cause harm to ESG.

69.     Shortly after Malwarebytes began unlawfully identifying SpyHunter and RegHunter as PUPs, ESG began suffering a drop in its sales of SpyHunter and RegHunter licenses.

70.     Additionally, by recommending to users who have already purchased a SpyHunter or RegHunter license and installed the programs that they delete SpyHunter and RegHunter because they are a "threat," ESG will be harmed as users request refunds for the previously purchased licenses.

71.     ESG has no adequate remedy at law for certain of the relief requested below.

## FIRST CAUSE OF ACTION

(Violations of Lanham Act § 43(a))

72.     ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

73.     Malwarebytes' use in commerce of false and misleading statements about ESG SpyHunter and RegHunter constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

74.     Malwarebytes' use in commerce of false and misleading statements about ESG, SpyHunter and RegHunter is likely to deceive consumers as to the nature, quality, and efficacy of SpyHunter and RegHunter, including causing consumers to believe that SpyHunter and RegHunter are malicious or a threat.

75.     Such deception is material as it is likely to influence consumers not to purchase SpyHunter or RegHunter and/or to do business with ESG and to continue to utilize and subscribe to Malwarebytes' MBAM product.

76.     Malwarebytes' false and misleading statements have actually deceived or have the capacity to deceive a substantial portion of their intended audience, *i.e.*, users of MBAM who are also existing or potential customers of ESG and users of SpyHunter and/or RegHunter.

77.     Malwarebytes' false and misleading statements are shown to users of MBAM *every time* a user attempts to download and install SpyHunter or RegHunter and are part of an organized campaign by Malwarebytes to strengthen its position in the market for anti-malware

13

products by unfairly driving consumers away from ESG and SpyHunter and/or RegHunter.

78.     As a direct and proximate result of Malwarebytes' unlawful acts, ESG has suffered and will continue to suffer significant monetary and reputational injury, including losses of sales and a lessening of goodwill associated with its products, in amounts that will be proven at trial but that are believed to or will exceed $75,000, exclusive of interest and costs.

## SECOND CAUSE OF ACTION

(Violations of New York General Business Law § 349)

79.     ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

80.     Section 349 of New York's General Business Law prohibits the use of deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of any service in the State of New York.

81.     Malwarebytes' unfair competition through the wrongful detection of SpyHunter and RegHunter as PUPs in MBAM constitutes deceptive and unfair trade practices.

82.     Each time a consumer who has MBAM installed and running on his or her computer attempts to download and install SpyHunter or RegHunter, MBAM displays to the consumer the deceptive statement that SpyHunter and/or RegHunter is a PUP.  In certain instances, MBAM even automatically blocks the download of SpyHunter and RegHunter without giving consumers the option to override the block.

83.     Malwarebytes' statement that SpyHunter and RegHunter are PUPs and blocking of program downloads are materially misleading to consumers because these acts wrongly suggests that SpyHunter and RegHunter -- two legitimate and highly regarded programs -- are malicious or a threat.

84.     As a result, consumers are harmed by being misled into not downloading effective

14

antimalware software on false pretenses and even prevented from downloading the software without their consent.

85.     ESG has been and continues to be injured as a result of Malwarebytes' deceptive and unfair trade practices, including through losses of sales and a lessening of goodwill associated with its products, in amounts that will be proven at trial but that are believed to or will exceed $75,000, exclusive of interest and costs.

## THIRD CAUSE OF ACTION

(Tortious Interference with Contractual Relations)

86.     ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

87.     ESG has licensed the SpyHunter and RegHunter software to numerous customers.

88.     Malwarebytes knows that individuals seeking to download SpyHunter and/or RegHunter on their computer or who have SpyHunter and/or RegHunter already installed on their computer have licensed that software from ESG.

