1  TYLER G. NEWBY (CSB No. 205790)
   tnewby@fenwick.com
2  GUINEVERE L. JOBSON (CSB No. 251907)
   gjobson@fenwick.com
3  SAPNA MEHTA (CSB No. 288238)
   smehta@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA 94104
   Telephone:   415.875.2300
6  Facsimile:   415.281.1350

7  Attorneys for Defendant
   MALWAREBYTES INC.
8

9

10                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  ENIGMA SOFTWARE GROUP USA, LLC,      Case No.: 5:17-cv-02915-EJD

15                         Plaintiff,    **DEFENDANT MALWAREBYTES INC.'S
                                         NOTICE OF MOTION AND MOTION
16          v.                           TO DISMISS FIRST AMENDED
                                         COMPLAINT PURSUANT TO FEDERAL
17  MALWAREBYTES INC.,                   RULE OF CIVIL PROCEDURE 12(b)(6)**

18                         Defendant.    Date:        November 9, 2017
                                         Time:        9:00 AM
19                                       Dept:        Courtroom 4, 5th Floor
                                         Judge:       Honorable Edward J. Davila
20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 2

II.  STATEMENT OF FACTS ................................................................................... 3

A.   Malwarebytes Identifies Potentially Unwanted Programs for Its Customers. ........ 3

B.   Malwarebytes Began Identifying Enigma's SpyHunter and RegHunter Programs as Potentially Unwanted Programs for Its Customers. ................................................... 4

C.   Malwarebytes Users Decide Whether to Use Its Software and Whether to Continue Blocking PUPs. ................................................................................................ 4

D.   The Southern District of New York Transferred Enigma's Suit Against Malwarebytes to This Court. ................................................................................ 5

III. ARGUMENT ...................................................................................................... 6

A.   Legal Standard ................................................................................................ 6

B.   Malwarebytes Is Immune From Plaintiff's Claims Under CDA § 230(c)(2). .......... 6

1.   Malwarebytes Provides Its Users the Technical Means to Restrict Access to Objectionable Materials, and Its Actions are Immune Under CDA § 230(c)(2)(B). ........................................................................... 7

2.   Malwarebytes Is Also Immune Under Section 230(c)(2)(A) Because Its PUP Criteria Are Good-Faith Actions to Restrict Access to Objectionable Materials. ...................................................................... 10

3.   Dismissal of Enigma's Complaint Will Advance the CDA's Express Purpose of Encouraging the Development of Filtering Technologies. ...... 12

4.   Plaintiff's Lanham Act Claim Does Not Escape Immunity. ..................... 13

C.   Plaintiff Fails to State a Claim Under Section 43(a) of the Lanham Act and New York General Business Law Section 349. .................................................... 14

D.   Enigma Has Not Sufficiently Pled Its Tortious Interference Claims. ................... 17

1.   California Law Applies to Enigma's Tortious Interference Claims. ......... 17

2.   Enigma Fails to Sufficiently Allege Tortious Conduct or Any Economic Relationships to Bring a Claim of Tortious Interference With Prospective Business Relations. ................................................................ 18

3.   Enigma Fails to Allege Any Valid Contract With Which Malwarebytes Intentionally Interfered. ...................................................... 20

E.   Enigma's Complaint Should be Dismissed With Prejudice. ............................... 21

IV.  CONCLUSION ................................................................................................... 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990)..................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................6

*Associated Bank-Corp. v. Earthlink, Inc.*,
No. 05-cv-0233, 2005 WL 2240952 (W.D. Wis. Sept. 13, 2005) ...........................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................6

*Browne v. Avvo Inc.*,
525 F. Supp. 2d 1249 (W.D. Wash. 2007) ..............................................................15

*Buxton v. Eagle Test Sys., Inc.*,
No. 08-cv-04404, 2010 WL 1240749 (N.D. Cal. Mar. 26, 2010).............................19

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ..................................................................................7

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999).....................................................................14, 16, 17

*e360 Insight, LLC v. Comcast Corp.*,
546 F. Supp. 2d 605 (N.D. Ill. 2008) ...............................................................10, 11

*Fair Housing Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008)...................................................................................7

*Holomaxx Techs. Corp. v. Microsoft*,
783 F. Supp. 2d 1097 (N.D. Cal. 2011) .............................................................10, 11

*Holomaxx Techs. Corp. v. Microsoft Corp.*,
No. 10-cv-04924, 2011 WL 3740813 (N.D. Cal. Aug. 23, 2011) .............................9

*Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*,
No. 5:12-cv-06209-EJD, 2016 WL 3648716 (N.D. Cal. July 7, 2016) ........18, 19, 20

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)...............................................................................20, 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
63 P.3d 937 (Cal. 2003) .....................................................................................18, 19

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

3

*Kwan v. SanMedica Int'l,*
    854 F.3d 1088 (9th Cir. 2017) ...................................................................6

4

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC,*
    No. 10-cv-02605, 2011 WL 5024281 (N.D. Cal. Oct. 13, 2011) ...........................16

5

6

*Medcalf v. Walsh,*
    938 F. Supp. 2d 478 (S.D.N.Y. 2013) ......................................................20

7

8

*Muldoon v. Tropitone Furniture Co.,*
    1 F.3d 964 (9th Cir. 1993) ..................................................................18

9

*Nelson v. Int'l Paint Co.,*
    716 F.2d 640 (9th Cir. 1983)............................................................17, 18

10

11

*ONY, Inc. v. Cornerstone Therapeutics, Inc.,*
    720 F.3d 490 (2d Cir. 2013) ...........................................................14, 15

12

13

*Parekh v. Cain,*
    96 A.D.3d 812 (N.Y. Ct. App. 2012) .........................................................20

14

*Reeves v. Hanlon,*
    95 P.3d 513 (Cal. 2004) ......................................................................20

15

16

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.,*
    388 P.3d 800 (Cal. 2017) .....................................................................18

17

*Seaton v. TripAdvisor LLC,*
    728 F.3d 592 (6th Cir. 2013)..............................................................15

18

19

*Sikhs for Justice, Inc. v. Facebook, Inc.,*
    No. 15-17441, 2017 WL 4118358 (9th Cir. Sept. 13, 2017) ...........................21

20

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,*
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................13, 21

21

22

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997)............................................................14

23

24

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001).................................................................6

