TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
GUINEVERE L. JOBSON (CSB No. 251907)
gjobson@fenwick.com
SAPNA MEHTA (CSB No. 288238)
smehta@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendant
MALWAREBYTES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ENIGMA SOFTWARE GROUP USA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MALWAREBYTES INC.,<br><br>Defendant. | Case No.: 5:17-cv-02915-EJD<br><br>**DEFENDANT MALWAREBYTES INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:    November 9, 2017<br>Time:    9:00 AM<br>Dept:    Courtroom 4, 5th Floor<br>Judge:   Honorable Edward J. Davila |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 2

    A. Malwarebytes Is Immune from Enigma's Claims Under CDA Section 230(c)(2)(B). ............................................................................................ 2

        1. A Software Provider and Its Users May Determine What Material Is "Otherwise Objectionable." ................................................ 3

        2. The Court Need Not Consider Whether Malwarebytes' Actions Were in Good Faith. .................................................................... 5

        3. Even if a Good Faith Requirement Were to Apply, Enigma Has Not Adequately Alleged That Malwarebytes Acted in Bad Faith. ........................................................................................... 7

        4. Enigma's Lanham Act Section 43(a) Claim Is Not an Intellectual Property Claim. ......................................................................... 9

    B. Enigma Fails to State a Claim Under Lanham Act Section 43(a) and New York General Business Law Section 349. ................................................ 11

        1. Malwarebytes' Identification of PUPs Is a Non-Actionable Opinion, Not Made in Commercial Advertising or Promotion. ................ 11

        2. Statements Recognizing Malwarebytes' Identification of PUPs Are Not False and Deceptive Statements Made in Commercial Advertising or Promotion. ................................................................... 12

    C. Enigma Failed to Plead Facts to State Claims for Tortious Interference. ............. 13

        1. Enigma Does Not Sufficiently Allege Intentional, Tortious Conduct by Malwarebytes Which Disrupted An Economic Relationship With Any Third-Party. ................................................... 13

        2. Enigma Does Not Sufficiently Allege Any Valid Contract With Which Malwarebytes Intentionally Interfered. ............................. 14

    D. The Court Should Dismiss Enigma's FAC With Prejudice. .............................. 15

III. CONCLUSION ......................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009) .................................................................................. 11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 7, 14

*Bailey v. United States*,
    516 U.S. 137 (1995) ...................................................................................................................... 6

*Buxton v. Eagle Test Sys., Inc.*,
    No. 08-cv-04404, 2010 WL 1240749 (N.D. Cal. Mar. 26, 2010) ............................................... 14

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ....................................................................................................... 3

*e360 Insight, LLC v. Comcast Corp.*,
    546 F. Supp. 2d 605 (N.D. Ill. 2008) .......................................................................................... 5, 8

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016) ......................................................................................... 10

*Fair Housing Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ....................................................................................................... 3

*Ford Motor Co. v. GreatDomains.com, Inc.*,
    No. 00-cv-71544, 2001 WL 1176319 (E.D. Mich. Sept. 25, 2001) ............................................ 10

*Gen. Steel Domestic Sales, LLC v. Chumley*,
    No. 14-cv-01932, 2015 WL 4911585 (D. Colo. Aug. 18, 2015) ................................................ 10

*Goddard v. Google, Inc.*,
    No. 08-cv-2738, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ................................................... 4

*Gucci Am., Inc. v. Hall & Assocs.*,
    135 F. Supp. 2d 409 (S.D.N.Y. 2001) ......................................................................................... 10

*Holomaxx Techs. Corp. v. Microsoft*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ..................................................................................... 5, 8

*Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*,
    No. 5:12-cv-06209-EJD, 2016 WL 3648716 (N.D. Cal. July 7, 2016) ...................................... 15

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) .................................................................................................. 13, 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ............................................................................................................... 13

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ............................................................................................. 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ........................................................................................................ 9

*Nat'l Numismatic Certification, LLC. v. eBay, Inc.*,
    No. 6:08-cv-42, 2008 WL 2704404 (M.D. Fla. July 8, 2008) ........................................... 4

*Nat. Res. Media & Tech. Grp., LLC v. Snoop Youth Football League Found.*,
    No. 07-cv-7701, 2008 WL 728650 (S.D.N.Y. Mar. 14, 2008) ........................................ 15

*Nieman v. Versuslaw, Inc.*,
    No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ............................................... 10

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) .............................................................................. 14

*Reeves v. Hanlon*,
    95 P.3d 513 (Cal. 2004) .................................................................................................... 14

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
    388 P.3d 800 (Cal. 2017) .................................................................................................. 13

*Silicon Valley Test & Repair, Inc. v. Gen. Signal Corp.*,
    No. 93-cv-20448, 1993 WL 373977 (N.D. Cal. Sept. 13, 1993) ..................................... 14

