Terry Budd (*Admitted Pro Hac Vice*)
BUDD LAW, PLLC
120 Lyndhurst Circle
Wexford, PA 15090
Telephone: 412.613.2541
terry.budd@buddlawglobal.com

Edward P. Sangster (SBN 121041)
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA  94111
Telephone: 415 882 8200
Facsimile: 415 882 8220
edward.sangster@klgates.com

Christopher M. Verdini (*Admitted Pro Hac Vice*)
Anna Shabalov (*Admitted Pro Hac Vice*)
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: 412.355.6500
Facsimile: 412.355.6501
christopher.verdini@klgates.com
anna.shabalov@klgates.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENIGMA SOFTWARE GROUP USA, LLC,<br><br>      Plaintiff,<br><br>  -against-<br><br>MALWAREBYTES INC.,<br><br>      Defendant. | Case No. 5:17-cv-02915-EJD<br><br>**PLAINTIFF ENIGMA SOFTWARE GROUP USA, LLC'S OPPOSITION TO DEFENDANT MALWAREBYTES INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  ISSUES TO BE DECIDED ............................................................................................ 1

III.  PROCEDURAL BACKGROUND.................................................................................. 1

IV.  LEGAL STANDARD..................................................................................................... 2

V.  ARGUMENT .................................................................................................................. 3

    a.  The Court Should Not Take Judicial Notice of the Exhibits to the Kaba Declaration. ........................................................................................................... 3

    b.  The Court Should Not Take Judicial Notice of the Exhibits to the Scott Declaration. ........................................................................................................... 9

VI.  CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Better Homes Realty, Inc. v. Watmore*,
2017 WL 1400065 (S.D. Cal. Apr. 18, 2017)...........................................................................8

*Blye v. Cal. Supreme Ct.*,
2014 WL 295022 (N.D. Cal. Jan. 21, 2014)............................................................................6

*Datel Holdings Ltd. V. Microsoft Corp.*,
712 F. Supp. 2d 974 (N.D. Cal. 2010) ..................................................................................11

*Elder-Evins v. Casey*,
2012 WL 2577589 (N.D. Cal. July 3, 2012).........................................................................10

*Evenchik v. Avis Rent A Car System, LLC*,
2012 WL 4111382 (S.D. Cal. Sept. 17, 2012)....................................................................8-9

*Flick v. Liberty Mut. Fire Ins. Co.*,
205 F.3d 386 (9th Cir. 2000) ..................................................................................................6

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................................8, 9

*Greer v. Elec. Arts, Inc.*,
2011 WL 13152800 (N.D. Cal. Feb. 4, 2011) ......................................................................11

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...........................................................................10-11

*Heidelberg USA, Inc. v. PM Lithographers, Inc.*,
2017 WL 7201872 (C.D. Cal. Oct. 19, 2017).........................................................................8

*Rivera v. Philip Morris, Inc.*,
395 F.3d 1142, 1151 (9th Cir. 2005) ......................................................................................2

*Ruiz v. City of Santa Maria*,
160 F.3d 543 (9th Cir. 1998) ..................................................................................................6

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006) ................................................................................................5

*Shahar v. Hotwire, Inc.*,
2013 WL 12176843 (N.D. Cal. Apr. 15, 2013) ......................................................................8

*Sherrod v. Enigma Software Grp. USA, LLC*,
No. 2:13-cv-00036-JLG-TPK (S.D. Ohio) .............................................................................5

*Spitzer v. Aljoe*,
  2016 WL 3275148 (N.D. Cal. June 15, 2016) ................................................................2

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,
  163 F. Supp. 3d 755 (C.D. Cal. 2015) ..........................................................................8

*Stitt v. S.F. Mun. Transp. Agency*,
  2013 WL 121259 (N.D. Cal. Jan. 8, 2013) ............................................................2, 3, 6

*The Missing Link, Inc. v. eBay, Inc.*,
  2008 WL 1994886 (N.D. Cal. May 5, 2008) ...............................................................10

*Victaulic Co. v. Tieman*,
  499 F.3d 227, 237 (3d Cir. 2007).................................................................................8

