HUESTON HENNIGAN LLP
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Michael H. Todisco, State Bar No. 315814
mtodisco@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

Attorneys for Defendant
Malwarebytes Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ENIGMA SOFTWARE GROUP USA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MALWAREBYTES INC.,<br><br>Defendant. | Case No. 5:17-cv-02915-EJD<br><br>**DEFENDANT MALWAREBYTES INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>**DATE:** January 18, 2024<br>**TIME:** 9:00 AM<br>**COURTROOM:** Courtroom 4, 5th Floor |

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Malwarebytes's designations of Enigma's products are not commercial advertising or promotion subject to the Lanham Act or NYGBL ..... 2

*1. Malwarebytes's designations are not "commercial advertising or promotion" because they are part of the Malwarebytes product itself* ..... 3

2. *Malwarebytes's designations are not "commercial advertising or promotion" because they do not promote Malwarebytes's own products* ..... 6

B. Malwarebytes's designations of Enigma's products are not materially deceptive ..... 8

C. Enigma's remaining tortious interference claim fails ..... 10

III. CONCLUSION ..... 14

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asociacion De Productores v. California Avocado Comm'n*,
2009 WL 10698881 (C.D. Cal. Apr. 2, 2009) .... 1, 6

*Bailey v. Morales*,
190 F.3d 320 (5th Cir. 1999) .... 6

*Barnett v. Cigna Healthcare*,
217 F. App'x 620 (9th Cir. 2007) .... 11

*Benetech, Inc. v. Omni Financial Group*,
116 A.D. 3d 1190 (N.Y. App. Div. 2014) .... 1, 9

*Bildstein v. MasterCard Int'l Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) .... 8

*Carafano v. Metrosplash.com Inc.*,
207 F. Supp. 2d 1055 (C.D. Cal. 2002) .... 5

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .... 2, 6

*Daniels v. Loop Interactive Grp., LLC*,
2015 WL 134308 (Cal. Ct. App. Jan. 9, 2015) .... 10

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) .... 10

*Demetriades v. Yelp, Inc.*,
228 Cal. App. 4th 294 (2014) .... 6

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) .... 3

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .... 10

*Enigma Software Grp. USA LLC v. Malwarebytes Inc.*,
2021 WL 3493764 (N.D. Cal. Aug. 9, 2021) .... 8

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
260 F. Supp. 3d 401 (S.D.N.Y. 2017) .... 12

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
69 F.4th 665 (9th Cir. 2023) .... 4, 8, 11, 12

TABLE OF AUTHORITIES (cont.)

Page(s)

*Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225 (N.D. Cal. 2021) ........ 3

*Fin. One Pub. Co. v. Lehman Bros. Special, Fin.*, 414 F.3d 325 (2d Cir. 2005) ........ 11, 12

*Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001) ........ 5

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ........ 5

*Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001) ........ 5

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020) ........ 2, 4, 5

*Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*, 2016 WL 3648716 (N.D. Cal. July 7, 2016) ........ 14

*Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021) ........ 12

*Lebetkin v. Giray*, 2020 WL 1445752 n.3 (S.D.N.Y. Mar. 25, 2020) ........ 12

*Levin v. McPhee,* 917 F. Supp. 230 (S.D.N.Y. 1996) ........ 13

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005 (S.D.N.Y. 1994) ........ 7

*New York Life Ins. Co. v. Gamer*, 106 F.2d 375 (9th Cir. 1939) ........ 11

*New York Pub. Int. Rsch. Grp., Inc. v. Ins. Info. Inst.*, 554 N.Y.S.2d 590 (N.Y. App. Div. 1990) ........ 7

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ........ 1, 3, 4, 5

*PAX Water Techs., Inc. v. Medora Corp.*, 2019 WL 4390567 (C.D. Cal. Aug. 5, 2019) ........ 7

*Prince v. Intercept*, 634 F. Supp. 3d 114 (S.D.N.Y. 2022) ........ 13

TABLE OF AUTHORITIES (cont.)