89.     By displaying messages that SpyHunter and RegHunter are PUPs to MBAM users that either also had SpyHunter or RegHunter installed on their computer or that were seeking to install SpyHunter or RegHunter, and by automatically blocking the download and installation of SpyHunter and RegHunter without user consent, Malwarebytes (i) has intentionally induced users to choose not to install SpyHunter or RegHunter or to delete SpyHunter or RegHunter and (ii) has disabled SpyHunter and RegHunter programs that ESG customers have paid to install and use, causing confusion and anger among ESG's customers.

90.     ESG has already begun receiving customer requests for refunds as a result of Malwarebytes' improper conduct.

91.     As a result of Malwarebytes' tortious interference, ESG has been damaged at least

through loss of license fees in amounts that will be proven at trial but that are believed to or will exceed $75,000, exclusive of interest and costs.

## FOURTH CAUSE OF ACTION

### (Tortious Interference with Business Relations)

92.     ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

93.     Certain computer users who seek to install SpyHunter and/or RegHunter are prospective customers of ESG who have not yet paid the SpyHunter or RegHunter license fee required to obtain full product functionality.

94.     Malwarebytes knows that individuals seeking to install SpyHunter or RegHunter may enter into a business relationship with ESG.

95.     By displaying messages that SpyHunter and RegHunter are PUPs to MBAM users that were seeking to install SpyHunter or RegHunter and by automatically blocking the download and installation of SpyHunter and RegHunter without user consent, Malwarebytes intentionally interfered with the prospective business relationship between those users and ESG by inducing the users not to complete the download and not to license SpyHunter and/or RegHunter.

96.     Wrongfully and misleadingly informing users that SpyHunter and RegHunter are PUPs and automatically blocking their download and installation without user consent is an improper and illegitimate means of competition that Malwarebytes undertook for the purpose of harming ESG's business.

97.     As a result of Malwarebytes' tortious interference, ESG has been damaged at least through loss of license fees in amounts that will be proven at trial but that are believed to or will exceed $75,000, exclusive of interest and costs.

16

## **PRAYER FOR RELIEF**

WHEREFORE, ESG respectfully requests that the Court enter judgment in its favor as follows:

a.       Declaring that Malwarebytes' conduct violates 15 U.S.C. § 1125(a);

b.       Declaring that Malwarebytes' conduct constitutes a violation of New York General Business Law § 349;

c.       Declaring that Malwarebytes' conduct constitutes tortious interference with contractual relations under the laws of the State of New York;

d.       Declaring that Malwarebytes' conduct constitutes tortious interference with business relations under the laws of the State of New York;

e.       Preliminarily and permanently enjoining Malwarebytes from programming MBAM to detect SpyHunter or RegHunter as PUPs and to notify users of that detection;

f.       Preliminarily and permanently enjoining Malwarebytes from programming MBAM to prevent the download and installation of SpyHunter or RegHunter;

g.       Awarding ESG damages in an amount proven at trial and believed to be in excess of $75,000, plus interest;

h.       Awarding ESG punitive damages;

i.       Awarding ESG its attorneys' fees and costs incurred in bringing this action; and

j.       Awarding such other and further relief as the Court deems proper.

## **JURY TRIAL DEMANDED**

ESG demands a trial by jury of all issues so triable in this action.

17

Dated:   New York, New York                   Respectfully submitted,
         October 7, 2016

                                     By:   /s/ Eric A. Prager
                                           _____
                                           Eric A. Prager
                                           K&L GATES LLP
                                           599 Lexington Avenue
                                           New York, NY 10022
                                           Telephone: 212.536.3900
                                           Facsimile: 212.536.3901
                                           eric.prager@klgates.com

                                           &

                                           Terry Budd
                                           Christopher M. Verdini
                                           Anna Shabalov
                                           (*pro hac vice applications to be filed*)
                                           K&L GATES LLP
                                           210 Sixth Avenue
                                           Pittsburgh, PA 15222
                                           Telephone: 412.355.6500
                                           Facsimile: 412.355.6501
                                           terry.budd@klgates.com
                                           christopher.verdini@klgates.com
                                           anna.shabalov@klgates.com

                                           *Attorneys for Plaintiffs*