25

26

*Steinmetz v. Energy Automation Sys., Inc.,*
    No. 500554/13, 2014 WL 1386954 (N.Y. Sup. Ct. Apr. 7, 2014)..........................16

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Turner v. City & Cty. of San Francisco,*
    788 F.3d 1206 (9th Cir. 2015) .................................................................................6

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.,*
    49 Cal. Rptr. 2d 793 (1996) .................................................................................19

*Zango, Inc. v. Kaspersky Lab, Inc.,*
    568 F.3d 1169 (9th Cir. 2009) ........................................................................ *passim*

*Zango, Inc. v. Kaspersky Lab, Inc.,*
    No. 07-cv-0807, 2007 WL 5189857 (W.D. Wash. Aug. 28, 2007) ................................8, 9, 10

*Zetes v. Stephens,*
    108 A.D.3d 1014 (N.Y. Ct. App. 2013) .................................................................20

*ZL Techs., Inc. v. Gartner, Inc.,*
    709 F. Supp. 2d 789 (N.D. Cal. 2010) ....................................................14, 15, 16

**STATUTES**

47 U.S.C. § 230 ....................................................................................... *passim*

Lanham Act § 43(a), 15 U.S.C. § 1125 ...................................................... *passim*

New York General Business Law § 349 ...................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 5, 6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on November 9, 2017, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward J. Davila, U.S. District Court, Northern District of California, Defendant Malwarebytes Inc. will, and hereby does, move to dismiss with prejudice all claims in Plaintiff Enigma Software Group USA, LLC's ("Enigma") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, the pleadings and records on file in this action, the argument of counsel, and such other matters as may be presented to the Court.

## ISSUES TO BE DECIDED

1.      Whether Malwarebytes is immune from Plaintiff's claims under the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230(c)(2) as a provider of security software that offers its users the technical means to restrict access to objectionable material identified by Malwarebytes.

2.      Whether Malwarebytes' statement that Plaintiff's programs are "potentially unwanted programs" is a non-actionable opinion which was not made in commercial advertising or promotion, thereby necessitating dismissal of Plaintiff's claims under Section 43(a) of the Lanham Act and New York General Business Law Section 349.

3.      Whether Plaintiff's failures to identify any prospective business relations with which Malwarebytes allegedly interfered renders its claim for tortious interference with business relations appropriate for dismissal by the Court.

4.      Whether Plaintiff fails to state its claim for tortious interference with contractual relations by failing to allege any breach or disruption of a contractual obligation with its customers or that Malwarebytes acted with the requisite intent.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiff's lawsuit against Malwarebytes, a respected anti-malware software company, is its latest effort to stop security software companies from offering filtering tools that help consumers protect themselves against Enigma's deceptive practices. Malwarebytes' users rely on its software to help them identify malware, adware, and potentially unwanted programs or "PUPs." Malwarebytes' software notifies users of programs that fall within these categories, including PUPs—in this case, Enigma's SpyHunter and RegHunter programs—that Malwarebytes considers to be deceptive. Users can then choose to block or whitelist Enigma's programs or others. What Enigma hopes to accomplish is to take that choice away from consumers and to curtail the ability of Malwarebytes and others to provide robust filtering software to the public. The Ninth Circuit made clear more than eight years ago in *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1170 (9th Cir. 2009) that Section 230(c)(2) of the Communications Decency Act of 1996 ("CDA") precludes Enigma's claims, holding that a "distributor of Internet security software is entitled to immunity under the safe harbor provision of the [CDA] from a suit claiming that its software interfered with the use of downloadable programs." Enigma cannot plead its way around *Zango*, and its complaint should be dismissed with prejudice.

Aside from failing to pierce the CDA's statutory immunity, Enigma also fails to state claims of false advertising, unfair competition, or tortious interference. Consumers ultimately decide whether to use Enigma's programs in response to Malwarebytes' opinion that programs are potentially unwanted. FAC ¶¶ 84, 86, 93. Users can decide to keep the program, and they must take an affirmative step to delete the program. *Id.* They may even decide to stop using Malwarebytes entirely if they do not like what it blocks. Thus, on the face of the FAC, Malwarebytes does not prevent consumers from using Enigma's software.

## II.    STATEMENT OF FACTS

### A.    Malwarebytes Identifies Potentially Unwanted Programs for Its Customers.

Malwarebytes develops and provides Internet security software that protects consumers and enterprises from a variety of online threats, including malicious software, also known as malware, adware, and PUPs. FAC ¶¶ 3, 36. Malwarebytes offers free and paid versions of its software to individual users through its website, www.malwarebytes.com. FAC ¶ 58. For consumers who have chosen to install it, Malwarebytes' software detects malware and PUPs on users' computers. FAC ¶¶ 4–5, 55. Malwarebytes identifies and categorizes non-malware such as PUPs differently to users, who can choose to quarantine or remove the PUPs after reviewing them. FAC ¶¶ 5, 82, 84, 86. Malwarebytes recently acquired a standalone program, AdwCleaner, which detects adware, unwanted toolbars, and PUPs on users' computers. FAC ¶ 12, Exs. 2, 10.

Developers of PUPs often mask the unwanted nature of programs by including legitimate software characteristics. FAC, Exs. 1, 12. As an ongoing and continuous effort, Malwarebytes considers many criteria and necessarily updates those criteria as developers change their programs to circumvent Malwarebytes' detection. *Id.* To protect its users, on October 5, 2016, as on many previous occasions, Malwarebytes revised and published its criteria for identifying PUPs. FAC ¶¶ 7, 29, 73, Exs. 1, 4, 12 (revised criteria). These updated PUP criteria consider whether a program is deceptive or misleading by looking to whether a program or its developer engages in: (1) obtrusive, misleading, or deceptive advertising, branding, or search practices; (2) excessive or deceptive distribution, affiliate or opt-out bundling practices; (3) aggressive or deceptive behavior especially surrounding purchasing or licensing; (4) unwarranted, unnecessary, excessive, illegitimate, or deceptive modifications of system settings or configuration (including browser settings and toolbars); (5) difficulty uninstalling or removing the software; (6) diminished user experience; and (7) other practices generally accepted as riskware, scareware, adware, greyware, or otherwise commonly unwanted software by the user community. FAC ¶ 73, Ex. 12. To illustrate, a program may be a PUP if it uses scare tactics or misleading alerts that induce users to purchase software or upgrades with the mistaken belief that doing so is necessary

Fenwick & West LLP
Attorneys at Law
San Francisco

to secure their computers. Malwarebytes may also identify programs that a user unintentionally installs, such as through bundled software, or that are difficult to uninstall. *See id.*

In determining its criteria, Malwarebytes also considers actual harm to consumers by reviewing whether users have predominantly given a computer program negative feedback. *Id.*; *see also* FAC ¶ 29, Ex. 4. Indeed, many users voiced their approval of Malwarebytes' updated PUP criteria and even requested greater protection from PUPs. *See* FAC, Ex. 1 at 2 (commenting that PUPs are "more insidious" than known "nefarious programs"), Ex. 6 at 4 ("PUP's [sic] are malware by every definition").