*Song fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ................................................................................ 4

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*,
    49 Cal. Rptr. 2d 793 (1996) .............................................................................................. 14

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) .................................................................................... *passim*

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    No. 07-cv-0807, 2007 WL 5189857 (W.D. Wash. Aug. 28, 2007) ................................... 3

**STATUTES AND RULES**

47 U.S.C. § 230 (Communications Decency Act of 1996) ....................................................... *passim*

Federal Rule of Civil Procedure 12 ................................................................................... 13, 15

Lanham Act ................................................................................................................... 9, 10, 11

New York General Business Law Section 349 ....................................................................... 11, 12

## I. INTRODUCTION

The Ninth Circuit created a roadmap for how this case should end more than eight years ago in *Zango, Inc. v. Kaspersky Lab Inc.* when it found that a different Internet security software company was immune from a nearly identical suit brought by another purveyor of harmful computer programs. Plaintiff has offered no convincing reason why this Court should reach a different decision than both the district court and then the Ninth Circuit did in *Zango*. Avoiding the actual facts of *Zango* and the Ninth Circuit's actual ruling, Plaintiff instead offers several theories for why *Zango* is not as controlling as it appears on its face: that the plaintiff in that case waived certain arguments on appeal; that Section 230(c)(2)(B) of the Communications Decency Act of 1996 ("CDA") includes a "good faith" requirement, even though those words do not appear in the section; and that a partial excerpt from Judge Fisher's concurrence in the case carries more weight than the majority's holding. Plaintiff is wrong on all counts. As the Ninth Circuit recognized in *Zango*, Congress enacted Section 230(c)(2)(B) to encourage the development of technologies to block, filter or screen objectionable material, and Internet security software like Malwarebytes' that helps users keep potential harmful software from being installed on users computers advances that purpose. 568 F.3d 1169 (9th Cir. 2009).

As was the case in *Zango*, this case is about protecting choice and promoting filtering and screening technologies. Users choose Malwarebytes based on its longstanding reputation for protecting computers from malware and unwanted software. Put another way, they rely on Malwarebytes to help them discern good programs from bad. That is why dismissal is not only warranted, but necessary to effectuate Congress' purpose in creating the statutory immunity for providers of screening software in CDA Section 230(c)(2)(B). If security software companies were subject to suit by every company that did not like having its software identified as malicious, harmful or, as in this case, a potentially unwanted program or "PUP," Section 230(c)(2)(B) would be a dead letter. *Zango* rejected that potential outcome, and this Court should as well. By immunizing providers of screening technologies from lawsuits for their screening choices, the CDA leaves the choice of what may be identified as a harmful program to the

developers of screening technologies like Malwarebytes and their users, as Congress intended, not to the distributors of potentially harmful software.

Plaintiff's contention that Malwarebytes must be forced to stop its default screening of Enigma's software to preserve user choice is non-sensical. Malwarebytes' users *choose* to use its software because of what it identifies as potentially harmful. Though Enigma argues that Malwarebytes has singled it out and acted solely out of malice, that allegation is contrary to the Malwarebytes' announcements attached to the complaint that it had "removed approximately *500 million traces of PUPs per month*" and "received a lot of negative attention from the PUP developers." FAC, Ex. 1. Enigma is one of the many potentially unwanted programs that Malwarebytes detects and screens by default on Malwarebytes' users' computers. FAC ¶ 5. Enigma does not contend that Malwarebytes screens those programs surreptitiously, without users' knowledge. To the contrary, Enigma acknowledges that Malwarebytes' software notifies users when it quarantines SpyHunter and RegHunter programs. *E.g.*, *id.* ¶¶ 82, 86. Nor does Enigma dispute that users who choose to download and install Malwarebytes' software can ultimately decide to stop using it at any time. Thus, the true nature of Enigma's grievance apparently is that Malwarebytes considers Enigma's software an objectionable PUP, not that consumers are being deprived of choice. The Ninth Circuit made clear in *Zango* that is not a basis to overcome the broad imunity CDA Section 230(c)(2)(B) affords providers of screening software like Malwarebytes. That immunity applies to each of Enigma's claims, and its complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Malwarebytes Is Immune from Enigma's Claims Under CDA Section 230(c)(2)(B).