**Statutes**

28 U.S.C. § 1404 ..............................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12 .................................................................................................. *passim*

Fed. R. Civ. P. 56.......................................................................................................1, 10

Fed. R. Evid. 201 ....................................................................................................2, 8, 10

iii

**ESG'S OPPOSITION TO MALWAREBYTES' REQUEST FOR JUDICIAL NOTICE**

Plaintiff Enigma Software Group USA, LLC ("ESG") files this Opposition to Malwarebytes Inc.'s ("Malwarebytes") Request for Judicial Notice ("RJN"), Dkt. 147-12, in Support of its Motion to Dismiss Second Amended Complaint ("SAC") Pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. 147 ("Motion").

## I.   INTRODUCTION

Not content to stick to proper Rule 12 motion to dismiss procedures and argue the law on the basis of ESG's well-documented and well-pled factual allegations, Malwarebytes instead burdens this Court with self-serving, improper declarations by its counsel, Moez M. Kaba ("Kaba Declaration"), and one of its employees, Nathan Scott ("Scott Declaration"), and a request for judicial notice of facts that could not possibly satisfy the stringent requirements thereof, because they cannot be readily determined and/or are wholly irrelevant and are offered only to continue Malwarebytes' attempts to smear ESG.  Malwarebytes' submissions of evidence whose accuracy and meaning are heavily disputed would be objectionable even in a Rule 56 context, no less in this Rule 12 context where Malwarebytes attempts to improperly inject them into the record.  This procedural gamesmanship should not be permitted by the Court.  Thus, ESG opposes and respectfully requests that the Court deny Malwarebytes' Request for Judicial Notice of the exhibits to the Kaba and Scott Declarations.

## II.   ISSUES TO BE DECIDED

Should the Court take judicial notice of documents whose accuracy can be disputed, that are irrelevant to ESG's claims, and that improperly attempt to add argumentative new facts to the record in violation of Rule 12(b)(6)?

## III.   PROCEDURAL BACKGROUND

ESG originally filed this case in the Southern District of New York.  *See* Dkt. 1.  There, Malwarebytes moved to dismiss the First Amended Complaint ("FAC") under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim, and in the alternative, to transfer the case to this Court pursuant to 28 U.S.C. § 1404.  *See* Dkt. 37-42.  On May 12, 2017, Judge Engelmayer granted only the § 1404 motion to transfer for convenience.  Dkt. 67 at 11.

1   Following transfer of the case to this Court, the parties briefed Malwarebytes' renewed Rule

2   12(b)(6) motion to dismiss the FAC.  Dkt. 97-103.   In support of that Motion, Malwarebytes filed a

3   Request for Judicial Notice, attaching both an attorney declaration and the Scott Declaration, with

4   Exhibits 1-3.  Dkt. 98.  On November 11, 2017, this Court entered an Order finding Malwarebytes

5   entitled to Section 230 immunity and granting Malwarebytes' motion to dismiss.  Dkt. 67.  ESG

6   appealed that dismissal to the United States Court of Appeals for the Ninth Circuit, which reversed

7   and remanded, holding that Section 230 immunity does not grant immunity to Malwarebytes for

8   blocking a competitor for anticompetitive reasons and finding ESG had properly pled sufficient

9   allegations to withstand a motion to dismiss.  *See* 946 F.3d 1040, 1054 (9th Cir. 2019).

10          Following the U.S. Supreme Court's rejection of Malwarebytes' petition for a writ of

11   certiorari, *see* 141 S. Ct. 13 (2020), and remand of the case to this Court, ESG filed its SAC by

12   agreement of the parties and pursuant to an order from the Court.  Dkt. 140.  Malwarebytes moved to

13   dismiss, again on Rule 12(b)(6) grounds.  Dkt. 147.  In support of the Motion, Malwarebytes filed its

14   RJN, Dkt. 147-12, asking this Court to take judicial notice of the exhibits attached to a new

15   declaration from its attorney, Moez M. Kaba, Dkt. 147-1, and the previously filed Scott Declaration,