Page(s)

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) .......... 3, 6

*Sahebdin v. Khelawan*,
2022 WL 4451005 n.5 (E.D.N.Y. Sept. 24, 2022) .......... 13

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
2004 WL 2648370 (N.D. Cal. June 25, 2004) .......... 4

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) .......... 8

*Steinmetz v. Energy Automation Sys., Inc.*,
43 Misc. 3d 1210(A) (N.Y. Sup. Ct. 2014) .......... 3, 4

*Townsend Farms Inc. v. Goknur Gida Maddeleri*,
2016 WL 10570246 (C.D. Cal. Nov. 21, 2016) .......... 7

*UGG Holdings, Inc. v. Severn*,
2005 WL 5887187 (C.D. Cal. Feb. 23, 2005) .......... 9

*Unsworth v. Musk*,
2019 WL 4543110 (C.D. Cal. May 10, 2019) .......... 10

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) .......... 2

*Vidillion, Inc. v. Pixalate, Inc.*,
2019 WL 13071961 n.2 (C.D. Cal. Mar. 15, 2019) .......... 1, 3, 4

*Zetes v. Stephens,*
969 N.Y.S.2d 298 (App. Div. 2012) .......... 13

**Statutes**

15 U.S.C. § 1125(a)(1)(b) .......... 7

**Rules**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .......... 1

# I. INTRODUCTION

Enigma fails to rebut or even address the most critical facts and cases from Malwarebytes's motion. Enigma has no answer for the clear Ninth Circuit caselaw holding that speech made as part of a product itself is not commercial advertising. Nor can Enigma change the fact that Malwarebytes's repeated and transparent disclosures rebut any suggestion of deceptive practices. Enigma similarly misapplies key choice of law principles in attempting to breathe life into its sole remaining tortious interference claim. As Enigma has now pressed these same baseless claims for over six years with multiple opportunities to cure its allegations, its complaint should be dismissed with prejudice.

***First***, Enigma cannot and has not refuted that Malwarebytes's designations of Enigma's programs do not qualify as "commercial advertising or promotion" sufficient to trigger the Lanham Act and NYGBL because the designations (1) are part of the very functionality of Malwarebytes's product, not an advertisement for it, *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004); and (2) do not refer to, let alone promote, any *Malwarebytes* product, *Asociacion De Productores v. California Avocado Comm'n*, 2009 WL 10698881, at *9 (C.D. Cal. Apr. 2, 2009). The generalized economic motivations Enigma clings to in response—which are present in literally every statement made by a corporation—do not convert Malwarebytes's software program into actionable commercial advertising. *Vidillion, Inc. v. Pixalate, Inc.*, 2019 WL 13071961, at *1 n.2 (C.D. Cal. Mar. 15, 2019) ("Presumably every seller of a good or service hopes that the quality of its product is, in a sense, its own advertising. But that is clearly not what either Congress or the courts mean by 'advertising or promotion.'").

***Second***, Enigma provides no legitimate answer to the fact that Malwarebytes's extensive disclosures negate any possibility of finding material deception under the Lanham Act or NYGBL. Instead, Enigma suggests that Malwarebytes's designations were nonetheless deceptive because the disclosures were not presented directly alongside those designations. In doing so, Enigma ignores both (a) the caselaw cited by Malwarebytes establishing that even disclosures presented on a company's website, rather than directly alongside the designations, nullify any claim of deception, *Benetech, Inc. v. Omni Financial Group*, 116 A.D. 3d 1190, 1192 (N.Y. App. Div. 2014), and (b) that

Malwarebytes disclosed *within the very threat notification pop-ups complained of* that the programs were classified as "Non-Malware."

***Third***, Enigma misapprehends the nature of the Ninth Circuit's non-binding "assumption" that New York law would apply to its intentional interference with economic advantage claim. Enigma's assertions are incorrect but, ultimately, meaningless: its interference claim should be dismissed regardless of whether California or New York law applies.

## II. ARGUMENT

### A. Malwarebytes's designations of Enigma's products are not commercial advertising or promotion subject to the Lanham Act or NYGBL

Enigma's opposition proceeds under the faulty premise that whether Malwarebytes's designations are actionable under the Lanham Act and NYGBL hinges on whether Malwarebytes's designations satisfy the *Bolger* test for First Amendment "commercial speech." (*See* Opp. at 8.) While Malwarebytes's statements are plainly non-commercial under *Bolger*, that is ultimately beside the point. Whether a statement is "commercial speech" under the First Amendment is just *one of four* requirements for the statements to be "commercial advertising or promotion" under the Lanham Act or NYGBL. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 735 (9th Cir. 1999) (statement must be: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods . . . [and (4)] disseminated sufficiently . . . to constitute 'advertising' or 'promotion' within that industry"). In other words, while a finding of "commercial speech" is necessary for Enigma's complaint to survive, it is not sufficient. *Id.*