### B.    Malwarebytes Began Identifying Enigma's SpyHunter and RegHunter Programs as Potentially Unwanted Programs for Its Customers.

Enigma's SpyHunter and RegHunter programs were among several programs that Malwarebytes began blocking as PUPs under the revised criteria it implemented in October 2016. FAC ¶¶ 7, 9. Malwarebytes' own assessment at that time and significant negative feedback from consumers about Enigma's programs showed that, among other deceptive behavior, Enigma's programs aggressively—and deceptively—identified standard web browser cookies as "infections" and "spyware" to scare users into purchasing Enigma software. *Id*. ¶¶ 48–49, Exs. 1, 12; Request for Judicial Notice ("RJN") at 3; RJN Exs. 1, 2, 3. These deceptive scare tactics exploit consumers' fear about spyware and other threats, even when none exist, to trick them into entering costly subscription plans. After Malwarebytes began identifying SpyHunter and RegHunter as PUPs, Malwarebytes' software notifies users who have the programs or are attempting to install them that the programs are "non-malware" "potentially unwanted program[s]." FAC ¶¶ 86, 93 (screenshots showing the alerts to a "potentially unwanted program").

### C.    Malwarebytes Users Decide Whether to Use Its Software and Whether to Continue Blocking PUPs.

Ultimately the Malwarebytes user decides whether to download, install and continue using Malwarebytes. As shown by even a cursory search for Internet security software, consumers have many brands, prices and features from which to choose. RJN Exs. E, F, G. Users who do not like Malwarebytes' PUP blocking features or criteria can use different security software.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Even those users who do want to use Malwarebytes and the software it identifies as PUPs—including Enigma's programs—can configure Malwarebytes to allow the use of the identified PUPs. When programs like Enigma's are installed or are attempting to be installed on a Malwarebytes user's computer, Malwarebytes' software identifies the programs as "non-malware" "potentially unwanted program[s]." FAC ¶¶ 86, 93 (screenshots showing the alerts to a "potentially unwanted program" and giving the option to "restore" or "delete" it); *see also id.* ¶ 32 (screenshot of AdwCleaner's detection of SpyHunter showing prompt to the user to "[p]lease uncheck elements you want to keep"). The user must affirmatively choose restoration or deletion of PUPs. *See id.* If the user values the SpyHunter or RegHunter programs installed on the computer and wants to continue using them, the user may "restore" the programs and exclude them from Malwarebytes' detection. FAC ¶¶ 88, 90.

### D.    The Southern District of New York Transferred Enigma's Suit Against Malwarebytes to This Court.

In keeping with its long history of threatening or engaging legal action to quash any exposure of its practices, Enigma filed this suit in the United States District Court for the Southern District of New York on October 7, 2016. The complaint alleged that Malwarebytes' identification of SpyHunter and RegHunter as PUPs (1) violates Lanham Act § 43(a), (2) violates New York General Business Law § 349, (3) constitutes tortious interference with Enigma's contractual relations, and (4) constitutes tortious interference with Enigma's business relations.

Malwarebytes moved to transfer the case under 28 U.S.C. § 1404, and in the alternative, to dismiss Enigma's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). In response, Enigma filed a First Amended Complaint. It asserted the same four claims and did not cure the deficiencies of its original complaint. Malwarebytes thus renewed its motion to transfer and in the alternative, to dismiss.

On May 12, 2017, the New York court granted Malwarebytes' motion to transfer pursuant to Section 1404 and transferred the case to this District. The transferor court did not rule on Malwarebytes' Rule 12(b)(2) or 12(b)(6) motion. While the transfer mooted Malwarebytes' Rule 12(b)(2) motion, Malwarebytes' Rule 12(b)(6) motion is now pending for this Court's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

consideration and decision. With leave of the Court (Dkt. No. 96), Malwarebytes now re-moves to dismiss pursuant to Rule 12(b)(6) to present streamlined briefing for the Court that addresses applicable and controlling Ninth Circuit law.

## III.     ARGUMENT

### A.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions must be supported by factual allegations, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the court must accept all of a complaint's allegations as true when considering a motion to dismiss, this tenet does not apply to legal conclusions. *Twombly*, 550 U.S. at 555. The court need not accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Accordingly, "[c]onclusory allegations of law and unwarranted inferences . . . are insufficient to avoid dismissal." *Kwan*, 854 F.3d at 1096 (citation and internal quotation marks omitted).

### B.     Malwarebytes Is Immune From Plaintiff's Claims Under CDA § 230(c)(2).

As a provider of security software designed to help users block objectionable material such as malware, adware, and PUPs, Malwarebytes is immune from Enigma's claims under 47 U.S.C. § 230(c)(2). That section provides statutory immunity to providers of filtering software for (1) good faith blocking and screening of material that the security software providers or their

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

users consider objectionable, or (2) providing technical means to restrict access to such objectionable content. § 230(c)(2). Specifically, Section 230(c)(2) provides:

> No provider or user of an interactive computer service[1] shall be liable on account of:
>
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [sic].

Congress enacted the CDA "to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet," 47 U.S.C. § 230(b)(3), and to encourage "development and utilization of blocking and filtering technologies." § 230(b)(4). Courts have consistently held that Section 230 provides "robust" immunity, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003), and that doubts "must be resolved in favor of immunity." *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).

As a provider of Internet security software, Malwarebytes is immune from liability under both sub-sections of Section 230(c)(2). First it is immune from suit under Section 230(c)(2)(B) because it provides software that gives its users the technical means to restrict access to materials that Malwarebytes or its users find objectionable, including malware and PUPs. It is also immune under Section 230(c)(2)(A), which protects actions Malwarebytes has undertaken in good-faith to restrict access to material that Malwarebytes deems objectionable, which includes malware and PUPs.