In the face of the Ninth Circuit's finding in *Zango* that CDA Section 230(c)(2)(B) immunized a security software company for screening installation of plaintiff's advertising software on its users' computers, Enigma makes only the weak argument that *Zango* is not controlling because the plaintiff had waived certain arguments on appeal that Enigma makes here. Principally, Enigma contends that this Court should decide that PUPs, as defined by

Malwarebytes, are not "otherwise objectionable" within the meaning of Section 230(c)(2) and that this Court should read a good faith limitation into Section 230(c)(2)(B), despite the absence of that term in the text. But Enigma ignores the facts that the district court rejected those arguments in *Zango*, and that the Ninth Circuit could have issued a far narrower opinion than it ultimately did. This case is in all material respects indistinguishable from *Zango*, and the outcome should be the same: dismissal with prejudice.

### 1. A Software Provider and Its Users May Determine What Material Is "Otherwise Objectionable."

The plain text of the CDA grants providers and users of content screening technologies discretion to determine what is "otherwise objectionable," and the Ninth Circuit's leading case on Section 230(c)(2) supports giving security software companies wide latitude to determine the types of software that pose threats to their users. In *Zango*, the district court explicitly rejected the argument that Enigma presents here, finding that Section 230(c)(2)(B) "does not require that the material actually be objectionable; rather, it affords protection for blocking and screening material 'that the provider or user considers to be' objectionable." *Zango, Inc. v. Kaspersky Lab, Inc.*, No. 07-cv-0807, 2007 WL 5189857, at *4 (W.D. Wash. Aug. 28, 2007). Although the plaintiff failed to raise in its opening appeal brief that its software was not "otherwise objectionable," the Ninth Circuit stated: "We think the statute plainly immunizes from suit a provider of interactive computer services that makes available software that filters or screens material that the user *or the provider* deems objectionable." *Zango*, 568 F.3d at 1173 (emphasis in original). The court went a step further, finding that "according protection to providers of programs that filter adware and malware is also consistent with the Congressional goals for immunity articulated in § 230 itself." *Zango*, 568 F.3d at 1174 (citing CDA Sections 230(b)(3) and (b)(4)). The *Zango* decision is consistent with the Ninth Circuit's prior guidance that Section 230 should be interpreted to provide broad immunity and that Section 230 immunity is "robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).

The reasons for giving security software developers broad discretion to determine what software poses threats to their users and are "otherwise objectionable" are the same concerns that motivated Congress "to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services" when it enacted CDA § 230. 47 U.S.C. § 230(b)(3). If security companies like Malwarebytes did not have statutory immunity for their decisions about what constituted harmful software, they would be exposed to endless litigation from spammers, adware vendors, and every vendor of deceptive, harmful or malicious software that they screen. The threat of such litigation would discourage blocking or screening of potentially harmful software, ultimately putting Internet users at increased risk of malware attacks, Internet scams, and a barrage of intrusive adware. That is the case here.

Notably, none of the cases Enigma relies on involved companies that provide software that enables users to block or screen content that the company or the users consider to be objectionable, and none involved Internet security software. Opposition (Dkt. No. 100) ("Opp") at 9. Instead, the cases concern companies that block or remove content from platforms that they operate, typically **without the knowledge of users** and without any choice by the users. *Cf. Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 883 (N.D. Cal. 2015) (YouTube's removal of videos with "artificially inflated view counts" that violated its terms of service); *Goddard v. Google, Inc.*, No. 08-cv-2738, 2008 WL 5245490, at *6 (N.D. Cal. Dec. 17, 2008) (Google's policy requiring advertisers to "provide pricing and cancellation information regarding their services"); *Nat'l Numismatic Certification, LLC. v. eBay, Inc.*, No. 6:08-cv-42, 2008 WL 2704404, at *25 (M.D. Fla. July 8, 2008) (e-Bay's removal of auctions for "potentially-counterfeit coins"). The content filtering processes employed by these service providers functioned in the background and were ancillary to the online video, advertising, and auction services they operated. Therefore, the users had no choice about the filtering decisions being made by those companies. By contrast, Malwarebytes' security software, like the defendant's in *Zango*, is offered to and chosen by users for a single purpose: screening material that the security software company has decided is potentially harmful. *See* FAC ¶ 5.

Even if Section 230 confined "otherwise objectionable" to "obscene, lewd, lascivious, filthy, excessively violent, or harassing" material, as Plaintiff argues, Malwarebytes is still immune from suit. Malwarebytes' PUPs criteria (FAC, Ex. 12) include misleading, deceptive, and aggressive—thus, "harassing"—practices. Indeed, courts have acknowledged that software filtering providers' decisions to filter marketing emails as "otherwise objectionable" are appropriate under the statute. *See, e.g.*, *Holomaxx Techs. Corp. v. Microsoft*, 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011) (dismissing claims based on Microsoft's decision to filter marketing emails as "'harassing' and thus 'otherwise objectionable'"); *e360 Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 608–610 (N.D. Ill. 2008). If an email service is immune from suit under Section 230 for blocking marketing emails then Malwarebytes certainly must be immune for providing software that allows its users to screen misleading, deceptive, aggressive software.