16   Dkt. 98-9.  For the reasons set forth below, ESG respectfully requests that the Court deny

17   Malwarebytes' request and not take judicial notice of the exhibits to the Kaba and Scott

18   Declarations.

19   **IV.    <u>LEGAL STANDARD</u>**

20          The Court may judicially notice only "a fact that is not subject to reasonable dispute because

21   it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

22   readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

23   201.  A court may not "take judicial notice of any matter that is in dispute."  *Spitzer v. Aljoe*, 2016

24   WL 3275148, at *1 (N.D. Cal. June 15, 2016).  "The Ninth Circuit has indicated that ***judicial notice***

25   ***should only be taken sparingly, with caution, and after demonstration of a 'high degree of***

26   ***indisputability*.'"  *Stitt v. S.F. Mun. Transp. Agency*, 2013 WL 121259, at *2 (N.D. Cal. Jan. 8,

27   2013) (quoting *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005)) (emphasis added).

28   Moreover, "a court should only take judicial notice of those facts in the documents that are both

1    undisputed and *relevant* to the issues presented in the motion to dismiss." *Id.* (emphasis in original).

2    **V.     ARGUMENT**

3            **a.  The Court Should Not Take Judicial Notice of the Exhibits to the Kaba Declaration.**

4            The Kaba Declaration attaches three categories of documents: (1) Exhibits A-B and D-H,

5    which are documents Malwarebytes attempts to paint as nefarious (RJN at 3-5) but which, in fact,

6    show ESG, in the ordinary course of its business, sending cease and desist letters to and taking

7    proper legal action against "security software providers and product reviewers" based on their

8    misclassification of ESG's SpyHunter program in a manner that ESG believed violated its

9    intellectual property and other rights, (2) Exhibit C, which Malwarebytes completely

10   mischaracterizes as a meritorious "consumer class action complaint … filed against [ESG]" (RJN at

11   3-4), and (3) Exhibits I-J, which are documents purporting to show "webpages on the Malwarebytes

12   website" related to its product and website blocking (RJN at 6-7).  Notably, all of these documents

13   are presented to the Court with Malwarebytes' own self-serving advocacy spin (which ESG

14   disputes) and are not properly the subject of judicial notice.

15           Exhibits A-B and D-H are not matters for judicial notice because they are not relevant to

16   ESG's claims.  These exhibits are nothing more than a transparent attempt by Malwarebytes to vilify

17   ESG and tarnish its reputation before this Court in a false light that has no basis in fact or connection

18   to the claims at issue in this case.  Malwarebytes cites these exhibits in an attempt to provide a

19   veneer of support for its baseless accusation that ESG has "tried to hide its deceptive practices

20   through over a decade's worth of lawsuits and … threat letters," *see* Mot. at 7, but the exhibits show

21   no such thing.  Rather, they reflect only a practice common to all businesses with a brand, a business

22   reputation, and intellectual property to protect.  Businesses routinely send cease and desist letters in

23   an effort to ensure the information about their products in the marketplace published by competitors

24   or others is accurate and to resolve disputes if possible without involving the courts.  In the case of

25   the security software industry specifically, a program's algorithm or heuristics sometimes can

26   inadvertently and incorrectly list another program as a potential problem.  The accepted practice to

27   resolve such a false positive, which discovery in this case will undoubtedly show Malwarebytes also

28   uses, is to contact the listing company to notify it of the incorrect designation and request a review of

the improper listing.  ESG's communications did just that, resulting in ESG being delisted.