Even taking Enigma's incorrect standard at face value, its arguments fail. Under the First Amendment, "[c]ommercial speech 'does no more than propose a commercial transaction.'" *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)). Only when this test presents a "close question" do courts turn to the four *Bolger* factors. *Id.* This is not a close question: Malwarebytes's software designations self-evidently do not propose a financial transaction. *IMDb.com*, 962 F.3d at 1122 (deeming there to be no close question, and thus no need for *Bolger*, in

concluding that free online database's information was not commercial speech). Even if this were the sort of case in which *Bolger* were determinative of the commercial speech issue, Enigma would still fall short of that bar in light precedent holding that content similar to Malwarebytes's did not satisfy the *Bolger* criteria. *See, e.g.*, *New.Net, Inc.*, 356 F. Supp. 2d at 1111 (security designations within defendant's software program were "not commercial speech within any commonly understood meaning of that term"); *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1235 (N.D. Cal. 2021) (applying *Bolger* factors and concluding that allegedly false statements within defendants' "pharmaceutical database" were not commercial speech where "the database itself [was] Defendant's product")); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 955 (9th Cir. 2012) (applying *Bolger* factors and concluding that a Yellow Pages phonebook was not commercial speech).

In any event, Enigma's focus on the incorrect legal standard leaves key aspects of Malwarebytes's two arguments under the dispositive and more exacting "commercial advertising or promotion" standard almost entirely unaddressed. Enigma cannot and does not refute that (1) statements made within a product are not commercial advertising; and (2) Malwarebytes's designations do not promote any particular *Malwarebytes* product. (*See* Mot. at 7–11).

*1. Malwarebytes's designations are not "commercial advertising or promotion" because they are part of the Malwarebytes product itself*

As a threshold matter, Malwarebytes's challenged designations are not actionable under the Lanham Act and NYGBL because they are "part of the product itself" and thus "not a commercial advertisement or promotion." *Vidillion*, 2019 WL 13071961, at *1 (dismissing Lanham Act complaint where defendants' "alleged representations" were made within "Defendant's products"); *Steinmetz v. Energy Automation Sys., Inc.*, 43 Misc. 3d 1210(A), 11 (N.Y. Sup. Ct. 2014) (dismissing NYGBL claim where challenged "ratings systems do not propose any offer of sale or other commercial transaction to consumers"); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (holding "alleged false statements" that are "part of the show itself" are "not actionable as commercial advertising or promotion under the Lanham Act"). In fact, as explained above, when a statement is part of the product itself, that statement does not qualify even as "commercial speech" under the First Amendment, let alone as "commercial advertising" under the Lanham Act. *See*

*IMDb.com*, 962 F.3d at 1122 (content on IMDb's website was "encyclopedic, not transactional"); *see also supra* at 2–3 (discussing *IMDb, Exeltis*, and *Dex Media*).

The Central District case of *New.Net, Inc. v. Lavasoft* applied these principles in closely analogous circumstances, dismissing tort and unfair competition claims based on defendant's "Ad-Aware" software labelling plaintiff's program a "data miner." 356 F. Supp. 2d at 1111, 1108. While Enigma attempts at length to cabin *New.Net* to its particular facts, *New.Net*'s hinged not on "competitor" status or "specific" software attributes (Opp. 12), but on the common-sense principle that using free software to scan one's hard drive is "not making a decision to purchase anything" even if a paid version of that software exists. *New.Net*, 356 F. Supp. 2d at 1111. What matters here is that Malwarebytes's software output "focus[es] not so much on the marketing of any particular software program," but on helping users decide "whether they want various software to remain on their computer." *New.Net*, 356 F. Supp. 2d at 1111, 1117–18. As *New.Net* recognized, such software designations are "not commercial speech within the meaning of the Lanham Act," or "within any commonly understood meaning of that term." *Id.* at 1111, 1117. As a final Hail Mary, Enigma suggests that the Ninth Circuit's recent opinion forecloses reliance on *New.Net.* (Opp. 12.) But that decision explicitly remanded the question of whether "those designations were not commercial speech" for this Court to consider "in the first instance." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 n.2 (9th Cir. 2023) ("*Enigma II*").

In the face of this clear precedent, Enigma grasps at two familiar and related straws: (1) that Malwarebytes is a "for-profit business" whose statements serve to "increase its sales and profits and improve its market position" and (2) Malwarebytes's "free trial" products "function as advertising to induce purchase/renewal of . . . paid offerings." (Opp. 7-9.) Both fail under clear caselaw.