### 1. Malwarebytes Provides Its Users the Technical Means to Restrict Access to Objectionable Materials, and Its Actions are Immune Under CDA § 230(c)(2)(B).

---

[1] "'Interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Zango*, the controlling Ninth Circuit case interpreting CDA § 230(c)(2)(B), is indistinguishable from this case and requires dismissal of Enigma's complaint with prejudice. There, Kaspersky distributed anti-virus software that filtered and blocked Zango's programs, identifying them as "adware, a type of malware." *Zango, Inc. v. Kaspersky,* 568 F.3d 1169, 1171 (9th Cir. 2009). Zango alleged that Kasperksy's software disrupted current Zango customers' use of Zango's program by blocking it, and prevented would-be Zango customers from downloading its program. *Id.* at 1171-72. As Enigma has done here, Zango sued for interference with contractual rights, violation of a state unfair competition law, trade libel, and unjust enrichment. *Id.* Affirming the district court's dismissal of Zango's complaint, the Ninth Circuit held that the defendant was immune under Section 230(c)(2)(B) because its software "enable[d] and [made] available the technical means to restrict access to malware." *Id.* at 1176. The court noted that "[u]sers choose to purchase, install, and utilize the Kaspersky software." *Id.*

Whether material is "objectionable" is determined by the provider of the filtering software or the user and not by some independent standard. Though the parties in *Zango* disputed "[t]he degree of threat posed to users by [the plaintiff's] software" the Ninth Circuit accepted the defendant's classification of Zango's software as "objectionable." *Id.* at 1176. The Ninth Circuit found that "the statute plainly immunizes from suit a provider of interactive computer services that makes available software that filters or screens material that the *user or the provider* deems objectionable." *Zango*, 568 F.3d at 1173 (emphasis in original); *see also Zango, Inc. v. Kaspersky Lab, Inc.*, No. 07-0807, 2007 WL 5189857, at *4 (W.D. Wash. Aug. 28, 2007) (holding that the CDA "does not require that the material actually be objectionable" for a filtering software provider to have immunity).

Furthermore, Section 230(c)(2)(B) does not require a finding that a provider of the technological means to filter objectionable material acted in "good faith" for immunity under that section to apply. Unlike Section 230(c)(2)(A), which expressly requires that a provider act in good faith, providers of filtering software have discretion in determining what is objectionable and subject to screening under Section 230(c)(2)(B). 568 F.3d at 1173, 1177. "By its own terms . . . Section 230(c)(2)(B) has no good faith requirement." *Zango,* 2007 WL 5189857, at *4; *see also*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924, 2011 WL 3740813, at *2 (N.D. Cal. Aug. 23, 2011) (rejecting argument that filtering criteria must be based on industry standards and finding that CDA § 230 "'allows [an interactive service provider] to establish standards of decency without risking liability for doing so.'"").

Here, Malwarebytes is squarely within the scope of immunity under Section 230(c)(2)(B). Just like the security software in *Zango*, Malwarebytes offers its security software to users who may choose to download and use it to filter or screen material that Malwarebytes or the user deems objectionable. *See Zango*, 568 F.3d at 1173. Malwarebytes' criteria for classifying a program as a PUP include "excessive or deceptive distribution, affiliate or opt-out bundling practices" and "aggressive or deceptive behavior especially surrounding purchasing or licensing." *See* FAC ¶ 73, Ex. 12; *see also id.* ¶¶ 48–49, Exs. 1, 12; RJN, Exs. 1, 2, 3. It cannot be disputed that Malwarebytes considers PUPs that exhibit these features to be objectionable, in a way that is similar to the adware at issue in *Zango* and "harassing" spam emails at issue in *Holomaxx*.

While Enigma is likely to quote selectively from Judge Fisher's concurrence in *Zango* in which he expressed concern about filtering software that performs "covert blocking of content" without users' knowledge for anticompetitive purposes, those are not the facts of this case. *Zango*, 568 F.3d at 1178-79. As was the case in *Zango*, where the Kaspersky software displayed a dialogue when blocking software, Malwarebytes' software notifies users that SpyHunter and RegHunter have been blocked. *Compare Zango*, 568 F.3d at 1179 (Fisher, J. concurring) (noting the Kaspersky pop-up), *with* FAC ¶ 32 (screenshot identifying SpyHunter and showing software's prompt to "Please uncheck elements you want to keep."); ¶ 82 (screenshot showing identification of SpyHunter as a PUP and describing it as "non-malware" and "potentially unwanted programs"); ¶ 86 (screenshot depicting option for user to "restore" SpyHunter program). Thus, just as there was no "covert" blocking "without the user's knowledge" in *Zango*, there is none here. Instead, because Malwarebytes identifies which software it blocks, "users are of course always free to replace their blocking software with software more in line with their preferences, and this market-based solution finds support in the statute." 568 F.3d at 1179 (Fisher, J.,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    concurring). Malwarebytes' software furthers the CDA's purpose to "maximize user control" over

2    the computer resources they use and should be granted immunity. *See* 47 U.S.C. § 230(b)(3).

3              **2.    Malwarebytes Is Also Immune Under Section 230(c)(2)(A) Because Its**
            **PUP Criteria Are Good-Faith Actions to Restrict Access to**
4            **Objectionable Materials.**

5          While Section 230(c)(2)(B) affords Malwarebytes complete immunity for providing its

6    users technical means to restrict access, Malwarebytes is also immune under Section

7    230(c)(2)(A), which provides statutory immunity to providers of filtering software who restrict

8    access to objectionable material in good-faith. Like Section 230(c)(2)(B), Section 230(c)(2)(A)

9    does not require the provider to demonstrate that "objectionable" material is actually

10   objectionable. *Zango,* 2007 WL 5189857, at *4. Unlike the unrestricted discretion offered in

11   Section 230(c)(2)(B), however, to benefit from Section 230(c)(2)(A)'s immunity, the provider

12   must act in good faith as Malwarebytes has done here.