Finally, Enigma's bald assertion that "Malwarebytes does not actually consider ESG's programs to be harassing, otherwise objectionable, or a threat," Opp. at 10 n.7, does not deprive Malwarebytes of immunity. It is not only wrong, but is a conclusory allegation "insufficient to avoid dismissal." *E.g.*, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (affirming dismissal for failure to "allege facts that would support a [required] finding" where the plaintiff instead relied on conclusory allegations that did "nothing to support or prove" the claims). Enigma points to no factual allegations that its programs do not meet Malwarebytes' PUPs criteria, or that Malwarebytes' criteria are not proper indicators of PUPs.

### 2. The Court Need Not Consider Whether Malwarebytes' Actions Were in Good Faith.

Enigma's next line of defense against *Zango* is an argument that a "good faith" requirement should be read into Section 230(c)(2)(B), and that its bad faith allegations raise disputed factual issues. Again, Enigma hangs its argument that *Zango* is not controlling on this issue because the *Zango* plaintiff waived it by failing to raise the argument in its opening appeal brief. But the text of Section 230(c)(2)(B), when read in the context of the entire statute and the Ninth Circuit's clear guidance in *Zango*, defeats Enigma's argument. Notably, Enigma does not,

and cannot, cite to any authority for its argument that a good faith requirement should be implied into Section 230(c)(2)(B). Opp. at 14.

First, as Malwarebytes pointed out in its opening brief, the words "good faith" are absent from Section 230(c)(2)(B). Mem. at 8. The Court should therefore not insert a "good faith" requirement into the statute when Congress already declined to do so. Moreover, the fact that Congress chose to use that term in Section 230(c)(2)(A) but exclude it from the very next section demonstrates that Congress intended *not* to impose a good faith requirement on defendants who seek immunity under Section 230(c)(2)(B). This interpretation is consistent with the well-established canon of statutory interpretation that Congress acts intentionally when it includes language in one section of a statue and omits it from another. *See, e.g.*, *Bailey v. United States*, 516 U.S. 137, 146 (1995) (Use of the term "used" and "intended to be used" in different sections of statute creates implication that provision for "use" refers to actual and not intended use).

Second, even though the *Zango* plaintiff waived on appeal the argument Enigma now makes, the Ninth Circuit nonetheless observed that Section 230(c)(2)(B) "has no good faith language" and "comes with only one constraint": the restricted material must be deemed objectionable by *either* the user or the provider. 568 F.3d at 1177. Accordingly, this Court need not reach the issue of whether Enigma sufficiently pled good faith because Malwarebytes is immune under Section 230(c)(2)(B) as a provider of software that gives users the technical means to restrict access to materials, like PUPs, that Malwarebytes or its users find objectionable. *See id.* at 1177–78 ("[A] provider of access tools that filter, screen, allow, or disallow content that the provider or user considers obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable is protected from liability by 47 U.S.C. § 230(c)(2)(B) for any action taken to make available to others the technical means to restrict access to that material.").

Enigma's reliance on selective quotes from Judge Fisher's concurring opinion in *Zango* is misplaced. First, and most obviously, Judge Fisher's opinion was not that of the majority. But even if it were, the concerns Judge Fisher expressed are not present here. As described in Malwarebytes' opening brief, Mem. at 9, Judge Fisher was concerned that Section 230(c)(2)(B) could enable a filtering software provider to block content for an anticompetitive purpose

"*without the user's knowledge.*" 568 F.3d at 1179 (Fisher, J., concurring) (emphasis in original). But here, Enigma not only fails to dispute that Malwarebytes' users had knowledge of its screening of Enigma's software, but even affirmatively alleges that Malwarebytes informs users that it is blocking Enigma's SpyHunter and RegHunter programs, and that users are aware that Malwarebytes is screening its programs. *E.g.*, FAC ¶¶ 82, 86, 96; *see also id.* ¶ 32 (Enigma alleges that an AdwCleaner developer tweeted that Malwarebytes "now fully detects and removes SpyHunter from Enigma Software Group"). These circumstances are thus hardly the "covert" blocking that concerned Judge Fisher. 568 F.3d at 1179. Instead, Malwarebytes' actions are consistent with the "market-based solution" Judge Fisher described with approval, which "finds support in the statute." *Id.* Malwarebytes' users choose to download Malwarebytes' software. FAC ¶ 58. They know what Malwarebytes' software is screening and "are of course always free to replace [it] with software more in line with their preferences." 568 F.3d at 1179.

### 3. Even if a Good Faith Requirement Were to Apply, Enigma Has Not Adequately Alleged That Malwarebytes Acted in Bad Faith.