Malwarebytes does not even attempt to claim any of these companies designated ESG's programs as

threats or PUPs at the time Malwarebytes began blocking ESG's programs or at any other point

relevant to these proceedings.[1]

Exhibit C is irrelevant to ESG's claims.  Malwarebytes resorts to gross mischaracterization of

the document to claim it demonstrates "[c]onsumers have even sued Enigma for some of the very

tactics that qualified its [program] for Malwarebytes' PUP characterization."  Mot. at 5.  All Exhibit

C in fact reflects is that a single named plaintiff brought suit against ESG, merely purporting to act

on behalf of a consumer class.  Malwarebytes purposely fails to mention to this Court two basic facts

that completely discredit its attempt to trade on this complaint: (1) the Court first granted summary

judgment to ESG on all but one of the named plaintiff's claims and then struck all class allegations

from the complaint in their entirety, after which the case was voluntarily dismissed, and (2) the only

named plaintiff in the case was in fact the wife of one of the attorneys seeking to act as class counsel

---

[1] As if its baseless attempt at character assassination on the basis of routine cease and desist letters
were not enough, Malwarebytes makes the especially inflammatory and objectionable claim that ESG
bullies, threatens, and intimidates minors.  Mot. at 7.  Even a cursory review of Kaba Declaration
Exhibits F-H reveals that ESG's communications were standard fare for industry cease and desist
letters, providing the factual and legal bases for ESG's demands, and what Malwarebytes tries to paint
as "intimidation" was nothing more than ESG responding in the ordinary course to the individual's
legal assertions and threats of instigating unwarranted regulatory investigation.  Perhaps recognizing
the inappropriateness of its bullying claim, Malwarebytes tries to create an illusion of added relevance
by citing Kaba Declaration Exhibits F and G in a chart purporting to show Malwarebytes' assessment
of how SpyHunter 4 satisfied Malwarebytes' PUP criteria.  Mot. at 5-6.  Leaving aside that
Malwarebytes' chart as a whole is in direct violation of Rule 12—as it relies on material outside the
pleadings but also directly contradicts ESG's well pled allegations, *see* Opp. to Mot. at 12-14—
Exhibits F and G do not even support Malwarebytes' claims, as they do not reflect product features or
operation, let alone Malwarebytes' own internal assessment of SpyHunter 4.

4

(ESG originally believed the husband and wife team to be "professional plaintiffs" and that belief was confirmed by the Court's dismissal).  *See Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-cv-00036-JLG-TPK, Dkt. 50 (S.D. Ohio Sept. 29, 2014); *id.* at Dkt. 57 (Jan. 4, 2016); *id.* at Dkt. 58 (Feb. 5, 2016).  As the judicial rulings and the record in that case make clear, the lawsuit in actuality had no merit.

ESG's communications with unrelated third parties and prior disputes or litigation have no bearing on the issue in this case—the legality of Malwarebytes' targeted, anticompetitive blocking of ESG's programs as PUPs and "threats," and the resulting harm to both ESG and its users.  This is evident from Malwarebytes' tortured attempt to claim the SAC "necessarily relies" on these exhibits merely because it refers "to its litigation history" in a single paragraph of its SAC.  RJN at 4, 5 (citing SAC ¶ 194).  That paragraph was part of the SAC section in which ESG demonstrated that each justification Malwarebytes has provided to date for its blocking of ESG's programs was pretextual, and it explained generally that Malwarebytes' complaint that ESG has sent cease and desist letters cannot reasonably be a basis to block ESG's programs as PUPs and "threats" when such a practice is standard for all companies in general to protect and preserve their legal rights.  *See* SAC ¶ 194.  Such a general reference does not mean ESG "necessarily relied" on any particular communications with third parties in its pleading and it does not make the entirety of ESG's cease and desist communications and litigation history an appropriate subject for judicial notice in connection with a narrow Rule 12(b)(6) motion.  Malwarebytes also asserts that ESG's communications and litigation with third parties is somehow relevant to ESG's claim that Malwarebytes maliciously targeted ESG.  RJN at 4, 5.  But the fact that ESG resolved false positives through business channels or legal means years before Malwarebytes began its unlawful blocking of ESG's programs has no bearing on Malwarebytes' anticompetitive motives for its illegal behavior against ESG, which are pled in great detail in the SAC.