*First*, "[t]he mere fact that Defendant may include certain content in its products that they hope will encourage customers to buy the product does not make that content . . . 'advertising or promotion.'" *Vidillion*, 2019 WL 13071961, at *1 n.2; *see also Sigma Dynamics, Inc. v. E. Piphany, Inc.*, 2004 WL 2648370, at *3 (N.D. Cal. June 25, 2004) (holding that statements made during an earnings conference call "that may have an incidental effect of promoting goods to customers" are not actionable under the Lanham Act); (*see also* Mot. at 12–13). In fact, such economic motivations

are insufficient even to establish that a statement is "commercial speech" for First Amendment purposes, which, again, is just one prong of the commercial advertising standard. *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (rejecting argument that speech is commercial "because it may help to sell" a product); *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it *is* the product. It is sold for a profit, but that does not make it commercial speech." (emphasis in original)).

*Second*, that Malwarebytes offers a free-trial versions of its product does not transform every statement made within its products into commercial advertising. As the court in *Carfarno* recognized, the theory that a defendant's business model of "enticing free trial members to become paying members . . . transform[s] the speech at issue into commercial speech" is flatly "without merit." *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1074 (C.D. Cal. 2002). Enigma dedicates only a brief footnote to this issue, arguing that *Carafano* is the "one case" in Malwarebytes's favor and is distinguishable because it supposedly hinged on the fact that the relevant information was "posted by members about themselves" as opposed to by the defendant company. (Opp. at 12 n.3.) Neither part of this statement is true. Just as Malwarebytes has "free and free-trial users" who might *incidentally* consider upgrading to paid versions, (Opp. at 12), the same was true in *New.Net*, in which Lavasoft offered the Ad-aware program "free on the internet, with enhanced versions also available for sale." 356 F. Supp. 2d at 1097. Similarly in *IMDb*, despite the fact that IMDB offered the basic database for free alongside a "premium" paid subscription, the Ninth Circuit held that it "d[id] not present a close question" whether the free database was commercial speech. 962 F.3d at 1122. In any event, no part of *Carafano*'s holding—that "[t]he fact that [defendant] makes a profit from selling memberships does not transform the speech at issue into commercial speech"—was predicated upon who posted what information. 207 F. Supp. 2d at 1074–75. Not only did the *Carfano* court acknowledge that defendant was "more than just a passive conduit of [such] information," but it fundamentally recognized that "[i]t was not the business of the messenger, but the commercial nature of the message" that mattered, as it does here. *Id.* (quoting *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 412 (2001)).

Enigma's affirmative caselaw on this front fares no better. It cites the Fifth Circuit's observation in *Bailey v. Morales*, 190 F.3d 320 (5th Cir. 1999), that "free samples and risk-free trials of products are common marketing tools." *Id.* at 325. For starters, the question in *Bailey* was whether the conduct at issue was speech *at all* and thus the court did not consider, let alone opine on, the line between commercial and non-commercial speech. *Id.* More fundamentally, Enigma's cited language concerned ***mere solicitations*** for a free trial—communications conveying "a particularized message: hire me, try my service"—*not* the underlying free trial itself. *Id.* This very distinction shows why Enigma's claims must fail. To be sure, as Enigma notes, Malwarebytes's products contain some statements that would likely qualify as commercial speech. (Opp. at 8 (noting that Malwarebytes's products contain buttons stating "'BUY NOW,' 'RENEW NOW,' and 'UPGRADE NOW'").) But Enigma does not challenge *those* promotional statements, instead improperly challenging statements that are part of the product itself. *See, e.g.*, *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 310 (2014) ("Yelp's statements about its review filter—as opposed to the content of the reviews themselves—are commercial speech."); *Rice*, 330 F.3d at 1181 (distinguishing between promotional statements on a video jacket, which did qualify as commercial advertising or promotion, and claims made in the video itself, which did not).

2. *Malwarebytes's designations are not "commercial advertising or promotion" because they do not promote Malwarebytes's own products*

Enigma also fails to rebut the dispositive fact that Malwarebytes's software output does not promote Malwarebytes's own products and thus is not actionable "commercial advertising or promotion." *See Asociacion De Productores*, 2009 WL 10698881, at *9 (rejecting plaintiffs' Lanham Act claims based on defendant's critical statements about plaintiffs' goods because such statements did not promote "*defendant's* goods or services" (emphasis in original)). The Ninth Circuit has directly held that "for representations to constitute 'commercial advertising or promotion' . . . they must be . . . for the purpose of influencing consumers to buy *defendant's* goods or services." *Coastal Abstract Serv., Inc.*, 173 F.3d at 735 (emphasis added). Courts have carried out this directive by dismissing false advertising claims concerning alleged false statements about the plaintiff's product, rather than statements about "the pricing, availability, or quality of [defendant's] product."