13         To avoid immunity under Section 230(c)(2)(A), Enigma bears the burden of proving that

14   Malwarebytes failed to act in good faith in blocking downloads of its software by Malwarebytes'

15   customers. Enigma cannot rely on conclusory allegations to prove bad faith; it must plead

16   sufficient facts alleging an absence of good faith to proceed past the pleading stage. *See, e.g.*,

17   *Holomaxx Techs. Corp. v. Microsoft*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011); *e360 Insight,*

18   *LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 608–610 (N.D. Ill. 2008) (ISP's blocking of all of

19   plaintiff's emails to ISP's subscribers was immune from suit under Section 230(c)(2)).

20         Enigma has failed to meet that burden. Enigma acknowledges that Malwarebytes' users

21   choose to download and install Malwarebytes' software from Malwarebytes' website, and thus

22   know that they are installing it. *See* FAC ¶ 58. Malwarebytes notifies its users of the filtering

23   criteria it employs and discloses that it uses its own judgment in classifying software as a PUP.

24   FAC, Ex. 12. It also notifies users when Enigma's software has been blocked. Importantly, it is

25   the user who ultimately chooses whether to keep a program—like Enigma's—that Malwarebytes'

26   software has identified as a PUP. FAC ¶¶ 55, 86, 88, 90, 93. Moreover, Enigma does not dispute

27   that users are free to uninstall Malwarebytes' software if they do not like its filtering and it does

28   not dispute that Malwarebytes users are free to keep using Enigma's software after Malwarebytes

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

has identified it as a PUP. Empowering users with this level of control is an explicit indicator of Malwarebytes' good faith and aligns with Section 230's express statutory goals to "encourage the development of technologies which maximize user control" – including blocking and filtering. 47 U.S.C. § 230(b)(3).

Plaintiff scatters conclusory allegations throughout the FAC that Malwarebytes revised its PUP criteria in "bad faith" (FAC ¶¶ 1, 8, 21, 76, 126) and argues that Malwarebytes began identifying Enigma's programs as PUPs in retaliation for Enigma suing a third-party website operator that posted a negative review of SpyHunter and to unfairly compete with Enigma in the market for security software. *Id.* None of these allegations create a plausible inference of bad faith. *See Holomaxx*, 783 F. Supp. 2d at 1105 (finding alleged profit motive and faulty filtering technology did not show bad faith); *e360Insight*, 546 F. Supp. 2d at 609–10 (finding insufficient plaintiff's allegation that the defendant singled it out for filtering while not filtering other companies who behaved similarly).

First, the chronology of events renders Plaintiff's allegation that Malwarebytes changed its criteria to undermine Plaintiff's separate lawsuit against Bleeping Computer LLC, one of thousands of entities that participates in an affiliate program run by a third-party contractor on behalf of Malwarebytes, implausible. In January 2016, Plaintiff sued Bleeping, the operator of a computer support website, for libel and unfair advertising based on an independent user review of SpyHunter posted on Bleeping's website. *Enigma Software Grp. USA, LLC v. Bleeping Cmptr. LLC*, Case No. 16-00057 (S.D.N.Y.). Approximately *nine months* later, Malwarebytes updated its PUP criteria, one of many continual updates. FAC ¶¶ 61, 80. That long lapse in time contradicts Plaintiff's theory that Malwarebytes updated its PUP criteria in bad faith as retaliation against Enigma, especially in light of the fact that Plaintiff does not refute that its software meets one or more of Malwarebytes' PUP criteria, or that those criteria are not proper measures of PUPs. Similarly, Plaintiff's allegation that Malwarebytes revised its PUP criteria in retribution for being served with a subpoena in the Bleeping case is unsupported speculation.

Second, Plaintiff's allegation that Malwarebytes began identifying its programs as PUPs to gain a competitive advantage lacks factual support. If competition motivated Malwarebytes'

changes to its PUP criteria, Malwarebytes would have made those changes not recently, but earlier in the seven years that Malwarebytes and SpyHunter have coexisted—and according to Plaintiff, directly competed—in the market. FAC ¶¶ 6, 71. Further, Malwarebytes' PUP criteria still allow its users to use Plaintiff's programs if they choose. The presence of this option runs contrary to the notion that Malwarebytes was motivated by gaining an improper competitive advantage. *Id.* ¶¶ 10, 86, 90, 93. In all events, Plaintiff has pled no facts to support its contention that the companies actually compete with one another. To the contrary, SpyHunter requires users to purchase a subscription before the product will remove items that it identifies as malicious during its so-called "free scan." FAC ¶¶ 48-49. Consumers use Malwarebytes' core product at no charge. *Id.* ¶ 59. Plaintiff does not allege that Malwarebytes distributes any products that compete with its RegHunter product, which Plaintiff describes as a "registry cleaner." FAC ¶ 47.

Whether a Malwarebytes user decides to keep or remove a program that Malwarebytes identifies as a PUP—and whether the user decides to continue using Malwarebytes—is within the control of the user. Malwarebytes' identification of a program as a PUP is entirely a good-faith effort to allow users to consider whether programs it identifies are "objectionable." Accordingly, in addition to being immune from Enigma's claims under Section 230(c)(2)(B), Malwarebytes is also immune under Section 230(c)(2)(A).

### 3. Dismissal of Enigma's Complaint Will Advance the CDA's Express Purpose of Encouraging the Development of Filtering Technologies.

Immunizing Malwarebytes from Enigma's claims aligns with Congress' express intent to encourage the development of filtering technologies and maximize user control over the content to which they are exposed. 47 U.S.C. § 230(b)(3), (4). Allowing Enigma to sidestep CDA immunity at the pleading stage by merely incanting that Malwarebytes acted in "bad faith" would undermine that statutory purpose by chilling the distribution of consumer-protective filtering technologies. Faced with the prospect of costly litigation, security vendors are likely to allow aggressive and well-funded PUP vendors that threaten lawsuits to pass through their filters. *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015) (quoting *Roommates.com*, 521 F.3d at 1175) ("[T]he CDA 'must be interpreted to protect

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'"). Enigma is well aware of this and has pursued an intimidation campaign for more than a decade of threatening and filing lawsuits against security companies that have included SpyHunter in their filters. *See* RJN Exs. A, B, C, D. While this campaign has no doubt benefited Enigma, it has had the effect of suppressing filtering technologies and reducing consumer control. Indeed, if malware or PUP developers masquerading as "security" companies can always avoid early dismissal of claims against filtering technology providers by alleging anti-competitive intent, then it is logical to expect a growth in distribution of fake, deceptive or malicious security software. The Court should avoid that perverse result here and dismiss Plaintiff's claims.