Even if a good faith requirement were to be implied into Section 230(c)(2)(B), Enigma's pleading falls short. It does not plead facts that show its theory is facially plausible, and Malwarebytes is still immune from Plaintiff's claims under both Sections 230(c)(2)(A) and (B). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Enigma's speculation of an anticompetitive purpose behind Malwarebytes' decision to list Enigma's products as PUPs is not supported by its factual allegations. *See* Mem. at 11-12. Most notably, Enigma has not even plausibly alleged that the parties are competitors. Enigma has not made any factual allegations that it regularly competes for customers with Malwarebytes. Nor has it alleged that its "RegHunter" registry cleaner is even Internet security software. And SpyHunter requires a purchased subscription to remove items identified during its "free scan," while Malwarebytes' core product is free. FAC ¶¶ 48-49, 59.

Enigma thus attempts to narrow its theory, claiming that Malwarebytes revised its criteria for detecting PUPs to retaliate against Enigma for bringing a free-speech chilling suit against a website that operated a bulletin board where a user made critical statements about Enigma and for

subpoenaing Malwarebytes in that case. Opp. at 11 n.8. Enigma's allegations are so fanciful that they are wholly conclusory and entitled to no weight in opposition to a motion to dismiss. The timing of when Malwarebytes first began listing Enigma's software as a PUP contradicts any inference that the action was tied to Enigma's filing of a lawsuit against Bleeping Computer—the third party web site. Enigma sued Bleeping Computer on January 5, 2016, ten months before Malwarebytes began listing Enigma's software. FAC ¶¶ 61, 80. This passage of time and the undisputed fact that Malwarebytes blocks numerous programs as PUPs renders implausible any inference that Malwarebytes was retaliating. If, as Enigma suggests, Malwarebytes was truly retaliating for the Bleeping case, it would have changed its criteria soon after being served with the subpoena or more likely, when Enigma filed suit, not one week before its subpoena response was due. Opp. at 11. And Enigma did not—and cannot—allege that Malwarebytes' updated criteria only identified Enigma's programs as PUPs.

Moreover, Enigma cannot survive a motion to dismiss by simply parroting the term "bad faith," but must plead an "'absence of good faith.'" *Holomaxx*, 783 F. Supp. 2d at 1105 (dismissing claims under 230(c)(2)(A), finding that Holomaxx's conclusory pleading that Microsoft acted in bad faith was "insufficient," and that the appropriate question is whether Holomaxx has "pled an absence of good faith"). Enigma's "retaliation" theory is no less conclusory than the theories rejected in *Holomaxx* and *e360Insight*. In *Holomaxx*, the plaintiff alleged that Microsoft, in blocking its marketing emails, was "motivated by profit derived from blocking both good and bad emails." *Id*. at 1105. Similarly, in *e360*, the plaintiff summarily alleged that Comcast was "singling" it out by blocking the plaintiff's marketing emails while permitting others. *e360Insight*, 546 F. Supp. 2d at 609. In both cases, the court rejected the bare allegations. *Holomaxx*, 783 F. Supp. 2d at 1105 (plaintiff offers "no factual support for these allegations"); *e360Insight*, 546 F. Supp. 2d at 609 ("the absence of good faith is not adequately pled"). Here too, Enigma states "no facts" to support its conclusory theory.

Finally, Enigma's argument that Malwarebytes lacks immunity because its users purportedly have difficulty whitelisting or continuing to use programs identified as PUPs fails. The Ninth Circuit dismissed the same argument in *Zango*. The parties "contested" whether

MALWAREBYTES INC.'S REPLY ISO MOTION TO DISMISS FAC   8   Case No.: 5:17-cv-02915-EJD

Kaspersky's users could actually override Kaspersky's screening. *Zango*, 568 F.3d at 1171. Like Enigma, Zango alleged that Kaspersky's option to skip its screening did not work, leaving Zango's users "with constant warnings." *Id.* Zango also alleged that users wanting to download its software, who were also running Kaspersky's, could not "override" Kaspersky's block. *Id.* at 1171-72. The Ninth Circuit found immunity under Section 230(c)(2)(B) "[r]egardless of whether Zango is correct in its allegation that Kaspersky does not provide users of Kaspersky products a choice to override the security software and download and use Zango." *Id.* at 1176. Thus, the question of how easy users find it to whitelist programs is not relevant to whether Malwarebytes is entitled to immunity under Section 230(c)(2)(B).

### 4. Enigma's Lanham Act Section 43(a) Claim Is Not an Intellectual Property Claim.

A logical application of the CDA requires immunity for false advertising claims under the Lanham Act. While CDA immunity does not extend to laws "pertaining to intellectual property" (§ 230(e)(2)), Enigma does not make any claim pertaining to intellectual property in its FAC. Instead, its claims under the Lanham Act focus on allegedly false and misleading statements to consumers. FAC ¶¶ 134-143.