Because of the irrelevance of Exhibits A-H to the Kaba Declaration to ESG's claims, Malwarebytes' request for judicial notice is procedurally improper and should be denied.  *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) ("We decline to take judicial notice of the two Staff Reports, as they are not relevant to the resolution of

this appeal."); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 393 n.7 (9th Cir. 2000) ("[W]e deny such a request, because the historical statistics are not relevant to any issue on appeal."); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (refusing to take judicial notice of mayoral and city council election results because "those election results do not tell us if any of the winning candidates were Hispanic-preferred, the relevant issue in this appeal"); *Blye v. Cal. Supreme Ct.*, 2014 WL 295022, at *1–2 (N.D. Cal. Jan. 21, 2014) (refusing to take judicial notice of documents made relevant only "by the argument presented in the request" and "through argument by analogy"); *see also Stitt*, 2013 WL 121259, at *2 ("[A] court should only take judicial notice of those facts in the documents that are … *relevant* to the issues presented in the motion to dismiss.").

Exhibits I-J likewise are an improper subject for judicial notice for at least two independent reasons.  **First,** Exhibits I-J are irrelevant to the issues in this case.  As the "capture timestamps" at the bottom of the exhibits reflect, at best these exhibits show only that the webpages they reflect existed as of January 12, 2021, when Malwarebytes' counsel accessed them to create copies. Malwarebytes blocked SpyHunter 4 as a PUP and "threat" between October 2016 and June 2018, when SpyHunter 4 was phased out of the market, and it blocked ESG's website domains as "malicious" from December 2016 into 2017.  There is no evidence whatsoever that the webpages shown in Exhibits I-J were available to the public in those relevant time frames, let alone that they displayed the same contents.  Even if they had been, however, Malwarebytes webpages claiming to explain why Malwarebytes characterized SpyHunter as a PUP and what Malwarebytes' "malicious" website label means have no bearing on ESG's claims.  As ESG explains in its Opposition to the Motion, such webpages, which are entirely separate from where users see Malwarebytes' characterizations (within Malwarebytes' programs, and with no link or cross-reference to any purportedly explanatory webpages), cannot qualify as a disclosure sufficient to negate the deceptiveness of Malwarebytes' designations.  *See* Opp. at 21-23.  Ultimately, ESG's claims are about Malwarebytes' unlawful, anticompetitive targeting of ESG through automatic blocking of ESG's programs as PUPs and "threats," upon which a handful of isolated webpages have no bearing.

Moreover, Malwarebytes offers Exhibit I as purportedly "explain[ing] Malwarebytes' characterization of SpyHunter as a PUP.Optional Program."  RJN at 5.  But ***SpyHunter 4 has not***

OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE
CASE NO. 5:17-CV-02915-EJD

1   ***been available for consumer purchase since June 2018, and Malwarebytes removed SpyHunter 5***
2   ***from MBAM's PUP list two years ago in February 2019***, meaning that Malwarebytes was, in
3   January 2021, publishing to the general public a webpage that did not accurately reflect its own
4   programs' detections.  Worse, Exhibit I reflects that Malwarebytes continues, years after the fact on
5   SpyHunter 4, to publicly smear and tarnish the SpyHunter brand name, accusing "SpyHunter" of,
6   *inter alia*, acting under "false pretenses" [*sic*] and displaying "intentional false positives," in order
7   for Malwarebytes to promote its own products by directing users to "[p]lease download
8   Malwarebytes" for "[r]emediation" of SpyHunter, because it can "detect and remove
9   PUP.Optional.SpyHunter without further user interaction."  In fact, Exhibit I falsely reports even the
10  basic fact of what kind of computer program SpyHunter is, calling it "a system optimizer published
11  by Enigma Software," when SpyHunter 4 is an anti-malware program, not a "system optimizer"
12  (something Malwarebytes has never contested in over four years of litigation).