*Townsend Farms Inc. v. Goknur Gida Maddeleri*, 2016 WL 10570246, at *3 (C.D. Cal. Nov. 21, 2016), *aff'd*, 793 F. App'x 493 (9th Cir. 2019); *New York Pub. Int. Rsch. Grp., Inc. v. Ins. Info. Inst.*, 554 N.Y.S.2d 590, 591–92 (N.Y. App. Div. 1990) (rejecting NYGBL claims based on paid advertisements by insurance trade group that criticized "explosion of civil law suits," since such advertisements were "not specifically directed at potential purchasers of [defendant's] product").

Rather than address such caselaw, Enigma recites the uncontroversial statutory language to show that it governs any "false or misleading description of fact . . . which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her *or another person's goods, services, or commercial activities*[.]" (Opp. at 10 (quoting 15 U.S.C. § 1125(a)(1)(b)) (emphasis added by Enigma).) But Enigma's selective emphasis sidesteps the actual issue at hand—whether Malwarebytes's statements about Enigma were "in commercial advertising or promotion" in the first place. 15 U.S.C. § 1125(a)(1)(b). No such "commercial advertising or promotion" exists where, as here, nothing about Malwarebytes's software designations promotes its own products. Enigma's own case law recognizes as much: "[i]t is clear that the primary concern of Congress in requiring 'commercial advertising or promotion' was to ensure that the Lanham Act did not reach speech that did not promote a competitor's product." *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1020 (S.D.N.Y. 1994); *see also PAX Water Techs., Inc. v. Medora Corp.*, 2019 WL 4390567, at *8 (C.D. Cal. Aug. 5, 2019) ("The FAC adequately alleges economic motivation through Defendant's financial interest *in generating more sales of its product based on the statements about it* [i.e., Defendant's product] and Plaintiffs' product in the White Paper." (emphasis added)).

In the face of its claims' many facial deficiencies, Enigma falls back on the Rule 12(b)(6) standard, suggesting that Malwarebytes is "quibbling" over disputed factual issues. (*See* Opp. at 9–10.) But it is Enigma's *own* allegations and prior arguments which assert that the relevant statements occurred as part of the functioning of Malwarebytes's software. (*See* Mot. at 10–12 (recapping the ways Enigma's prior arguments and allegations require dismissal here).) Conclusory assertions that the basic functionality of product is "marketing" does not make it so. (Opp. 10.) Nor could Enigma's proposed amendments to the SAC remedy this fundamental shortfall: no amount of pleading can

change the fact that the challenged software designations are part of the Malwarebytes product itself; and no amount of pleading can erase Enigma's related, and binding, assertions that Malwarebytes's "*sole purpose*" was to inflict intentional harm upon Enigma—not to promote Malwarebytes's own products, *see Enigma II*, 69 F.4th at 678. Enigma's Lanham Act and NYGBL claims should therefore be dismissed with prejudice.

**B. Malwarebytes's designations of Enigma's products are not materially deceptive**

Enigma's Lanham Act and NYGBL claims fail, additionally, because the software designations they target are not materially deceptive to a substantial segment of consumers. *See Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) (Lanham Act); *Bildstein v. MasterCard Int'l Inc*., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) ("A plaintiff under section 349 must prove . . . that [the challenged act] was misleading in a material way."). The SAC demonstrates that Malwarebytes provided various disclosures explaining the nature of its classifications of Enigma's programs, including indicating on the face of its "threat" notifications that Enigma's programs were detected as "Non-Malware" (see SAC ¶¶ 9, 118–20 (screenshots of Malwarebytes's software identifying Enigma as a PUP in its "threat scan" and notifying users in yellow rather than red color-coding: "Scan Complete: Non-Malware Detected")), and numerous posts on its website outlining Malwarebytes's designation criteria (see, e.g., SAC ¶¶ 9, 118–20; Dkt. 140-15 at 42; RJN Ex. 1).