### 4.    Plaintiff's Lanham Act Claim Does Not Escape Immunity.

All of Enigma's causes of action arise from the same allegations about Malwarebytes' PUP criteria. FAC ¶¶ 7, 139–40, 146, 157, 164. Among other things, Enigma alleges that Malwarebytes "began detecting SpyHunter and RegHunter as PUPs." *Id.* ¶ 81. Since all of Enigma's claims arise from the same effort by Malwarebytes to "enable or make available . . . the technical means to restrict access" to potentially objectionable material, Section 230(c)(2) shields Malwarebytes from liability from all of Enigma's claims, including its Lanham Act claim. *See Zango*, 568 F.3d at 1173.

Section 230(e)(2), which states that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property," does not apply here. The Lanham Act has two distinct parts: the intellectual property provision, 15 U.S.C. § 1114, which concerns infringement of registered trademarks; and the unfair competition provision (Section 43(a)), 15 U.S.C. § 1125(a). Enigma does not invoke the "intellectual property" provision here. Instead, Enigma alleges violation of only the unfair competition provision of the Lanham Act based on the same conduct for which it asserts business torts of false advertising, unfair competition, and tortious interference. FAC ¶ 135. Courts "have interpreted § 230 immunity to cover business torts." *Zango*, 568 F.3d at 1177 (citation omitted); *Associated Bank-Corp. v. Earthlink, Inc.*, No. 05-cv-0233, 2005 WL 2240952, at *4 (W.D. Wis. Sept. 13, 2005) (finding the defendant immune from suit where plaintiff asserted state torts and a Lanham Act claim). Plaintiff alleges violation of only the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

unfair competition provision of the Lanham Act, and not the trademark infringement provisions. Accordingly, Section 230(c)(2) immunity applies with equal force to shield Malwarebytes from Plaintiff's claim under Lanham Act § 43(a).

## C. Plaintiff Fails to State a Claim Under Section 43(a) of the Lanham Act and New York General Business Law Section 349.

Even if Malwarebytes were not immune from Enigma's claims under CDA § 230(c)(2), Plaintiff's allegation that Malwarebytes made "false and misleading statements about ESG" fails to state a claim under 15 U.S.C. § 1125(a)(1)(B) or N.Y. Gen. Bus. Law § 349 ("N.Y. GBL § 349"). *See* FAC ¶¶ 135, 148. To state a claim for violation of Section 1125(a)(1)(B), the plaintiff must allege the defendant made (1) a false statement of fact in a commercial advertisement, (2) that actually deceived or has the tendency to deceive a substantial segment of its audience, (3) that the deception is material, (4) that the false statement was made in interstate commerce, and (5) that the plaintiff has been or is likely to be injured as a result of the false statement. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiff fails to satisfy even the predicate element of a false statement because Malwarebytes' categorization of Plaintiff's software as "Potentially Unwanted Programs" is an opinion that is not actionable under Section 43(a) of the Lanham Act or N.Y. GBL § 349. Statements that are not capable of being proven false are protected under the First Amendment and do not give rise to civil liability. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731, 731 n.3 (9th Cir. 1999) (statement that the plaintiff was "too small" to handle certain business was not actionable under the Lanham Act because it is "too much a matter of opinion for the evidence to prove or disprove it"); *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 795 (N.D. Cal. 2010) ("An expression of pure opinion is protected by the First Amendment and may not form the basis for a civil lawsuit."), *aff'd sub nom. ZL Techs., Inc. v. Gartner Grp., Inc.*, 433 F. App'x 547 (9th Cir. 2011). Nor are they actionable under N.Y. GBL § 349. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496-98 (2d Cir. 2013) (statements of opinion are not actionable under the Lanham Act or under N.Y. GBL § 349).[2]

---

[2] The Second Circuit has observed that because "New York law is, if anything, more protective of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Malwarebytes' description of Enigma's software as "potentially unwanted" is a statement of opinion that is no more factual or capable of being proven false than ratings based on subjective weighing of criteria, which courts have repeatedly held are non-actionable "opinions." In *ZL Techs*, one of the statements at issue was an information technology analyst's assessment and ranking of a software company in an industry report distributed to potential customers of the software company. 709 F. Supp. 2d at 795 (N.D. Cal. 2010) (considering motion to dismiss claims for defamation and trade libel). The court found the defendant's ranking of the software vendor to be a "non-actionable opinion," because defendant based its ranking on unverifiable weighing of criteria and conversations with customers and references. *Id.* at 797. The court rejected allegations that the defendant characterized its ranking analysis as objective, "fact-based and knowledge-centric," and based on a "rigorous mathematical model" as insufficient to transform the ranking from non-actionable opinion into a fact. *Id.* at 797-98.

Similarly, in *Browne v. Avvo Inc.*, the court found a website's attorney ratings protected opinions under the First Amendment. 525 F. Supp. 2d 1249, 1251 (W.D. Wash. 2007). Applying the Ninth Circuit's standard, the court relied on the fact that the ratings were from an "evaluative process" in which the website weighed data according to its "subjective opinions" about "the relative importance" of certain factors. *Id.* at 1252. The court observed that "the rating system is an abstraction," rather than a statement of fact that can sufficiently be proved or disproved. *Id.* Accordingly, the ratings could not give rise to a claim under a state unfair competition law. *Id.* at 1255; *see also Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (rejecting defamation claim since listing plaintiff among country's dirtiest hotels reflected opinion, and defendant's "method of compiling" data to create the ranked list was "inherently subjective [in] nature"); *Steinmetz v. Energy Automation Sys., Inc.*, No. 500554/13, 2014 WL 1386954, *15, 16 (N.Y. Sup. Ct. Apr. 7, 2014) (dismissing N.Y. GBL § 349 claims based on Better Business Bureau ratings that reflected opinion and judgment formed from objective and subjective criteria).