There are two distinct parts of the Lanham Act: the provision governing infringement of registered trademarks, 15 U.S.C. § 1114, and the provision governing unfair competition, 15 U.S.C. § 1125(a). The unfair competition provision, Section 43(a), also distinguishes between infringement of unregistered marks (§ 1125(a)(1)(A)) and false advertising (§ 1125(a)(1)(B)). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014) (Section 1125(a) "creates two distinct bases of liability"). In contrast to trademark theories of liability under the Lanham Act, claims under the false advertising provision are directed to commercial interest in reputation or sales. *Id*. at 1389–90 (finding that "[m]ost of the enumerated purposes" of the Lanham Act concern "false-association cases" and that "typical false advertising case[s] will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'"). Here, Enigma invokes the latter only, and does not even

purport to state a claim pertaining to intellectual property. Nowhere does Enigma even mention that it has registered trademarks, let alone that Malwarebytes has somehow infringed them.

The cases Enigma relies on to support its theory that allegations involving "false and misleading statements" under a Lanham Act claim are exempt from immunity as "pertaining to intellectual property" are not binding on this Court; nor are they persuasive. Opp. at 15. In *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, the court failed to recognize the distinction between the different provisions of the Lanham Act and instead summarily cited two cases to reach its broad conclusion that "claims brought under § 43(a) of the Lanham Act" are not immune from CDA immunity. 194 F. Supp. 3d 263, 273–74 (S.D.N.Y. 2016). The cases it relied on, however, involved allegations of *trademark* infringement under Section 1114 or Section 1125(a)(1)(A), not false advertising under Section 1125(a)(1)(B). *See Gucci Am., Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 411 (S.D.N.Y. 2001); *Ford Motor Co. v. GreatDomains.com, Inc.*, No. 00-cv-71544, 2001 WL 1176319, at *1 (E.D. Mich. Sept. 25, 2001). Similarly, the other two decisions Enigma relies on involved claims under Section 1125(a)(1)(A), not false advertising under Section 1125(a)(1)(B). *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *5 (C.D. Ill. Aug. 3, 2012) (Lanham Act claim based on an alleged "property interest in his name" was "consistent with the first theory of liability" under Section 43(a)); *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 14-cv-01932, 2015 WL 4911585, at *9 (D. Colo. Aug. 18, 2015) ("The Lanham Act claim is brought under 15 U.S.C. § 1125(a)(1)(A)."). The authorities Enigma points to therefore do not justify carving out false advertising claims from the CDA's scope of immunity.

Finally, Enigma does not dispute that its false advertising claim under state law is not exempt under the CDA if immunity were to apply. *See Zango*, 568 F.3d at 1177 (noting that the court has "interpreted § 230 immunity to cover business torts" and citing a case "holding that CDA § 230 provided immunity from state unfair competition and false advertising actions"). It defies logic to immunize a state false advertising claim but reject immunity for a federal false advertising claim based on the same allegations. That is precisely what Enigma asks the Court to do here.

MALWAREBYTES INC.'S REPLY ISO MOTION TO DISMISS FAC     10     Case No.: 5:17-cv-02915-EJD

### B. Enigma Fails to State a Claim Under Lanham Act Section 43(a) and New York General Business Law Section 349.

Malwarebytes is immune from Enigma's Lanham Act and New York General Business Law Section 349 claims under CDA Section 230. Even if it were not, however, Enigma has not pled any false statement of fact made by Malwarebytes, let alone a false and deceptive statement made in commercial advertising or promotion. Its claims should therefore be dismissed.

#### 1. Malwarebytes' Identification of PUPs Is a Non-Actionable Opinion, Not Made in Commercial Advertising or Promotion.

Malwarebytes' identification of Enigma's programs as "Potentially Unwanted Programs" is a non-actionable opinion, protected by the First Amendment, made to users who have already chosen to download and use Malwarebytes' software, and the context of Malwarebytes' identification reinforces that conclusion. As pled in Enigma's FAC, Malwarebytes advises its users that it uses its judgment in identifying PUPs. FAC, Ex. 12 at 1. It further advises users that once identified, *users* "then make a choice in the exclusions list and select what you want to keep or remove." *Id.* Malwarebytes also reinforces this user choice at the time of identification. *E.g.*, FAC ¶¶ 86, 93 (screenshots showing notification of "non-malware detected" and window where the user can choose to "restore" or "delete" identified programs), 32 (screenshot depicting prompt to user: "Waiting for action. Please uncheck elements you want to keep."). Malwarebytes' identification of a program as a PUP is incapable of being proven false at the time it is made. It is thus not an actionable "mixed opinion," as Enigma alternatively contends. Opp. at 16 n.12. As courts have repeatedly held, statements based on the defendant's subjective weighing of criteria—like Malwarebytes' categorization of Enigma's products, here—are non-actionable opinions. *See* Mem. at 15-16.