13       Exhibit I is clear proof of Malwarebytes' anticompetitive animus and malicious intent
14  towards ESG.  What value does Malwarebytes' publicly posting false, disparaging statements in
15  2021 about an ESG product that has not been on the market for over two years have other than to
16  falsely denigrate its competitor ESG?  Notably, Malwarebytes wrote and posted Exhibit I knowing
17  that it would be publicly available and disparaging the SpyHunter brand name, without being limited
18  to any specific version or time period.[2]  Further, Malwarebytes cannot credibly claim that it posts
19  webpages like Exhibit I for each and every product it has ever previously listed as a PUP.[3]

20

21  ─────────────
    [2] Indeed, Malwarebytes likewise posted a self-serving news story about this Court's dismissal of
22  ESG's First Amended Complaint, which currently remains available on its website to purposely
23  mislead users, since Malwarebytes has not posted any updates advising about its loss in the appeal to
24  the Ninth Circuit or the denial of Malwarebytes' petition for *certiorari* to the U.S. Supreme Court.
25  [3] To the extent that Malwarebytes claims it has posted similar information about other products in the
26  context of boasting on its website that it has forced those products to make changes to seek removal
27  of Malwarebytes' PUP designation, that simply provides yet more proof that Malwarebytes smears
28  other products in its own marketing materials to promote itself and its own products.

1   Malwarebytes' targeting SpyHunter to disparage it as a PUP when Malwarebytes does not designate

2   or block SpyHunter 5 as a PUP can only be designed to harm its competitor ESG's reputation and

3   the reputation of SpyHunter 5.  Exhibit I is nothing more than a marketing tactic intended to further

4   smear ESG's products and push sales of MBAM.

5           ***Second***, Exhibits I-J are not "generally known" and cannot be "accurately and readily

6   determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

7   Malwarebytes offers these two Malwarebytes-generated webpages as evidence of communications it

8   made to customers regarding its designation of SpyHunter 4 as a PUP and its use of the "malicious"

9   website label, pretending their status on Malwarebytes' website alone entitles them to judicial notice.

10  RJN at 5-6.  But "federal courts have hesitated to take judicial notice of information appearing on

11  websites created and maintained by a party" for good reason.  *Heidelberg USA, Inc. v. PM*

12  *Lithographers, Inc.*, 2017 WL 7201872, at *2 (C.D. Cal. Oct. 19, 2017); *see also Better Homes*

13  *Realty, Inc. v. Watmore*, 2017 WL 1400065, at *3 (S.D. Cal. Apr. 18, 2017) ("Information on

14  websites, especially a party's website, is often not considered an appropriate subject of judicial

15  notice."); *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015)

16  ("[P]rivate corporate websites, particularly when describing their own business, generally are not the

17  sorts of sources whose accuracy cannot reasonably be questioned." (quoting *Victaulic Co. v. Tieman*,

18  499 F.3d 227, 237 (3d Cir. 2007))).  Here, as noted above, there is no indication in either the exhibits

19  or the Kaba Declaration that the webpages the exhibits reflect were actually publicly available

20  during the relevant timeframes, rendering them unreliable.  *See Fraley v. Facebook, Inc.*, 830 F.

21  Supp. 2d 785, 795 (N.D. Cal. 2011) ("Exhibits B through F were all accessed on July 1, 2011.  It is

22  thus unclear whether the particular web pages Defendant submits were even in existence at the time

23  Facebook first launched the Sponsored Stories feature or at the time Plaintiffs took the actions that

24  rendered them subject to Sponsored Stories."); *Shahar v. Hotwire, Inc.*, 2013 WL 12176843, at *2

25  (N.D. Cal. Apr. 15, 2013) (denying judicial notice of webpage because "[t]he Court may not take

26  judicial notice of webpages evidencing facts that the parties reasonably dispute" and "it is not clear

27  whether [the webpage] is the same one [plaintiff] would have seen the day he made his reservation,"

28  giving rise to a "reasonable dispute"); *Evenchik v. Avis Rent A Car System, LLC*, 2012 WL 4111382,

1   at *1 (S.D. Cal. Sept. 17, 2012) ("Screen shots of web pages, especially because of the ever-

2   changing content, are not typically the type of document containing facts, the accuracy of which is

3   capable of ready determination.").