Enigma does not dispute that these disclosures exist or that they provide sufficient information to inform consumers about the nature of Malwarebytes's classifications. Instead, it complains primarily that Malwarebytes's disclosures were "indisputably disconnected" and "entirely divorced" from the labels themselves. (Opp. at 13–16.) But Enigma fails to address—let alone meaningfully refute—the Court's prior conclusion that "users of Malwarebytes are aware of why it opines that a given software program may be a PUP based on Malwarebytes' disclosed criteria and can choose to quarantine or un-quarantine the detected program." *Enigma Software Grp. USA LLC v. Malwarebytes Inc.*, 2021 WL 3493764, at *9 (N.D. Cal. Aug. 9, 2021). Even setting aside this Court's previous conclusion, Enigma cites no case law articulating this supposed proximity requirement, opting instead to try and divine such a rule solely by distinguishing some of

Malwarebytes's affirmative precedent. (Opp. at 15.) Yet in doing so Enigma conspicuously ignores, *Benetech, Inc. v. Omni Financial Group, Inc.*, discussed at length in Malwarebytes's motion, in which the court held that an insurance policy was not deceptive because "by reviewing the contents of defendant's website and following the hyperlinks contained therein . . . anyone with Internet service would have been able to access defendant's 'Evaluation Matrix,'" which described the "various qualifications used in determining [who could] participate in P3." 116 A.D. 3d 1190, 1192 (N.Y. App. Div. 2014). *Benetech* stands for the proposition that even disclosures where consumers must independently navigate to the "defendant's website" and then follow a series of "hyperlinks," *id.*, are sufficient to foreclose material deception. This holding, and its clear applicability to Malwarebytes, comports with common sense—going to the lengths Malwarebytes did to disclose and explain its criteria to its customers "refut[es] any assertion that defendant engaged in deceptive practices." *Id.*

In any event, Malwarebytes *did* include disclosures directly alongside its designations. It did so directly within Malwarebytes's software itself, for example, by indicating in the very "threat" detection windows complained of that Enigma's programs had been detected as "Non-Malware" (*see, e.g.*, SAC ¶¶ 118–20; Dkt. 140-15 at 21, 25, 41), and via yellow-color-coded "user notifications," (SAC ¶¶ 118–20; Dkts. 140-15 at 41–43 & 140-16 at 41–43 (threat detection alerts contain "user notifications," including yellow notifications for PUPs, which are "non-malware," and red notifications for "malware")). (*See* Mot. at 5, 15, 16–17.) Enigma does not directly address these key facts or even identify a single instance where a "threat" notification was not accompanied by yellow-color-coded, "Non-Malware" labels. (Opp. at 14.) Thus, Malwarebytes's disclosures are even closer to the disclosures at issue in the cases Enigma attempts to distinguish. *See, e.g., UGG Holdings, Inc. v. Severn*, 2005 WL 5887187, at *10 (C.D. Cal. Feb. 23, 2005) (disclosure of product's origin was on the product's tag, not next to the allegedly false "UGG Australia" designation at issue).

Moreover, Enigma ignores the relationship between the non-actionable PUP classification and the "threat" and "malicious" labels. As the SAC itself alleges—and as extensively explained in the motion to dismiss, without rebuttal (Mot. at 4–6, 16)—those labels were assigned because Enigma's programs were flagged by Malwarebytes software as PUPs. (*See* SAC ¶ 9 (alleging that

Malwarebytes's programs "automatically identify and list . . . purported PUPs as 'threats'"); id. ¶ 13 (alleging that Malwarebytes used its "self-serving PUP criteria" to block ESG's "products, website, and other domains").) That inseparable tie between PUP classification and the "threat" and "malicious" labels was, itself, disclosed to consumers at length, including in the threat detection notifications at issue. (*See, e.g.*, SAC ¶¶ 9, 118–20 (showing the threat category was "Potentially Unwanted Program"); RJN Ex. 1 at 1 (disclosing that a website will be flagged as "malicious" for the "hosting [of] PUPs"); Dkt. 140-15 at 17, 41-42; Dkt. 140-16 at 36; Dkt. 140-14.)

Finally, Enigma continues to rely on the SAC's handful of examples of supposed "actual deception" as conveyed by various anonymous online user complaints. (Opp. at 14, 16.) But "[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (affirming dismissal of false advertising claim despite the "possib[ility] that some consumers" might be misled by the relevant nondisclosure). Even at the motion to dismiss stage, the reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public . . ., acting reasonably in the circumstances, could be misled,'" irrespective of the fact that the statement '"might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal of deceptive labeling claim); *Unsworth v. Musk*, 2019 WL 4543110, at *8 (C.D. Cal. May 10, 2019) (rejecting reliance on "user comments" because the relevant question "is not how readers did interpret Defendant's remarks" but looks instead to the "reasonable" reader); *Daniels v. Loop Interactive Grp., LLC*, 2015 WL 134308, at *7 (Cal. Ct. App. Jan. 9, 2015) ("In short, the internet comments—even those referring to Daniels as a gangbanger and murderer—are not shown to be indicative of the understanding of the average reader of the MTO article.").