---

free speech interests and less expansive in permitting causes of action based on speech, than federal law," "[t]here is thus no reason to believe that the New York Court of Appeals would interpret state law to provide for more expansive liability than does the Lanham Act." *ONY, Inc.*, 720 F.3d at 498.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Here, the challenged statements that Enigma's programs are "potentially unwanted" are Malwarebytes' opinions, based on criteria that it has developed and refined. FAC ¶¶ 73–74, Ex. 12. In contrast to the statements touting objectivity alleged in *ZL Techs*, the context in which the statements are given further support that the statements constitute Malwarebytes' opinion. Malwarebytes publishes its non-exclusive criteria for identifying PUPs, *id.*, Ex. 12, and advises its users that "we use our judgment," *id.*; *see Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. 10-cv-02605, 2011 WL 5024281, at *11 (N.D. Cal. Oct. 13, 2011) (finding that blog post by party's counsel opining about the risk associated with certain practices of competitors was protected opinion and dismissing Lanham Act claim with prejudice since statements alleged were non-actionable).

Malwarebytes also characterizes the programs as "potentially" unwanted, *see* FAC ¶¶ 5, 86, and gives users the final say in deciding whether to keep programs that they want, *id.* ¶¶ 32, 86, 93. Critically, Malwarebytes' classification of Enigma's software as a PUP is not capable of being proven true or false because Malwarebytes' users decide whether or not to keep PUPs after being notified. *Cf. Coastal Abstract Serv.*, 173 F.3d at 732 (defendant's statement was not actionable because it was an opinion regarding a matter that "was not knowable" to it when it made the statement). Malwarebytes' statements are not actionable, and Plaintiff's Lanham Act and Section 349 claims should be dismissed.

Plaintiff's Lanham Act claim should also be dismissed because it does not allege Malwarebytes' software labels Enigma's programs as PUPs and "threats" in "commercial advertising or promotion," as required by the plain language of Section 43(a)(1)(B). 15 U.S.C. § 1125(a)(1)(B)." To the contrary, these labels appear in functional dialogues during the operation of Malwarebytes' software that users have already installed. For speech to be considered "commercial advertising or promotion," to state a claim under the Lanham Act, the speech must be: (1) commercial speech; (2) made by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion in that industry. *Coastal Abstract Serv.*, 173 F.3d at 735. Malwarebytes' software's identification

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of Enigma's programs as PUPs, and statements that Malwarebytes' software identifies Enigma's programs as PUPs, do not satisfy these elements. FAC ¶¶ 32, 80, 96-99.

The FAC does not point to any Malwarebytes advertisements or promotions in which Malwarebytes even mentions Enigma or its programs. Further, Enigma cannot establish any facts supporting such an allegation. First, only *existing* users of Malwarebytes software would see the detection of Enigma's programs as PUPs. Enigma tries to salvage its Lanham Act claim by alleging that that Malwarebytes' free anti-malware and AdwCleaner versions are "marketing tools" for its premium products, because certain features in the free versions expire after a 14 day trial period. FAC ¶¶ 59-60. However, Enigma nowhere alleges, nor could it truthfully allege, that the PUP detection and removal features expire. This is because Malwarebytes offers free versions of its software that detect and remove malware, adware and PUPs with no expiration. Nor does Plaintiff limit its claims only to uses of Malwarebytes' software within the 14 day Premium trial period. Moreover, Enigma does not allege facts from which the Court can infer that third-party individuals who allegedly made statements recounting Malwarebytes' software's identification of Enigma's programs as PUPs are Malwarebytes' representatives or were authorized to speak on behalf of Malwarebytes. Enigma fails to allege any commercial advertising or promotion necessary to state its claim, and its false advertising claim should accordingly be dismissed.

### D. Enigma Has Not Sufficiently Pled Its Tortious Interference Claims.

#### 1. California Law Applies to Enigma's Tortious Interference Claims.

This Court should apply California law to Enigma's common law claims for tortious interference with contractual relations and tortious interference with business relations because the transferor court lacked personal jurisdiction over Malwarebytes. Following transfer under 28 U.S.C. § 1404(a), the substantive law of the transferee state applies to state common law claims where the transferor court lacked personal jurisdiction over the defendant. *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). Otherwise, a plaintiff would retain an advantage from its forum shopping—namely, its choice of law—that it would not have been entitled to had it filed in the proper forum. *See id.*

Malwarebytes contested personal jurisdiction before the transferor court. The transferor

court transferred this case pursuant to Section 1404(a) without deciding whether it had personal jurisdiction over Malwarebytes, leaving Malwarebytes' challenge to personal jurisdiction in New York intact. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993) ("Although the [transferor court] purported to transfer the case under § 1404(a) for the convenience of the parties, its characterization of the transfer is not controlling.). Significantly, as here, "[i]f the transfer had the effect of curing a defect in personal jurisdiction . . . then the choice-of-law rules of the transferee jurisdiction should be applied." *Id.*

Because Malwarebytes maintains that the Southern District of New York lacked personal jurisdiction and that transfer to this district cures the defect in personal jurisdiction, this Court should apply California law to Enigma's common law claims. The Court need not conduct a choice-of-law analysis, however, because as described below, Enigma's claims fail under both California and New York law.

**2.      Enigma Fails to Sufficiently Allege Tortious Conduct or Any Economic Relationships to Bring a Claim of Tortious Interference With Prospective Business Relations.**

To bring a claim of tortious interference with prospective economic relations under California law, Plaintiff must allege (1) an economic relationship with some third party, with the probability of future economic benefit to Plaintiff; (2) Malwarebytes' knowledge of that relationship; (3) Malwarebytes' intentional conduct designed to disrupt that relationship; (4) actual disruption of the relationship; and (5) economic harm to Plaintiff proximately caused by Malwarebytes' conduct. *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 388 P.3d 800, 803 (Cal. 2017); *see also Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*, No. 5:12-cv-06209-EJD, 2016 WL 3648716, at *6 (N.D. Cal. July 7, 2016). The defendant's conduct must not only be intentional, but also independently, wrongfully caused the disruption. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003).

Enigma fails to plausibly allege that Malwarebytes intentionally disrupted Plaintiff's prospective economic relationship through some wrongful or tortious conduct. The essence of Plaintiff's allegation is that Malwarebytes intentionally interferes with Enigma's prospective business relationship with would-be users who decide not to install and purchase Enigma's

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

programs after Malwarebytes' software identifies the programs as PUPs. FAC ¶ 164. But, this claim fails for the same reasons Enigma's false advertising claims fail: Enigma points to the same purported "wrongful" conduct, but as described above, that conduct is not independently wrongful. *See Korea Supply Co.*, 63 P.3d at 954 ("[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard"); *Netapp*, 2016 WL 3648716, at *6 (same). Malwarebytes expresses its opinion that programs are PUPs to its existing users, and the users ultimately decide whether to install and purchase Enigma's program. If Malwarebytes' users want to continue using SpyHunter or RegHunter, they can configure the Malwarebytes software to do so or stop using Malwarebytes entirely.