Moreover, Enigma's conclusory statement that Malwarebytes "knows ESG's programs are not PUPs" does not save its claims (Opp. at 16), nor does its reliance on *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 179 (S.D.N.Y. 2009). There, the plaintiffs sufficiently pled facts supporting a plausible inference that the defendants "knew they were disseminating false and misleading ratings" where they alleged facts itemizing *why* the defendants

"knew the ratings process was flawed," *how* they "knew that the [subject of the rating] was not a safe, stable investment," and also described in "painstaking[] detail the conflicts of interest" that would affect the objectivity of the rating. *Id.* at 178-79. Here, in contrast, Enigma does not point to a single factual allegation to support that Malwarebytes "knew" Enigma's programs were not "potentially unwanted programs" by Malwarebytes' users. Even at the pleading stage, such conclusory allegations are insufficient.

### 2. Statements Recognizing Malwarebytes' Identification of PUPs Are Not False and Deceptive Statements Made in Commercial Advertising or Promotion.

Enigma next attempts to rely on two statements made online "to the consuming public generally" that simply point out the fact that Malwarebytes started identifying Enigma's programs as PUPs. Opp. at 16-17. Enigma does not allege that either statement is false, nor does it even allege that the statements were made by Malwarebytes. First, Enigma points to a Twitter post allegedly made by an AdwCleaner developer "who joined the Malwarebytes team" and who stated "#AdwCleaner by @Malwarebytes now fully detects and removes #SpyHunter from Enigma Software Group. #PUP." FAC ¶ 32. That statement is neither false, nor is there support for the notion that it was made by Malwarebytes. That Malwarebytes detects and removes SpyHunter is a true statement. And Enigma does not allege facts that support a finding that Malwarebytes made the statement. Second, Enigma points to posts in a forum on Malwarebytes' website by third-party forum users. *Id.* ¶ 96. Some users merely observed Malwarebytes' identification, for example by noting that "[s]ince two days ago, Malwarebytes is flagging Spyhunter as a potentially undesired program." *Id.* Again, there is no allegation that the statement is false, and Enigma pleads *no* facts from which the Court could attribute any of those purportedly false statements to Malwarebytes.

Accordingly, Enigma does not plead actionable conduct by Malwarebytes sufficient to state its false advertising claims under the Lanham Act or New York General Business Law Section 349, and the Court should dismiss both claims.

## C. Enigma Failed to Plead Facts to State Claims for Tortious Interference.

While Malwarebytes maintains that this Court can and should apply California law to Enigma's common law claims, Mem. at 17-18, re-briefing its personal jurisdiction challenge to New York does not promote judicial efficiency because ultimately, Enigma's claims for tortious interference fail whether the Court applies California law or New York law.[1] Mem. at 18-21.

### 1. Enigma Does Not Sufficiently Allege Intentional, Tortious Conduct by Malwarebytes Which Disrupted An Economic Relationship With Any Third-Party.

Enigma has not pled the requisite facts to state a claim for tortious interference with prospective business relations because it fails to plausibly allege intentional, tortious conduct by Malwarebytes and fails to allege any economic relationship with a third-party with which Malwarebytes interfered. Under California law, Enigma must allege that Malwarebytes intentionally interfered through some independently unlawful conduct. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 954 (Cal. 2003). Similarly, to state a claim under New York law, Enigma must allege that Malwarebytes "acted solely out of malice, or used dishonest, unfair, or improper means." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006). Enigma does neither. As described in Malwarebytes' opening brief and above, Enigma has not sufficiently pled wrongful conduct that would amount to a cognizable claim. And Enigma's insistence—without a supporting factual allegation—that Malwarebytes intentionally targeted Enigma does not suffice. Enigma must allege, but has not, plausible facts demonstrating that Malwarebytes acted intentionally, *and* that the conduct is independently wrongful.

Moreover, Enigma also fails to identify any economic or business relationship with a third-party that Malwarebytes intentionally interfered with, a requirement under both California and New York law. *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 388 P.3d 800, 803 (Cal.

---

[1] Transfer to this District cured Malwarebytes' personal jurisdiction challenge and the substantive law of this state thus applies to Enigma's common law claims. *See* Mem. at 17-18. Contrary to Enigma's argument, Malwarebytes did not waive its argument that the transferor court lacked personal jurisdiction over it. It timely raised the defense in accordance with Federal Rule of Civil Procedure 12(b)(2) (Dkt. Nos. 17, 37), and this Court is "at liberty to resolve [it] or solicit re-briefing on [it]" (Dkt. No. 67 at 18).

MALWAREBYTES INC.'S REPLY ISO MOTION TO DISMISS FAC — 13 — Case No.: 5:17-cv-02915-EJD

2017); *Kirch*, 449 F.3d at 400. Enigma points to "each prospective ESG customer" who uses Malwarebytes' software (Opp. at 20-21), but does not actually identify a single customer. As the relevant authority explains, such conclusory or speculative reliance on unspecified third-parties is insufficient. *See* Mem. at 19. Instead, a "plaintiff must allege the existence of 'a specific prospective relationship, not [potential relationships] with a class of unknown investors or purchasers.'" *Buxton v. Eagle Test Sys., Inc.*, No. 08-cv-04404, 2010 WL 1240749, at *1 (N.D. Cal. Mar. 26, 2010) (quoting *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793 (1996)). The authorities Enigma cites to—decided before the *Twombly* and *Iqbal* decisions governing pleading standards—do not support its reliance on a broad class of unspecified and speculative business relationships. *Cf. Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 335 (S.D.N.Y. 2003) (plaintiffs "adequately alleged" that but for the defendants' conduct, plaintiffs could have licensed from certain distributors); *Silicon Valley Test & Repair, Inc. v. Gen. Signal Corp.*, No. 93-cv-20448, 1993 WL 373977, at *5 (N.D. Cal. Sept. 13, 1993) (plaintiff alleged that defendants interfered with customers who used a particular model of a wafer prober in factories in three specified states).

### 2. Enigma Does Not Sufficiently Allege Any Valid Contract With Which Malwarebytes Intentionally Interfered.

Enigma does not dispute that it must allege a valid contractual obligation that Malwarebytes intentionally breached or disrupted to state its claim for tortious interference with contractual relations, yet it fails to do so.[2] It points to complaints it allegedly received from its customers, but does not allege that any of those complaining customers had a valid license with Enigma or, significantly, what if any contractual term was breached or disrupted. In contrast to the *Natural Resources* case where the plaintiff's allegations "sufficiently refer[ed] to the contract

---

[2] California and New York law slightly diverge on what conduct is actionable. Under California law, the intentional conduct must be designed to induce breach or disrupt the contractual relationship. *Reeves v. Hanlon*, 95 P.3d 513, 517 (Cal. 2004). New York law, however, requires actual breach. *Kirch*, 449 F.3d at 401-02. Despite vehemently arguing that the Court should apply New York law to its claim, Opp. at 17-19, Enigma appears to rely on the California standard, Opp. at 22.

and the terms which were violated," here, Enigma alleges no term or provision of its purported license agreement with its customers that was disrupted or breached. *Nat. Res. Media & Tech. Grp., LLC v. Snoop Youth Football League Found.*, No. 07-cv-7701, 2008 WL 728650, at *3 (S.D.N.Y. Mar. 14, 2008); *cf. Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*, No. 5:12-cv-06209-EJD, 2016 WL 3648716, at *6 (N.D. Cal. July 7, 2016) (claim dismissed where plaintiff "failed to allege any term or obligation of the [contract] that was disrupted through Defendant's conduct"). And again, Enigma must allege plausible facts demonstrating that Malwarebytes acted intentionally instead of relying on conclusory assertions that Malwarebytes intentionally targeted Enigma.

**D.    The Court Should Dismiss Enigma's FAC With Prejudice.**

Dismissal of Enigma's claims with prejudice under Rule 12(b)(6) is appropriate because Enigma's allegations are incurably deficient. Enigma cannot escape that Malwarebytes—as a software provider—and its users may properly determine what material is "otherwise objectionable" consistent with Congressional intent to encourage the development of technologies to screen or filter objectionable material. Additionally, Malwarebytes properly requested judicial notice of facts from publicly-available court records and websites, and from features of Enigma's own product referenced in its FAC, to further support dismissal. Even without considering those properly noticed facts, however, and as described above, dismissal is warranted. Moreover, because further amendment would be futile, the Court should dismiss the FAC with prejudice. Mem. at 21-22.

**III.   CONCLUSION**

Malwarebytes is immune from each of Enigma's claims under CDA Section 230(c)(2)(A) and 230(c)(2)(B). Even if Malwarebytes were not immune, Enigma fails to state a claim upon which relief can be granted. Enigma already had an opportunity to amend its complaint and further amendment would be futile. Accordingly, Malwarebytes requests that the Court dismiss Enigma's FAC with prejudice.

Dated: October 13, 2017

Respectfully submitted,

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
   Tyler G. Newby
   Attorneys for Defendant
   MALWAREBYTES INC.