4        Thus, none of the facts Malwarebytes offers Exhibits I-J for "can be accurately and readily

5   determined from sources whose accuracy cannot reasonably be questioned," making judicial notice

6   of those exhibits inappropriate.  Malwarebytes nonetheless claims Exhibits I-J are properly subject to

7   judicial notice based on the far-fetched position that the SAC purportedly "rel[ied] extensively on

8   information from the Malwarebytes website," thereby incorporating Exhibits I-J by reference.  RJN

9   at 5-6.  Just because ESG made reference to certain pages on the Malwarebytes website does not

10  mean it *relied* on them.  Moreover, reference to a few webpages in a complaint cannot mean *every*

11  page on a company's website over the course of the company's entire history becomes a proper

12  subject of judicial notice.  *See Fraley*, 830 F. Supp. 2d at 795 (rejecting judicial notice where, *inter*

13  *alia*, "Plaintiffs cite one excerpt from a Help Center page on Facebook's website in their SAC, …

14  [but] it does not follow that a member would necessarily see the other Help Center pages Facebook

15  submits").  Perhaps recognizing the weakness of their position, Malwarebytes also attempts to argue

16  that ESG expressly referred to Exhibit I in its SAC.  RJN at 6.  The SAC paragraph to which

17  Malwarebytes refers, however, reflects that the Malwarebytes Support agent quoted therein was

18  directing a user to articles generally explaining the Malwarebytes "PUP.Optional detection

19  category," ¶ 144, and not the specific Exhibit I webpage titled "PUP.Optional.SpyHunter –

20  Malwarebytes Labs | Malwarebytes Labs | Detections," which Malwarebytes itself describes as being

21  specifically about the SpyHunter detection.  Thus, Malwarebytes' claim that the SAC relies on

22  Exhibits I-J fails.

23        **b.  The Court Should Not Take Judicial Notice of the Exhibits to the Scott Declaration.**

24        Exhibits 1–3 of the Scott Declaration purport to provide information and screenshots from a

25  computer scan that Scott supposedly performed using ESG's anti-malware program called

26  SpyHunter.  Dkt. 98-9, ¶ 2.  Specifically, Exhibit 1 purports to show that SpyHunter 4 detected

27  certain "cookies" as threats, and Exhibits 2 and 3 allegedly show that ESG provided the user with the

28  option to purchase SpyHunter 4 to remove any items detected by the software.  ¶¶ 3–5.

9

Malwarebytes argues that the Court should take judicial notice of Exhibits 1–3 because ESG "referenced and relied on these features of its product in its pleading." RJN at 7. Malwarebytes' argument plainly ignores the requirements of Rule 201 and is factually incorrect.

***First***, Malwarebytes cannot and ***does not even attempt*** to show that Exhibits 1–3 are common knowledge or derived from a source of indisputable accuracy. Accordingly, Malwarebytes' Request for Judicial Notice is fatally defective. *Elder-Evins v. Casey,* 2012 WL 2577589, at \*3 (N.D. Cal. July 3, 2012) (denying judicial notice of facts that "are not found within a source of indisputable accuracy"); *The Missing Link, Inc. v. eBay, Inc.*, 2008 WL 1994886, at \*4 (N.D. Cal. May 5, 2008) (denying judicial notice of a "simulation" of a user posting an item on eBay that was created "after the filing of this lawsuit").

It is particularly ironic that Malwarebytes goes outside the proper boundaries of Rule 12(b)(6) to introduce evidence from Nathan Scott, given his role in the events giving rise to this case. ESG's investigations have already developed evidence that Mr. Scott was involved in working behind-the-scenes with Bleeping Computer's CEO Lawrence Abrams to attack ESG and its claims about the smear campaign in the Related Lawsuit and in the case before this Court. ESG references Mr. Scott at paragraph 33 of the SAC, and discovery will show a great deal about Mr. Scott's role in Malwarebytes' and Bleeping Computer's anticompetitive tactics against ESG. Discovery will also expose Mr. Scott and his characterizations of the evidence he offers here as unreliable, severely biased, and not credible on the matters at issue in this case. This will preclude Mr. Scott's evidence from even supporting a Rule 56 summary judgment motion from Malwarebytes and, therefore, his evidence certainly does not provide grounds for a Rule 12(b)(6) dismissal before any discovery is even afforded to ESG. ESG submits this Court should not make case determinative rulings based on limited and incomplete evidence offered by Mr. Scott.

***Second***, the two cases Malwarebytes cites to support its request do not support judicial notice here. In *Hadley v. Kellogg Sales Co.*, the Court took judicial notice of the packaging of Defendant's product where the plaintiff's claims alleged misleading statements on that product packaging, explaining that judicial notice was appropriate where a document's "contents are alleged in a complaint [or whose contents are essential to a claim] and whose authenticity no party questions, but

which are not physically attached to the [plaintiff's] pleading." 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) (alterations in original). Similarly, in *Datel Holdings Ltd. V. Microsoft Corp.*, the Court took judicial notice of a screenshot showing a required videogame software update, where such software updates were specifically alleged to be a core part of defendant's monopolization of the market in violation of the Sherman Act. *See* 712 F. Supp. 2d 974, 980-81, 985 (N.D. Cal. 2010). By contrast, while the SAC generally informs the Court, for context, that "[u]sers also had the choice to buy a subscription to the full version of SpyHunter 4" and that ESG detects certain cookies because some users find that to be a valuable cybersecurity feature, ¶¶ 50, 187, the contents of Exhibits 1-3 to the Scott Declaration are in no way specifically alleged in the SAC or "essential" to ESG's claims.

*Third*, Exhibits 1-3 are an improper subject for judicial notice because they are not relevant to the resolution of the Motion. The only issue in the Motion is whether ESG has alleged sufficient facts, including about its own programs' legitimacy and Malwarebytes' unlawful, anticompetitive blocking, to support its claims against Malwarebytes. Whether features of ESG's software as a factual matter fall under certain of Malwarebytes' PUP criteria is not only hotly contested by the parties, but also is irrelevant at this stage, especially as ESG has pled that Malwarebytes applied its newly revised PUP criteria in a pretextual manner to target ESG, its direct competitor. *See Greer v. Elec. Arts, Inc.*, 2011 WL 13152800, at *2 n.3 (N.D. Cal. Feb. 4, 2011) ("[The websites] are simply not relevant to the issues presented here. [Defendant] appears to be offering them to bolster its argument that it has no connection to those sites and cannot be liable for contributory or vicarious infringement for any copies of the game made available thereon. At this juncture the only question is whether the complaint itself contains sufficient factual allegations to show the requisite connection between EA and the third-parties' conduct, not whether the contents of those websites demonstrate that there is no such connection.").

Thus, the Court should not take judicial notice of, or in any way consider, the exhibits to the Scott Declaration.

## VI. <u>CONCLUSION</u>

ESG respectfully requests that the Court deny in its entirety Malwarebytes' RJN.

Dated:   February 17, 2021                    Respectfully submitted,

By:   /s/ Terry Budd
      Terry Budd (*Admitted Pro Hac Vice*)
      BUDD LAW, PLLC
      120 Lyndhurst Circle
      Wexford, PA 15090
      Telephone: 412-613-2541
      terry.budd@buddlawglobal.com

      Edward P. Sangster (SBN 121041)
      K&L GATES LLP
      Four Embarcadero Center, Suite 1200
      San Francisco, CA 94111
      Telephone: (415) 882-8200
      Facsimile: (415) 882-8220
      ed.sangster@klgates.com

      Christopher M. Verdini  (*Admitted Pro Hac
      Vice*)
      Anna Shabalov  (*Admitted Pro Hac Vice*)
      K&L GATES LLP
      K&L Gates Center
      210 Sixth Avenue
      Pittsburgh, PA 15222
      Telephone: (412) 355-6500
      Facsimile: (412) 355-6501
      christopher.verdini@klgates.com
      anna.shabalov@klgates.com

      *Attorneys for Plaintiff*

**OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**
**CASE NO. 5:17-CV-02915-EJD**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF SERVICE

I certify that on February 17, 2021, the foregoing was filed electronically using CM/ECF. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Terry Budd*
Terry Budd

**OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**
**CASE NO. 5:17-CV-02915-EJD**