**C. Enigma's remaining tortious interference claim fails**

As explained in the motion to dismiss, Enigma's tortious interference with prospective economic advantage claim fails under both New York and California law. To avoid dismissal,

Enigma misconstrues the import of the Ninth Circuit's opinion, misrepresents its own pleadings, and misapplies New York's choice-of-law test.

At the outset, Enigma incorrectly suggests that it is the law of the case that New York law applies to its tortious interference claim. But although the Ninth Circuit "assume[d]" without analysis that New York law would presumably apply to claims that Malwarebytes interfered with New York residents, *Enigma II*, 69 F.4th at 678–79 (Baker, J., concurring), that unreasoned assumption does not constitute law of the case. *See New York Life Ins. Co. v. Gamer*, 106 F.2d 375, 376–77 (9th Cir. 1939) (Supreme Court's statements were "not the law of the case" binding the lower court where the Supreme Court merely "assumed" certain conclusions without discussion); *Barnett v. Cigna Healthcare*, 217 F. App'x 620, 622 (9th Cir. 2007) ("An issue must have been fully considered in a prior ruling to be entitled to deference under the law of the case doctrine."). Moreover, as Enigma itself acknowledges, the Ninth Circuit's assumption was limited to claims directly involving interference with consumers in New York, not to "transactions . . outside the state." (Opp. at 16 (quoting *Enigma II*, 69 F.4th at 675–76).) As discussed in the motion to dismiss, Enigma's claim for interference with prospective economic advantage is not such a claim.

Enigma likewise misapplies New York's choice-of-law principles. Enigma falters at the first step of the test—whether an "actual conflict" exists between New York and California law due to California's requirement of an "independently wrongful act." Enigma asserts that "[b]ecause the Court should find that ESG's Lanham Act and/or NYGBL claims survive, there is no conflict between New York and California law, and as a result, New York law would apply to the entire dispute." (Opp. at 17.) This is wrong in multiple respects. *First*, those claims *cannot* survive, precluding a finding of the "independently wrongful act" required under California law and thus rendering the difference between California and New York law outcome-determinative. (*See* Mot. at 19 n.6, & 20.) *Second*, Enigma's argument flies in the face of New York's "actual conflict" test, which considers whether a difference in law is "relevant to the issue at hand and has a significant *possible* effect on the outcome of the case." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (cleaned up). Thus, even if Enigma's statutory claims could survive the motion to dismiss, the possibility that they will fail at summary judgment or trial means that the

choice of law would plainly have a "significant *possible* effect on the outcome of the trial" with respect to Enigma's interference claim. *Id.*

Enigma also misapplies the test to determine which state has the predominant interest in having its law applied. The motion to dismiss explained why California, rather than New York, has the predominant interest with respect to the interference with economic advantage claim. (*See* Mot. at 19–20.) For example, the decision by the Southern District of New York transferring venue—which found that all of "the key facts giving rise to Enigma's claims occurred in California" and that "the center of gravity in this case . . . is *clearly* the Northern District of California" (Dkt. 67 at 14–15)—serves as highly persuasive authority that California has the predominant interest. Indeed, even Enigma's *own* cases recognize that, in determining what law to apply, "New York courts apply the 'center of gravity' . . . choice-of-law theory." *Lebetkin v. Giray*, 2020 WL 1445752, at *5 n.3 (S.D.N.Y. Mar. 25, 2020), *aff'd*, 2021 WL 2965323 (2d Cir. July 14, 2021).

To argue otherwise, Enigma puts forward a collection of factors and cases which do not support the application of New York law. For example, Enigma specifically highlights that factors to be considered in the interest analysis are "plaintiff's domicile," "where plaintiff suffered injury," and "where [the challenged] statements emanated from." (Opp. at 17–18.) But Enigma's domicile and thus where it allegedly suffered injury is Florida—not New York—and Malwarebytes's statements "emanated" from California, where Malwarebytes is domiciled. (*See* Mot. at 19–20; SAC ¶¶ 34–35.) These facts stand in direct contrast to cases relied upon by Enigma, in which the court held that New York law applied because the defendant was "domiciled in New York," "the alleged defamatory statement emanated from New York," and "New York ha[d] strong policy interests in regulating the conduct of its citizens." *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021); *see also Lebetkin,* 2020 WL 1445752, at *5 n.3 (concluding that "[a]ll of the events at issue occurred in New York . . . [and] both [parties] were New York residents during the relevant time period," not to mention the fact that "the parties *agree[d]* that New York law applies" (emphasis added)). Here, as Judge Engelmayer already explained, it is *California* that satisfies the most factors, "including factors commonly given significant weight." *See Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 409–12 (S.D.N.Y. 2017) (holding that convenience of

witnesses, locus of operative facts, and convenience of parties all favored transfer to California, and observing that the first two of these three factors are often considered the most important ones when assessing transfer).

Faced with these inconvenient facts and the unfavorable transfer order, Enigma resorts to arguing that "Malwarebytes' anticompetitive campaign arises directly out of activities by Bleeping Computer, a New York-based media outlet, and [in response to] an SDNY litigation [involving Bleeping Computer]." (Opp. at 18.) This supposedly gives New York the predominant interest because "New York has 'strong policy interests in regulating the conduct of its citizens and its media.'" (*Id.* (quoting *Prince v. Intercept*, 634 F. Supp. 3d 114, 133 (S.D.N.Y. 2022).) But this position is absurd. Bleeping Computer is not a party to this litigation. And Malwarebytes and Enigma are not New York companies. *This* litigation is thus not "regulating the conduct of [New York's] citizens [or] its media." *Cf. Prince*, 634 F. Supp. 3d at 133–34 (S.D.N.Y. 2022) (holding that New York law applied because the "Defendants are domiciled in New York" and plaintiff alleged "interference with and damage to [his] relationships . . . worldwide"); *see also Levin v. McPhee,* 917 F. Supp. 230, 236 (S.D.N.Y. 1996) (applying the law of the state where "the conduct at issue—publication of the allegedly libelous statements—took place," i.e., "where the author resides and where both publishers are headquartered").

Even if New York substantive law applied, Enigma's lack of allegations that Malwarebytes interfered with specific *prospective* customers *in New York*, (*see supra* n.4; Mot. at 18), dooms its claim. *See Sahebdin v. Khelawan*, 2022 WL 4451005, at *9 n.5 (E.D.N.Y. Sept. 24, 2022) ("New York common law claim[s]" apply "only within the state"); *Zetes v. Stephens,* 969 N.Y.S.2d 298, 304 (App. Div. 2012) (intentional interference claim requires plaintiff to "identify a specific [prospective] customer" who would have purchased Enigma's products "'but for' [Malwarebytes's] conduct"). Despite Enigma's protestations that it has pleaded "lost prospective customers 'in New York,'" (Opp. at 19 n.7), its complaint shows otherwise. Enigma's complaint takes pains to distinguish between "customers"—for purposes of its contractual relations claim—versus "potential" or "prospective customers"—for purposes of its prospective economic advantage claim. (*Compare* SAC ¶ 235 (existing customers), *with* ¶ 244 (defining "prospective customers" as those "who have

not yet paid the SpyHunter 4 or RegHunter 2 license fees").) But Enigma alleges only that Malwarebytes interfered with thirty-one *existing* "customers . . . [who] reside in New York," while stating that "untold numbers of other *potential* customers," in untold locations, may have chosen never to purchase a SpyHunter subscription. (SAC ¶ 162 (emphasis added); *see also id.* ¶ 52 ("ESG enjoyed *sales* of SpyHunter 4 to millions of customers, including to residents of New York" (emphasis added)).) Enigma's allegation that Malwarebytes "intentionally interfered with [] prospective business relationships" with "prospective customers," (SAC ¶¶ 244, 246), simply does not include *prospective customers in New York* as required to apply New York law to this particular claim.

## III. CONCLUSION

For the foregoing reasons, each of Enigma's claims should be dismissed. Moreover, permitting further amendment would be futile because no amount of further pleading can cure the complaint's deficiencies, including the fact that Malwarebytes's statements were made within its products, not in advertising, and were accompanied by disclosures negating any possible finding of deception. As Enigma has already amended its complaint twice during this six-year litigation, dismissal should be with prejudice. *Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*, 2016 WL 3648716, at *5 (N.D. Cal. July 7, 2016) ("In light of Plaintiff's 'repeated failure to cure deficiencies by amendments previously allowed,' leave to amend will be denied.").

Dated: December 4, 2023

HUESTON HENNIGAN LLP

By: ______________________

Moez M. Kaba
Michael H. Todisco
Hueston Hennigan LLP
Attorneys for Defendant
MALWAREBYTES INC.