Plaintiff's claim also fails because it identifies no prospective customers with whom Malwarebytes interfered. Nor does it plead that Malwarebytes knew about the prospective economic relationship with those unnamed prospective Enigma customers. *See Korea Supply Co.*, 63 P.3d at 957 (to state a claim, plaintiff "must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff" and must allege that the defendant had knowledge of that economic relationship). Instead, it conclusory alleges that there are unidentified consumers that "may enter into a paid business relationship with ESG." FAC ¶ 163. Such speculative allegations are insufficient. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793, 801-07 (1996) (rejecting as a matter of law the plaintiff's reliance on a "class of all possible but as yet unidentified" third-parties); *Buxton v. Eagle Test Sys., Inc.*, No. 08-cv-04404, 2010 WL 1240749, at *2 (N.D. Cal. Mar. 26, 2010) (dismissing claim that did not allege "the existence of any specific economic relationships with identifiable third parties, which defendants knew about and intentionally disrupted through a wrongful act").

Even if the Court applied New York law, Plaintiff's interference with prospective economic relationship claim still fails. Under New York law, a plaintiff must allege "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest,

unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quoting another source). For the reasons articulated above, Plaintiff does not plausibly allege that Malwarebytes "acted solely out of malice, or used dishonest, unfair, or improper means." *See id.* (citation and internal quotation marks omitted); *see also Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (dismissing claim for failing to show that defendant plausibly acted with "sole purpose of inflicting intentional harm" on the plaintiff). And, even after having the opportunity when amending its complaint, Plaintiff identifies no prospective customers with whom Malwarebytes allegedly intentionally interfered. *See Parekh v. Cain*, 96 A.D.3d 812, 816 (N.Y. Ct. App. 2012) (dismissing claim "since the complaint did not identify the third party with whom the plaintiff was engaging in business relations"); *Zetes v. Stephens*, 108 A.D.3d 1014, 1020 (N.Y. Ct. App. 2013).

### 3.   Enigma Fails to Allege Any Valid Contract With Which Malwarebytes Intentionally Interfered.

To survive a motion to dismiss a claim of tortious interference with contractual relations under California law, Plaintiff must allege (1) a valid contract between Plaintiff and a third-party, (2) that Malwarebytes knew of, (3) intentional conduct by Malwarebytes designed to induce breach or disrupt the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) damage to Plaintiff as a result. *Reeves v. Hanlon*, 95 P.3d 513, 517 (Cal. 2004); *Netapp*, 2016 WL 3648716, at *6.

Plaintiff's claim fails because it does not even allege any valid contractual obligation that was breached or disrupted. *See id.* at *6. In *Netapp*, this Court dismissed a similar claim where the plaintiff did not allege any term or obligation of the contract that was disrupted and only claimed that it entered into an agreement with a third-party for the provision of services and that the defendant knowingly diverted the third-party to another service provider. *Id.* There, the plaintiff's agreement with the third-party was not exclusive, and the third-party did not have "continuing obligations" to plaintiff that the defendant could disrupt. As in *Netapp*, Enigma only makes vague allegations that Malwarebytes' actions have caused some of Enigma's customers to choose not to install Enigma's programs or to delete or discontinue use of Enigma's programs. FAC ¶ 157, 158.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Absent from Enigma's FAC is any allegation from which the Court can infer that Enigma's customers breached a contractual obligation to Enigma by doing so or by demanding a refund from Enigma. Additionally, as discussed above, Enigma has not alleged any facts that plausibly show any intentional conduct by Malwarebytes designed to induce breach or disrupt Enigma's contractual relationship with a customer. Again, Malwarebytes' users ultimately decide whether to continue using a program that Malwarebytes identifies as a PUP.

Even if this claim were decided under New York law, it fails. To state a claim under New York law, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch*, 449 F.3d at 401-02 (internal quotation marks and citation omitted). Again, even after having the opportunity when amending its complaint, Enigma does not allege any contractual obligation that its customers breached. *See id.* at 402 (allegation that third-party "abandoned" or "walked away" from a project was insufficient to plead breach of a contract). Moreover, Enigma does not allege any plausible facts that Malwarebytes intentionally procured an Enigma customer's breach without justification.

Accordingly, both of Enigma's tortious interferences claims fail, whether the Court considers them under California or New York law.

### E.    Enigma's Complaint Should be Dismissed With Prejudice.

Dismissal with prejudice is appropriate where, as here, amendment would be futile as a matter of law. The Ninth Circuit recently held that where a defendant has immunity from a plaintiff's claims under the CDA, further amendment would be futile. *See Sikhs for Justice, Inc. v. Facebook, Inc.*, No. 15-17441, 2017 WL 4118358 (9th Cir. Sept. 13, 2017) (affirming dismissal with prejudice where the claim was "barred by the CDA" and amendment of the complaint was therefore "futile"). Under such circumstances, dismissal with prejudice is necessary to further the purpose of the CDA because "the CDA 'must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'" *Sikhs for Justice "SFJ"*, 144 F. Supp. 3d at 1096 (quoting *Roommates.com*, 521 F.3d at 1175). Given that this case

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    is indistinguishable from *Zango*, which is controlling circuit law, Plaintiff cannot cure the

2    deficiencies of the FAC through amendment. Moreover, "[t]he district court's discretion to deny

3    leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen*

4    *v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotation marks omitted)

5    (citations omitted).

6    **IV.    CONCLUSION**

7            Malwarebytes respectfully requests that the Court dismiss Enigma's FAC in its entirety

8    with prejudice. Malwarebytes is immune from each cause of action under CDA Section

9    230(c)(2)(A) or (B), and Plaintiff cannot avoid immunity through amendment. Even if

10   Malwarebytes were not immune from Plaintiff's claims, Plaintiff has failed to state a claim for

11   each cause of action, and future efforts to amend would futile.

12

13   Dated:    September 29, 2017                Respectfully submitted,

14                                              FENWICK & WEST LLP

15

16                                              By: */s/ Tyler G. Newby*
                                                    Tyler G. Newby
17                                                  Attorneys for Defendant
                                                    MALWAREBYTES INC.
18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO