**HUESTON HENNIGAN LLP**
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Michael H. Todisco, State Bar No. 315814
mtodisco@hueston.com
Spencer Schmider, State Bar No. 332147
sschmider@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:    (213) 788-4340
Facsimile:    (888) 775-0898

Warren Crandall, State Bar No. 340077
wcrandall@hueston.com
1 Little West 12th St, Second Floor
New York, NY 10014
Telephone:    (646) 930-4046

Attorneys for Defendant
Malwarebytes Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ENIGMA SOFTWARE GROUP USA, LLC, | Case No. 5:17-cv-02915-EJD |
|---|---|
| Plaintiff, | **DEFENDANT MALWAREBYTES INC.'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| vs. | |
| MALWAREBYTES INC., | Second Amended Complaint filed: November 30, 2020 |
| Defendant. | |

- 1 -
MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

Defendant Malwarebytes Inc. ("Malwarebytes") by its undersigned counsel submits its Answer, Affirmative Defenses, and Counterclaims to the Second Amended Complaint ("SAC") of Plaintiff Enigma Software Group USA, LLC ("Enigma" or "ESG"). This Answer is based on Malwarebytes' investigation to date, and Malwarebytes reserves the right to supplement or amend this Answer throughout the course of litigation as new information is learned.  The numbered paragraphs of this Answer correspond to the numbered paragraphs in the SAC.  The headings used in the SAC are restated herein for ease of reference, and no admission is made by their use here.

Malwarebytes denies each and every allegation not expressly admitted below.

## OVERVIEW OF THE CASE

1.    Malwarebytes admits that the allegations in Paragraph 1 characterize Enigma's lawsuit and the relief it seeks against Malwarebytes but denies that any such claims for relief are meritorious. The remainder of Paragraph 1 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 1.

2.    Malwarebytes admits that Enigma has developed and provided software products to computer users since at least 2003, including its products SpyHunter 4 and RegHunter 2.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 2.

3.    Malwarebytes admits the allegations in Paragraph 3 regarding cybercrime and the important role anti-malware products generally play in helping consumers and businesses combat that ever-evolving crime.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 3, including that Enigma's SpyHunter 4 and RegHunter 2 play an important role in protecting computer users.

4.    Malwarebytes presently lacks sufficient information to admit or deny Enigma's allegations regarding certain unspecified testimony, and denies those allegations and related characterizations on that basis.  The remainder of Paragraph 4 sets forth legal conclusions for which no response is required.  To the extent further response is required, Malwarebytes denies the allegations in Paragraph 4.

5.    Malwarebytes presently lacks sufficient information to admit or deny the allegations in Paragraph 5 that CEO Marcin Klecyznski made statements "repeatedly likening layered protection

from multiple cybersecurity products to equipping cars with both 'airbags' and 'seatbelts' to help ensure safety" and denies them on that basis. Malwarebytes denies the remainder of Paragraph 5's allegations.

6.    Malwarebytes admits that it is an industry leader and expert in anti-malware products, and that it has provided such products since 2008 to protect users' computers from malware, PUPs, privacy risks, and other risky programs. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 6, including the comparison of Malwarebytes' anti-malware products to Enigma's products.

7.    Malwarebytes admits that it sells and markets anti-malware and Internet security products, and that it promotes, markets, and sells its products as consumer and business solutions that detect and remove malware, PUPs, and other potentially risky programs on users' computers in the United States and worldwide. The remainder of Paragraph 7 sets forth legal conclusions for which no response is required, regarding whether Malwarebytes' products "directly competed with ESG's flagship anti-malware product." To the extent a response is required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 7.

8.    Paragraph 8 sets forth a legal conclusion for which no response is required. To the extent a response is required, Malwarebytes denies the allegations in Paragraph 8.

9.    Malwarebytes admits that its MBAM products are software that detect PUPs. Malwarebytes otherwise denies Enigma's characterization of the software's operation, including that quarantined programs are "inaccessible" to users. The allegations in Paragraph 9 also include characterizations of a screenshot purportedly showing MBAM "'Threat Scan Results' for a computer on which there is malware and purported PUPs," with scan results allegedly "show[ing] over 700 purported 'threats.'" Malwarebytes lacks sufficient information to admit or deny whether the screenshot is authentic and denies the allegations and characterizations based on the screenshot on that basis. To the extent the screenshot is authentic, Malwarebytes refers the Court to the screenshot, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 9.

10.     Malwarebytes admits that, from its founding in 2008 through October 4, 2016, its MBAM products had not designated SpyHunter 4, RegHunter 2, or any other ESG product as a PUP or as malware.  The remainder of Paragraph 10 sets forth legal conclusions for which no response is required, regarding whether "Malwarebytes directly competed with ESG in the cybersecurity and privacy protection market."  To the extent a response is required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 10.

11.     Malwarebytes admits that, from its founding in 2008 through October 4, 2016, its MBAM products had not classified SpyHunter 4, RegHunter 2, or any other ESG product as a PUP. Malwarebytes lacks sufficient information to admit or deny Enigma's allegations and characterizations of the alleged "historical free market conditions" Enigma describes prior to Malwarebytes's designating Enigma's products as "PUPs" in October 2016, and denies the allegations and characterizations on that basis.  The allegations in Paragraph 11 also include characterizations of certain court proceedings.  Malwarebytes admits the existence of those proceedings but denies Enigma's characterization of them.  The allegations in Paragraph 11 set forth legal conclusions for which no response is required, including that Malwarebytes acted "unlawfully" and "employed highly deceptive and misleading practices."  To the extent further response is required, and except as expressly admitted, Malwarebytes denies the remainder of Paragraph 11's allegations.

12.     Malwarebytes admits that it announced on October 5, 2016 that it had revised its PUP criteria and that, under the new criteria, SpyHunter 4 and RegHunter 2 were designated as PUPs. The allegations contained in Paragraph 12 include a characterization of a particular document attached to Enigma's complaint.  Malwarebytes admits the existence of that document but denies Enigma's characterization of that document.  Malwarebytes refers the Court to that document, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 12.

13.     Malwarebytes admits that, under its revised PUP criteria, SpyHunter 4 and RegHunter 2 were designated as PUPs.  Malwarebytes also admits that there is a "subjective" element to its PUP criteria.  The allegations in Paragraph 13 also include characterizations of certain court proceedings.

1  Malwarebytes denies the characterization of such court proceedings.  The remainder of Paragraph 13

2  sets forth legal conclusions for which no response is required.  To the extent further response is

3  required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 13.

4      14.    Malwarebytes admits that, under its revised PUP criteria, SpyHunter 4 and RegHunter

5  2 were designated as PUPs, and that Malwarebytes's MBAM products classified those Enigma

6  programs as such.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph

7  14.

8      15.    Malwarebytes admits that it acquired AdwCleaner, an anti-adware product, and that

9  AdwCleaner did not identify SpyHunter 4 or RegHunter 2 as PUPs at the time of the acquisition.

10 Malwarebytes denies that AdwCleaner had "never before" identified SpyHunter 4 or RegHunter 2

11 "as PUPs or any other type of threat." Except as expressly admitted, Malwarebytes denies the

12 allegations in Paragraph 15.

13     16.    The allegations contained in Paragraph 16 include a characterization of a particular

14 website screenshot attached to Enigma's complaint. Malwarebytes lacks sufficient information to

15 admit or deny whether the screenshot is authentic and denies the allegations and characterizations

16 based on the screenshot on that basis.  To the extent the screenshot is authentic, Malwarebytes refers

17 the Court to the screenshot, which speaks for itself and is the best evidence of its contents, for a true

18 and complete statement of its contents.  Malwarebytes denies that MBAM and AdwCleaner continue

19 to identify RegHunter 2 as a PUP to this day. The remainder of Paragraph 14 sets forth legal

20 conclusions for which no response is required, regarding Malwarebytes's alleged "purposeful

21 anticompetitive scheme."  To the extent a response is required, Malwarebytes denies the remainder

22 of Paragraph 14's allegations.

23     17.    Malwarebytes admits that, for the fiscal year 2020, its revenues exceeded $190

24 million. The allegations in Paragraph 17 also include allegations regarding Malwarebytes' growth

25 and revenue during an undefined "relevant time period."  Malwarebytes lacks sufficient information

26 to admit or deny its revenues and growth during this unspecified range of time, and denies the

27 allegations and characterizations on that basis.  Except as expressly admitted, Malwarebytes denies

28 the allegations in Paragraph 17.

18.     Paragraph 18 sets forth legal conclusions for which no response is required, regarding whether Malwarebytes' designations of ESG's products were "false and misleading." Malwarebytes denies the allegations in Paragraph 18.

19.     Paragraph 19 sets forth legal conclusions for which no response is required, regarding whether the parties are competitors, causation, and harm, including "irreparable harm." Regardless, Malwarebytes denies Paragraph 19's allegations.

20.     The allegations in Paragraph 20 include characterizations of certain court proceedings. Malwarebytes admits the existence of those proceedings but denies Enigma's characterization of them. The allegations in Paragraph 20 sets forth legal conclusions for which no response is required, including whether Malwarebytes acted in "bad faith" and "unlawfully employ[ed] anticompetitive, unfair trade practices." Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 20.

21.     Malwarebytes admits the existence of a Joint Confidentiality Agreement between Malwarebytes and Bleeping Computer, LLC entered into on June 5, 2009. Malwarebytes denies Enigma's characterization of that document, which speaks for itself and is the best evidence of its contents. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 21.

22.     Malwarebytes admits that Bleeping Computer participates in Malwarebytes's affiliate program, through which Bleeping Computer is paid certain fees and commissions for converting downloads of Malwarebytes's products. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 22.

23.     The allegations contained in Paragraph 23 consist of a characterization of certain court proceedings. Malwarebytes admits the existence of those proceedings but denies Enigma's characterization of those proceedings.

24.     The allegations contained in Paragraph 24 include a characterization of a subpoena served on Malwarebytes in certain court proceedings. Malwarebytes admits the existence of the subpoena but denies Enigma's characterization of the subpoena and Malwarebytes's response to it. The allegations in Paragraph 24 set forth legal conclusions for which no response is required. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 24.

25.     Malwarebytes admits that, on October 5, 2016, it revised its PUP criteria and that, under the new criteria, SpyHunter 4 and RegHunter 2 were designated as PUPs.  The allegations contained in Paragraph 25 also include a characterization of a particular website screenshot attached to Enigma's complaint. Malwarebytes lacks sufficient information to admit or deny whether the screenshot is authentic and denies the allegations and characterizations based on the screenshot on that basis.  To the extent the screenshot is authentic, Malwarebytes refers the Court to the screenshot, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.    The allegations in Paragraph 25 set forth legal conclusions for which no response is required, including regarding Bleeping Computer's "defenses in the Bleeping Computer Lawsuit" and whether it engaged in "unlawful conduct."  To the extent a response is required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 25.

26.     Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 26, which make allegations about what Bleeping Computer and Malwarebytes "communities" believed, and denies them on that basis.  Malwarebytes also denies Enigma's characterization that Malwarebytes "attempts to pretend that the timing of its new blocking of ESG's products was merely a 'coincidence' and not directly related to the Bleeping Computer Lawsuit and the Subpoena."  Malwarebytes denies the remainder of the allegations in Paragraph 26.

27.     The allegations contained in Paragraph 27 include a characterization of a particular website screenshot attached to Enigma's complaint. Malwarebytes lacks sufficient information to admit or deny whether the screenshot is authentic and denies the allegations and characterizations based on the screenshot on that basis.  To the extent the screenshot is authentic, Malwarebytes refers the Court to the screenshot, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.  The allegations in Paragraph 27 set forth legal conclusions for which no response is required, including whether certain posters on the Malwarebytes forums were "Malwarebytes representative[s] whose [sic] could legally speak for and bind Malwarebytes through statements on the Malwarebytes Forum."  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 27.

6716415

28.     The allegations contained in Paragraph 28 include characterizations of particular website screenshots attached to Enigma's complaint. Malwarebytes lacks sufficient information to admit or deny whether the screenshots are authentic and denies the allegations and characterizations based on the screenshots on that basis.  To the extent the screenshots are authentic, Malwarebytes refers the Court to the screenshots, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents.  Malwarebytes admits that Ade Gill was a Malwarebytes employee at the time of the alleged communications referenced in Paragraph 28 but denies Mr. Gill was a "research executive." The allegations in Paragraph 28 regarding Mr. Gill's authority to speak for or bind Malwarebytes set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies those allegations in Paragraph 28.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 28.

29.     The allegations contained in Paragraph 29 include a characterization of a particular website screenshot attached to Enigma's complaint. Malwarebytes lacks sufficient information to admit or deny whether the screenshot is authentic and denies the allegations and characterizations based on the screenshot on that basis.  To the extent the screenshot is authentic, Malwarebytes refers the Court to the screenshot, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 29.

30.     Malwarebytes admits that, following its acquisition of AdwCleaner, Jérôme Boursier joined Malwarebytes as the Technical Product Manager responsible for the AdwCleaner product, but denies Enigma's characterizations to this end including that Mr. Boursier joined as "a company executive."   The allegations in Paragraph 30 also include characterizations of a screenshot purportedly showing a tweet Mr. Boursier posted to Twitter.   Malwarebytes lacks sufficient information to admit or deny whether the screenshot is authentic or whether the alleged tweet was authored by Mr. Boursier and denies the allegations and characterizations based on the screenshot on that basis.  To the extent the screenshot is authentic, Malwarebytes refers the Court to the screenshot, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.  The allegations in Paragraph 30 set forth legal conclusions for which no

1  response is required, regarding whether the alleged post by Mr. Boursier was made within the scope

2  of "his new role at Malwarebytes."   Except as expressly admitted, Malwarebytes denies the

3  allegations in Paragraph 30.

4       31.    The allegations in Paragraph 31 include characterizations of a screenshot purportedly

5  showing a conversation between users on Malwarebytes's forums.  Malwarebytes lacks sufficient

6  information to admit or deny whether the screenshot is authentic and denies the allegations and

7  characterizations based on the screenshot on that basis.  To the extent the screenshot is authentic,

8  Malwarebytes refers the Court to the screenshot, which speaks for itself and is the best evidence of

9  its contents, for a true and complete statement of its contents.  The allegations in Paragraph 31

10  regarding the authority of forum users to speak for or bind Malwarebytes sets forth legal conclusions

11  for which no response is required.  To the extent a response is required, Malwarebytes denies the

12  allegations in Paragraph 31 to that end.  Except as expressly admitted, Malwarebytes denies the

13  allegations in Paragraph 31.

14       32.    Malwarebytes admits that the allegations in Paragraph 32 characterize Enigma's

15  lawsuit and the relief it seeks against Malwarebytes but denies that any such claims for relief are

16  meritorious. The remainder of Paragraph 32 sets forth legal conclusions for which no response is

17  required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 32.

18       33.    The allegations in Paragraph 33 set forth legal conclusions for which no response is

19  required, regarding which individuals were "involved in" or have "directly relevant knowledge of the

20  facts and circumstances surrounding the subject of ESG's claims against Malwarebytes."  To the

21  extent a response is required, Malwarebytes denies the allegations in Paragraph 33.

22  **THE PARTIES**

23       34.    Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as

24  to Enigma's own corporate structure, history, and place of business, and denies the allegations on

25  that basis.

26       35.    Malwarebytes admits the allegations in Paragraph 35, with the correction that it

27  amended its name to "Malwarebytes Inc." on December 21, 2015.

28

36.    Malwarebytes admits that it has offices in the United States, and that its affiliates have offices in Ireland and Estonia. Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to the location of Enigma's offices, and denies the allegations on that basis. Malwarebytes lacks sufficient information to admit or deny whether Mr. Kleczynski made the quoted statement that "You go where the talent is," and denies the allegation on that basis.

37.    Malwarebytes admits that at least five Malwarebytes employees currently work from New York, with at least four in the greater New York City area.  Malwarebytes admits that, as of December 2016, at least five Malwarebytes employees worked from New York.  Paragraph 37 also includes characterizations of two website screenshots attached to Enigma's complaint. Malwarebytes lacks sufficient information to admit or deny whether the screenshots are authentic and denies the allegations and characterizations based on the screenshot on that basis.  To the extent the screenshots are authentic, Malwarebytes refers the Court to those screenshots, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents. Malwarebytes lacks sufficient information to confirm or deny what unspecified "press reports" indicated regarding Malwarebytes's employment of New York developers, and denies that allegation on that basis.  Malwarebytes denies that it employed "developers" in New York at the time of the filing of the original complaint.  Malwarebytes admits that it has advertised its software online and that those ads are viewable by consumers in New York.  Malwarebytes admits that it has provided and sold its software through its website and resellers, including to consumers and businesses in New York.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 37.

38.    Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to the location of "at least thirty-one (31) ESG customers who, upon information and belief, reside in New York," and denies the allegations on that basis.  The remainder of Paragraph 38 sets forth legal conclusions for which no response is required, regarding whether Malwarebytes made "false representations" and "has been misleading and deceiving consumers and businesses in New York." To the extent a response is required, Malwarebytes denies the allegations in Paragraph 38.

39.    Paragraph 39 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 39.

**JURISDICTION AND VENUE**

40.    Paragraph 40 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes admits that U.S. district courts have subject matter jurisdiction but denies that any of Enigma's claims are meritorious.

41.    Paragraph 41 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 41.

42.    Paragraph 42 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 42.

43.    Paragraph 43 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 43.

44.    Admitted.

45.    The allegations contained in Paragraph 45 include characterizations of certain court proceedings.  Malwarebytes admits the existence of those proceedings but denies Enigma's characterization of those proceedings.  Malwarebytes refers the Court to the transcript of the proceedings that Enigma attached to its Complaint, which speaks for itself and is the best evidence of the proceeding in question, for a true and complete statement of the proceeding.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 45.

46.    Paragraph 46 sets forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 46.

**ADDITIONAL FACTUAL BACKGROUND**

**ESG and Malwarebytes Directly Compete in the Anti-Malware**

**Internet Security, and Privacy Protection Market**

47.    Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to Alvin Estevez's experience and expertise and denies the allegations on that basis.

48.    Malwarebytes admits that Enigma has been in business for almost twenty years, that Enigma designed and developed SpyHunter 4 and SpyHunter 5, and that those products purport to be anti-malware software programs.  Malwarebytes otherwise denies Enigma's characterizations of those programs.  Malwarebytes lacks sufficient information to admit or deny Enigma's allegations

6716415

as to Enigma's decisions with respect to phasing out SpyHunter 4 for SpyHunter 5. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 48.

49. Malwarebytes admits that RegHunter 2 is an Enigma software product that purports to be a privacy and optimizer program. Malwarebytes otherwise denies the allegations in Paragraph 49 and Enigma's characterizations of that program.

50. Malwarebytes admits that there existed a free version of SpyHunter 4 that gave users the option to buy the full version. Malwarebytes otherwise denies the allegations in Paragraph 50 and Enigma's characterizations of the program.

51. Malwarebytes admits that there existed a free version of RegHunter 2 that gave users the option to buy the full version. Malwarebytes lacks sufficient information to admit or deny whether Enigma "no longer offers the free version of RegHunter 2 but continues to offer paid subscriptions to the full version," and denies that allegation on that basis. Malwarebytes otherwise denies Enigma's characterizations of the RegHunter 2 program. Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to the location of purchasers of RegHunter 2 and denies that allegation on that basis. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 51.

52. Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to its sales of SpyHunter 4 and RegHunter 2 and the location of its customers and denies those allegations on that basis. Malwarebytes admits that Enigma sold subscription licenses to SpyHunter 4 and RegHunter 2 on the Internet, including at its website. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 52.

53. Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to unspecified "top industry scores and certifications" SpyHunter 4 and RegHunter 2 have purportedly received and denies the allegations in Paragraph 53 on that basis.

54. Malwarebytes admits that based on publicly available documents, Enigma appears to have commissioned AV-Test GmbH ("AV-Test") to publish "Remediation Testing Reports" for SpyHunter 4, and that AV-Test gave SpyHunter 4 a 95% remediation score in 2016 and a 100% remediation score in 2017 in those reports. Malwarebytes otherwise denies Enigma's

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

characterizations as to the significance of the AV-Test results. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 54.

55.    Malwarebytes admits that, based on publicly available documents, Enigma appears to have commissioned AV-Comparatives to publish a report that called SpyHunter 4 easy-to-use and effective.   Malwarebytes otherwise denies Enigma's characterizations of the AV-Comparatives report.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 55.

56.    Malwarebytes admits that, based on publicly available documents, SpyHunter 4 appears to have been certified by Checkmark Certified.  The allegations in Paragraph 56 also include alleged statements made by Marcin Kleczynski.  Malwarebytes admits Mr. Kleczynski made the quoted statements about West Coast Labs but denies Enigma's characterization and misleading excerpting of them.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 56.

57.    Malwarebytes admits that, based on publicly available documents, in 2016 OPSWAT appears to have designated SpyHunter 4 "bronze certified."   Malwarebytes otherwise denies Enigma's characterizations of OPSWAT. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 57.

58.    Malwarebytes admits that, based on publicly available documents, SpyHunter 5 and RegHunter 2 appear to be presently categorized as "certified apps" by AppEsteem.  Malwarebytes admits based on publicly available documents that, after initially labeling RegHunter 2 as a "Deceptor," AppEsteem later categorized RegHunter 2 as a certified app in 2018. Malwarebytes presently lacks sufficient information to admit or deny Enigma's allegations as to the status of AppEsteem's review of SpyHunter 4 prior to SpyHunter 5's release, and denies those allegations on that basis.   Malwarebytes otherwise denies Enigma's characterizations of the AppEsteem certification.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 58.

59.    Malwarebytes lacks sufficient information to admit or deny Enigma's allegations as to TRUSTe's certification of SpyHunter 4 and RegHunter 2, or GeoTrust's certification of Enigma's website.  Malwarebytes otherwise denies Enigma's characterizations of these certifications.

1      60.    Malwarebytes admits that it develops and markets its MBAM products and

2 AdwCleaner products to offer cybersecurity protections.    Except as expressly admitted,

3 Malwarebytes denies the allegations in Paragraph 60.

4      61.    Malwarebytes admits that its MBAM products protect its user's computer from

5 malware and PUPs.    Malwarebytes otherwise denies Enigma's characterization of the MBAM

6 products and Enigma's related comparison between the MBAM products and SpyHunter 4 and 5.

7 Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 61.

8      62.    Malwarebytes acquired AdwCleaner on October 10, 2016 and therefore denies

9 Enigma's allegation that it acquired AdwCleaner on October 19, 2016.    Malwarebytes otherwise

10 admits the allegations in Paragraph 62..

11      63.    Paragraph 63 sets forth legal conclusions for which no response is required, including

12 regarding AdwCleaner's relationship to Malwarebytes and the authority of various individuals to

13 bind Malwarebytes.    To the extent a response is required, Malwarebytes denies the allegations in

14 Paragraph 63.

15      64.    Admitted.

16      65.    Malwarebytes admits that it advertises its "Premium" MBAM products as having the

17 features referenced in Paragraph 65, among others.    Malwarebytes admits that its users can access

18 MBAM's "Premium" features during a free 14-day trial, after which it no longer provides certain

19 functions unless a user pays for an MBAM "Premium" subscription.    Malwarebytes admits that

20 Marcin Kleczynski has stated that the MBAM free product is not "fully functional" insofar as it lacks

21 the "Premium" version's real-time protection.    Malwarebytes otherwise denies Enigma's

22 characterization of Mr. Kleczynski's statement.    Except as expressly admitted, Malwarebytes denies

23 the allegations in Paragraph 65.

24      66.    Malwarebytes admits that its 14-day trial for MBAM "Premium" allows users to

25 preview the capabilities of this "Premium" version.    Malwarebytes admits that the majority of its

26 users are "free users."    Malwarebytes otherwise denies Enigma's characterization of the 14-day free

27 trial.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 66

28

1  regarding Mr. Kujawa's alleged testimony and denies them on that basis.  Except as expressly
2  admitted, Malwarebytes denies the allegations in Paragraph 66.

3     67.    Malwarebytes admits that a previous version of its website listed AV-Test, OPSwat,
4  and Checkmark Certified logos on its website under the heading "Tech Genius Approved."
5  Malwarebytes otherwise denies Enigma's characterization regarding this display.  Malwarebytes
6  further lacks sufficient information to admit or deny Enigma's allegations comparing
7  Malwarebytes's certifications to the alleged certifications received by Enigma's products.  Except as
8  expressly admitted, Malwarebytes denies the allegations in Paragraph 67.

9     68.    Paragraph 68 sets forth legal conclusions for which no response is required.  To the
10 extent a response is required, Malwarebytes denies the allegations in Paragraph 68.

11    69.    Malwarebytes admits that both it and Enigma advertise and sell their products on the
12 Internet.    Malwarebytes lacks sufficient information to admit or deny Enigma's allegations
13 comparing the specifics of Malwarebytes's marketing and sales techniques to those allegedly used
14 by Enigma, and thus denies them on that basis.  Except as expressly admitted, Malwarebytes denies
15 the allegations in Paragraph 69.

16    70.    Malwarebytes admits that its advertising may have appeared alongside search results
17 for Enigma's website and products as an indirect and inadvertent result of Malwarebytes's "broad
18 match" keyword advertising campaigns.    Malwarebytes denies that it has "specifically targeted
19 advertising of its products to ESG's potential and existing customers" or that it "select[ed] and
20 purchas[ed]" the listed keywords.  Except as expressly admitted, Malwarebytes denies the allegations
21 in Paragraph 70.

22    71.    Paragraph 71 sets forth legal conclusions for which no response is required.  To the
23 extent a response is required, Malwarebytes denies the allegations in Paragraph 71.

24    72.    Malwarebytes admits that, based on publicly available documents, Enigma appears to
25 have commissioned AV-Test to publish a report comparing SpyHunter to other programs, in which
26 SpyHunter appears to have garnered a 98% score and Malwarebytes appears to have garnered a 92-
27 93% score.  Malwarebytes otherwise denies Enigma's characterizations of the AV-Test report.
28 Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 72.

6716415

73.    Malwarebytes admits that its website describes AdwCleaner as a program that "optimizes performance" and otherwise finds and removes unwanted programs and junkware "so your online experience stays optimal and hassle free."  Malwarebytes otherwise denies the allegations in Paragraph 73, including Enigma's characterization of Malwarebytes's marketing and descriptions of AdwCleaner and its comparison to how Enigma designed and markets RegHunter 2.

74.    Malwarebytes admits that its Privacy VPN, which is separate from MBAM, provides users with privacy protection.  Malwarebytes otherwise denies Enigma's characterization of Malwarebytes's marketing and descriptions of its MBAM and Privacy VPN products and its comparison to how Enigma designed and markets RegHunter 2.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 74.

**The Bleeping Computer Lawsuit and ESG's Subpoena That Was Set to Expose**
**Malwarebytes' Close Profiteering Relationship with Bleeping Computer**

75.    The allegations contained in Paragraph 75 include characterizations of certain court proceedings.  Malwarebytes admits the existence of those proceedings but denies Enigma's characterization of those proceedings.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 75.

76.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 76, which center on the corporate structure, operation, and leadership of third party Bleeping Computer, and denies them on that basis.

77.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 77, which center on third party Bleeping Computer's conduct and intent, and denies them on that basis.

78.    Malwarebytes admits that Bleeping Computer participates in Malwarebytes's affiliate program, through which it earns commissions. Malwarebytes otherwise denies Enigma's characterizations of the affiliate relationship between Malwarebytes and Bleeping Computer. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 78 regarding third party Bleeping Computer's conduct, intent, or nature, and denies them on that basis.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 78.

79. Malwarebytes denies the allegations in Paragraph 79 regarding Malwarebytes itself. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 79 regarding third party Bleeping Computer's conduct, knowledge, intent, or nature, and denies them on that basis. Paragraph 79 additionally sets forth legal conclusions for which no response is required, regarding whether the identified statements were "deceptive, false and misleading" and "defamatory." To the extent a response to those allegations is required, Malwarebytes denies those allegations. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 79.

80. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 80, which center on third party Bleeping Computer's conduct and intent, and denies them on that basis.

81. Malwarebytes denies the allegations in Paragraph 81 regarding Malwarebytes's participation in the alleged "smear campaign" and Malwarebytes's knowledge and intent to this end. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 81 regarding third party Bleeping Computer's conduct or intent, and denies them on that basis.

82. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 82, which center on third party Bleeping Computer and its purported "Global Moderator" Louis Stamm, and denies them on that basis. The allegations in Paragraph 82 also include a characterization of certain court proceedings. Malwarebytes denies the characterization of such court proceedings. The allegations in Paragraph 82 also include a characterization of an email from Bleeping Computer CEO Lawrence Abrams to Marcin Kleczynski. Malwarebytes admits that this email exists but denies Enigma's characterization of it. Malwarebytes refers the Court to that email, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 82.

83. Malwarebytes denies the allegations in Paragraph 83 regarding Malwarebytes itself. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 83 regarding third party Bleeping Computer's conduct or intent, and denies them on that basis.

84. Paragraph 84 characterizes, and purports to incorporate by reference, Enigma's complaint against Bleeping Computer. Malwarebytes is not obligated to respond to each allegation

1   in the complaint against Bleeping Computer.  To the extent a response is required, Malwarebytes

2   lacks sufficient information to admit or deny the allegations against Bleeping Computer, and denies

3   them on that basis.  Malwarebytes denies Paragraph 84's allegations regarding the existence of a

4   "smear campaign against ESG."

5          85.    Malwarebytes admits the existence of a Joint Confidentiality Agreement between

6   Malwarebytes and Bleeping Computer, LLC entered into on June 5, 2009 and which remains in place

7   to this day.  Malwarebytes denies Enigma's characterization of that document.  Malwarebytes refers

8   the Court to that document, which speaks for itself and is the best evidence of its contents, for a true

9   and complete statement of its contents.  Except as expressly admitted, Malwarebytes denies the

10  allegations in Paragraph 85.

11         86.    Malwarebytes admits that it exchanged certain information with Bleeping Computer

12  as part of the affiliate relationship, as Malwarebytes does with many of its affiliates.  Malwarebytes

13  admits that Mr. Kleczynski and others at Malwarebytes communicated with Mr. Abrams of Bleeping

14  Computer.  Malwarebytes otherwise denies Enigma's characterizations of the affiliate relationship

15  and any communications between Malwarebytes and Bleeping Computer.  Malwarebytes denies that

16  it shared "sensitive inside business information" with Bleeping Computer.  Except as expressly

17  admitted, Malwarebytes denies the allegations in Paragraph 86.

18         87.    The allegations in Paragraph 87 include characterizations of a supposed screenshot

19  purportedly showing an advertisement on Bleeping Computer's website celebrating "5 years of

20  partnering . . . to crush malware."  Malwarebytes lacks sufficient information to admit or deny

21  whether this screenshot is authentic and denies the allegations and characterizations based on the

22  screenshot on that basis.  To the extent the screenshot is authentic, Malwarebytes refers the Court to

23  such screenshot, which speaks for itself and is the best evidence of its contents, for a true and

24  complete statement of its contents.  Except as expressly admitted, Malwarebytes denies the

25  allegations in Paragraph 87.

26         88.    Denied.

27         89.    The allegations contained in Paragraph 89 include a characterization of an email

28  exchange.  Malwarebytes admits the existence of an email exchange in that timeframe between Mr.

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

1   Abrams and Mr. Klecyznski but denies Enigma's characterization of it. Malwarebytes refers the

2   Court to that email exchange, which speaks for itself and is the best evidence of its contents, for a

3   true and complete statement of its contents. Malwarebytes lacks sufficient information to admit or

4   deny the allegations in Paragraph 89 regarding third party Bleeping Computer's conduct or intent,

5   and denies them on that basis. Except as expressly admitted, Malwarebytes denies the allegations in

6   Paragraph 89.

7       90.    The allegations contained in Paragraph 90 include a characterization of an email

8   exchange. Malwarebytes admits the existence of what appears to be the referenced email exchange

9   but denies Enigma's characterization of it. Malwarebytes refers the Court to that email exchange,

10  which speaks for itself and is the best evidence of its contents, for a true and complete statement of

11  its contents. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph

12  90 regarding third party Bleeping Computer's conduct or intent, and denies them on that basis.

13  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 90.

14      91.    Malwarebytes lacks sufficient information to admit or deny the allegations in

15  Paragraph 91 regarding ESG's reason to file its complaint against Bleeping Computer, and denies

16  them on that basis. The allegations contained in Paragraph 91 also include a characterization of an

17  email exchange. Malwarebytes admits the existence of that email exchange but denies Enigma's

18  characterization of it. Malwarebytes refers the Court to that email exchange, which speaks for itself

19  and is the best evidence of its contents, for a true and complete statement of its contents. Except as

20  expressly admitted, Malwarebytes denies the allegations in Paragraph 91.

21      92.    The allegations contained in Paragraph 92 include a characterization of an email

22  exchange. Malwarebytes admits the existence of that email exchange but denies Enigma's

23  characterization of it. Malwarebytes refers the Court to that email exchange, which speaks for itself

24  and is the best evidence of its contents, for a true and complete statement of its contents. Except as

25  expressly admitted, Malwarebytes denies the allegations in Paragraph 92.

26      93.    Malwarebytes lacks sufficient information to admit or deny the allegations in

27  Paragraph 93 regarding third party Bleeping Computer's conduct or intent in starting a GoFundMe

28  campaign, and denies them on that basis. Malwarebytes admits that Mr. Kleczynski donated $5,000

to Bleeping Computer's GoFundMe campaign titled "Help Defend BleepingComputer.com." The allegations contained in Paragraph 93 also appear to include a characterization of an email exchange. Malwarebytes admits the existence of what it believes to be the referenced email exchange but denies Enigma's characterization of it. Malwarebytes refers the Court to that email exchange, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 93.

94.     The allegations contained in Paragraph 94 include a characterization of several email exchanges. Malwarebytes admits the existence of what it believes to be the referenced email exchanges but denies Enigma's characterization of them. Malwarebytes refers the Court to those email exchanges, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents. The allegations in Paragraph 94 also set forth legal conclusions for which no response is required, regarding alleged "defamatory remarks" and "anticompetitive animus." To the extent further response is required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 94.

95.     The allegations contained in Paragraph 95 include a characterization of an email exchange. Malwarebytes admits the existence of what it believes to be the referenced email exchange but denies Enigma's characterization of it. Malwarebytes refers the Court to that email exchange, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 95.

96.     Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 96, which center on third party Bleeping Computer's conduct and intent, and denies them on that basis.

97.     The allegations in Paragraph 97 are characterizations of a judicial opinion. Malwarebytes admits the existence of that opinion but denies Enigma's characterization of it. Malwarebytes refers the Court to that opinion, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.

98.     The allegations in Paragraph 98 are characterizations of a judicial opinion. Malwarebytes admits the existence of that opinion but denies Enigma's characterization of it.

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

1   Malwarebytes refers the Court to that opinion, which speaks for itself and is the best evidence of its

2   contents, for a true and complete statement of its contents.

3       99.    The allegations in Paragraph 99 are characterizations of certain legal proceedings.

4   Malwarebytes admits the existence of those proceedings, and that Enigma served a subpoena on

5   Malwarebytes, but denies Enigma's characterization of the proceedings and subpoena. Except as

6   expressly admitted, Malwarebytes denies the allegations in Paragraph 99.

7       100.   The allegations in Paragraph 100 set forth legal conclusions for which no response is

8   required.   To the extent further response is required, Malwarebytes denies the allegations in

9   Paragraph 100.

10      101.   Malwarebytes admits that Enigma served deposition subpoenas on Malwarebytes and

11  Mr. Kleczynski.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph

12  101.

13      102.   Malwarebytes admits that its PUP criteria involve subjective elements.   The

14  allegations in Paragraph 102 set forth legal conclusions for which no response is required, including

15  regarding allegedly "anticompetitive business practices."   Except as expressly admitted,

16  Malwarebytes denies the allegations in Paragraph 102.

17      103.   Malwarebytes admits that Mr. Kleczynski received the Enigma subpoena in

18  September 2016.   Paragraph 103 sets forth legal conclusions for which no response is required,

19  regarding Malwarebytes's supposed "anticompetitive tactics."   To the extent further response is

20  required, Malwarebytes denies these allegations in Paragraph 103.   Except as expressly admitted,

21  Malwarebytes denies the allegations in Paragraph 103.

22      104.   Malwarebytes admits that it served objections to Enigma's subpoena on October 11,

23  2016, and that it ultimately produced one document in response to the subpoena.   Malwarebytes

24  otherwise denies Enigma's characterization of Malwarebytes's "practice of acting as though it were

25  above the law" and related characterizations.   The remainder of the allegations in Paragraph 104 set

26  forth legal conclusions for which no response is required.  To the extent further response is required,

27  and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 104.

28

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

105.    Malwarebytes admits that Enigma filed a motion to compel in response to Malwarebytes's subpoena objections and production.  Malwarebytes admits that Bleeping Computer and ESG settled their lawsuit in early 2017.  Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 105 regarding what, if anything, Bleeping Computer agreed to in the settlement.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 105.

**Malwarebytes' Deliberate Use of Its "Revised" PUP Criteria to Target ESG to Hurt ESG's Business and to Assist Bleeping Computer's Defenses**

106.    Malwarebytes admits that, before October 5, 2016, it had not designated SpyHunter 4, RegHunter 2, or any other ESG program as a PUP according to its criteria before that date. Malwarebytes admits that it was aware of ESG and its products for years before October 2016. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 106.

107.    The allegations in Paragraph 107 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 107.

108.    Malwarebytes admits that it announced on October 5, 2016 "that it had changed its PUP criteria" and that it announced that "some of the criteria" are those criteria listed in Paragraph 108.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 108.

109.    The allegations contained in Paragraph 109 include a characterization of a particular document.   Malwarebytes admits the existence of that document but denies Enigma's characterization of that document.  Malwarebytes refers the Court to that document, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents. The allegations in Paragraph 109 also include a characterization of certain court proceedings. Malwarebytes denies the characterization of such court proceedings.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 109.

110.    Denied.

111.    Denied.

112.    Malwarebytes admits that Mr. Gill was an employee of Malwarebytes but denies that he was "a top Malwarebytes research executive."   The allegations in Paragraph 112 include characterizations of certain messages between Ade Gill and Lawrence Abrams.  Malwarebytes refers

6716415

1  the Court to such messages, which speak for themselves and are the best evidence of their contents,

2  for a true and complete statement of their contents.  Except as expressly admitted, Malwarebytes

3  denies the allegations in Paragraph 112.

4         113.    The allegations in Paragraph 113 include characterizations of certain messages

5  between Ade Gill and Lawrence Abrams, as well as documents from the Bleeping Computer website.

6  Malwarebytes refers the Court to such messages and documents, which speak for themselves and are

7  the best evidence of their contents, for a true and complete statement of their contents.  Except as

8  expressly admitted, Malwarebytes lacks sufficient information to admit or deny the allegations in

9  Paragraph 113, which principally involve the third party Bleeping Computer, and denies them on

10 that basis.

11        114.    Malwarebytes lacks sufficient information to admit or deny who was the author of the

12 alleged internet post or whether the cited exhibit accurately reflects said post. Malwarebytes therefore

13 denies the allegations in Paragraph 114 on that basis.  Malwarebytes denies that AdwCleaner had

14 never, before being acquired by Malwarebytes, "identified or listed SpyHunter 4 as a PUP or any

15 type of program that should be detected or removed as a threat."  The allegations in Paragraph 114

16 also set forth legal conclusions for which no response is required, regarding whether the purported

17 author was acting within the scope of his alleged employment or in his alleged role as an agent of

18 Malwarebytes.  The allegations in Paragraph 114 also include a characterization of an alleged internet

19 post.  Malwarebytes refers the Court to such alleged internet post, which speaks for itself and is the

20 best evidence of its contents, for a true and complete statement of its contents.  To the extent further

21 response is required, Malwarebytes denies the remaining allegations in Paragraph 114.

22        115.    Malwarebytes admits that its changed PUP criteria did not result in detecting all anti-

23 malware products as PUPs and that it does not detect legitimate anti-malware products as PUPs.

24 Malwarebytes denies that Enigma's products are or have been legitimate anti-malware products.

25 Malwarebytes lacks sufficient information to admit or deny the broad allegations that some or all of

26 the listed products have or have had some unidentified "similar characteristics" to SpyHunter 4.

27 Malwarebytes therefore denies such allegations on that basis.  Except as expressly admitted,

28 Malwarebytes denies the allegations in Paragraph 115.

1       116.    The allegations in Paragraph 116 set for legal conclusions for which no response is

2   required, regarding whether Malwarebytes' designations of SpyHunter 4 were "driven by

3   anticompetitive animus and purposely done to hurt ESG."   Regardless, Malwarebytes denies all

4   allegations in Paragraph 116.

5   **MBAM Products Begin Maliciously Detecting, Quarantining, and Blocking ESG's Programs**

6       117.    Malwarebytes admits that its products began identifying and quarantining SpyHunter

7   4 and RegHunter 2 as PUPs after it announced its new PUP criteria on October 5, 2016.   Except as

8   expressly admitted, Malwarebytes denies the allegations in Paragraph 117, including the allegation

9   that Malwarebytes "den[ied] ESG's users—including paying customers—access to cybersecurity

10  protection from ESG's products."

11      118.    The allegations in Paragraph 118 include characterizations of a supposed screenshot

12  purportedly showing part of an MBAM user interface allegedly indicating 73 "threats" detected

13  regarding Spy Hunter 4, if a user had download, installed, and paid for SpyHunter 4.   Malwarebytes

14  lacks sufficient information to admit or deny whether this screenshot is authentic and denies the

15  allegations and characterizations based on the screenshot on that basis.   To the extent the screenshot

16  is authentic, Malwarebytes refers the Court to such screenshot, which speaks for itself and is the best

17  evidence of its contents, for a true and complete statement of its contents.   Malwarebytes denies the

18  remaining allegations, including the allegation that its MBAM products automatically quarantined

19  and blocked the operation of detected files "without any user input or selection."

20      119.    The allegations in Paragraph 119 include characterizations of supposed screenshots

21  purportedly showing an MBAM user interface allegedly "list[ing] 73 separate 'threat' entries for

22  SpyHunter 4 files, processes, registry keys, and registry values."   Malwarebytes lacks sufficient

23  information to admit or deny whether the screenshots are authentic and denies the allegations and

24  characterizations based on the screenshots on that basis.   To the extent the screenshots are authentic,

25  Malwarebytes refers the Court to such screenshots, which speak for themselves and are the best

26  evidence of their contents, for a true and complete statement of their contents.   Malwarebytes denies

27  the remaining allegations, including the characterization in Paragraph 119 that SpyHunter 4 programs

28  and files would be "buried" amongst hundreds or thousands of other identified threats.

120.    The allegations in Paragraph 120 include characterizations of supposed screenshots purportedly showing aspects of the MBAM user interface.    Malwarebytes lacks sufficient information to admit or deny whether the screenshots are authentic and denies the allegations and characterizations based on the screenshots on that basis.  To the extent the screenshots are authentic, Malwarebytes refers the Court to such screenshots, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents.  Malwarebytes admits that Enigma's allegations selectively characterize some functions within the paid version of MBAM products, but denies that Enigma's characterizations provide a complete or accurate picture of its products' functions, including because the allegations fail to include all the methods by which users could exclude detections and quarantining. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 120.

121.    Malwarebytes admits that users could use a "Quarantine" window to opt to "Restore" quarantined programs.    Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 121.

122.    Malwarebytes admits that users could create "Malware Exclusions" in the settings of its MBAM products to ensure the operation of certain programs or files.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 122.

123.    Malwarebytes admits that when users already had an MBAM product installed on their computer, its products provided options for users to enable or un-quarantine programs or files that would otherwise be quarantined.  Malwarebytes admits that, after it revised its PUP detection criteria, its "premium" paid version of MBAM products would, generally, initially quarantine SpyHunter 4 installer files pending the user's decision whether to permit its operation. Malwarebytes denies that the free version of its MBAM products have ever "automatically" quarantined SpyHunter 4.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 123.

124.    Malwarebytes admits that, after it revised its PUP detection criteria, the premium version of its MBAM products would, generally, initially quarantine RegHunter 2 pending the user's decision whether to permit its operation.  Malwarebytes denies that the free version of its MBAM products have ever "automatically" quarantined RegHunter 2. Except as expressly admitted,

1  Malwarebytes denies the allegations in Paragraph 124.

2      125.    The allegations in Paragraph 125 set forth legal conclusions about whether

3  Malwarebytes' conduct was "unlawful," for which no response is required.    Regardless,

4  Malwarebytes denies the allegations in Paragraph 125.

5      126.    Malwarebytes admits that layered protection, in appropriate circumstances, can be a

6  useful tool in protecting users' cybersecurity.  Except as expressly admitted, Malwarebytes denies

7  the allegations in Paragraph 126.

8      **Malwarebytes Purposely Designed and Programmed MBAM Products to Automatically**

9      **Quarantine and Block ESG Products**

10      127.    Malwarebytes admits that its products' detection and quarantining of PUPs or

11  malware is a result of how Malwarebytes designs and programs its products. Malwarebytes admits

12  that its programs are designed to be "turnkey" and run "straight out of the box," while also providing

13  users with the option to configure unique settings.  Except as expressly admitted, Malwarebytes

14  denies the allegations in Paragraph 127.

15      128.    Malwarebytes admits that its products do not require users to determine for

16  themselves whether software programs or files are malware, PUPs, or "threats."  Malwarebytes

17  admits that its products provide users with options to exclude certain programs from detection or

18  quarantining.  Malwarebytes admits that its products are designed not only to protect sophisticated

19  software users, but also to serve and protect people without much software knowledge.  Except as

20  expressly admitted, Malwarebytes denies the allegations in Paragraph 128.

21      129.    Malwarebytes admits that some users of MBAM products likely operate such

22  products using the pre-set configurations, while others likely operate such products while manually

23  reconfiguring settings themselves.   Except as expressly admitted, Malwarebytes denies the

24  allegations in Paragraph 129.

25      130.    Malwarebytes admits that it in certain instances recommends certain default settings,

26  but Malwarebytes denies that it discourages reconfiguring settings in appropriate circumstances.

27  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 130.

28      131.    The allegations in Paragraph 131 include characterizations of selective pages from

two of Malwarebytes' User Guides.  Malwarebytes admits that these User Guides exist and refers the Court to such User Guides, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents.  To the extent a response is required, Malwarebytes admits that the instructions regarding initial installation of the MBAM product, drawn from this selective sample of pages, do not "require" users to configure parameters or settings different than the default, although they do indicate that users have the option not to accept default settings.  Except as expressly admitted, Malwarebytes denies the characterizations in Paragraph 131.

132.    The allegations in Paragraph 132 include characterizations of selective pages from two of Malwarebytes' User Guides, although the allegations incorrectly refer to page 11 of the 2016 User Guide rather than the correct page, 13.  Malwarebytes refers the Court to such User Guides, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents.  To the extent further response is required, Malwarebytes admits that the "Threat Scan" option does not "require" users to set any unique configurations or parameters themselves, although the User Guides explain users' options to configure different settings.  Except as expressly admitted, Malwarebytes denies the characterizations in Paragraph 132.

133.    The allegations in Paragraph 133 include characterizations of selective pages from two of Malwarebytes' User Guides.  Malwarebytes refers the Court to such User Guides, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents.  To the extent further response is required, Malwarebytes denies the allegation in Paragraph 133 that the cited excerpts of the User Guides demonstrate that Malwarebytes preset all MBAM scans for PUP detections to "treat detections as malware" by default.  In fact, the screenshots included in Paragraph 133 show that these are "Custom Scans," not default settings.

134.    The allegations in Paragraph 134 include characterizations of selective pages from two of Malwarebytes' User Guides.  Malwarebytes refers the Court to such User Guides, which speak for themselves and are the best evidence of their contents, for a true and complete statement of their contents.  To the extent further response is required, Malwarebytes admits that cited portions of the User Guides appear to state that the default setting was to automatically quarantine malware specifically, but otherwise denies the allegations in Paragraph 134.

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT
6716415

135.   Malwarebytes denies that Adam Kujawa was ever a Malwarebytes executive. Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 135 regarding Mr. Kujawa's alleged testimony and denies those allegations on that basis.   The other allegations in Paragraph 134 include characterizations of a selective page from Malwarebytes' March 2016 User Guide.   Malwarebytes refers the Court to such User Guide, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.   Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 135.

136.   Malwarebytes lacks sufficient information at this time to admit or deny the allegations in Paragraph 136 and denies them on that basis.

**AdwCleaner Begins Unlawfully Detecting ESG's Programs as PUPs and Threats**

137.   Malwarebytes admits that, after Malwarebytes revised its PUP criteria, AdwCleaner, as a product of Malwarebytes, detected SpyHunter 4 and RegHunter 2 as PUPs.   Malwarebytes denies that "AdwCleaner had never done so before."   Malwarebytes admits that Enigma's allegations selectively characterize some functions of AdwCleaner but denies Enigma's characterizations, including because they do not provide a complete or accurate picture of AdwCleaner's functions. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 137.

**Malwarebytes and Its Agents Make False, Deceptive and Misleading Statements In Connection with Malwarebytes' Designation of ESG's Programs as "Threats" and PUPs**

138.   Malwarebytes admits that its website hosts multiple forums, including forums that state that users can "[g]et personalized help removing adware, malware, spyware, ransomware, trojans, viruses and more from tech experts."   Malwarebytes admits that there have been some discussions on such forums regarding Malwarebytes' detection and quarantining of Enigma's programs.   Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 138.

139.   Malwarebytes admits the existence of a forum thread similar to the one referenced in Paragraph 139, but otherwise denies Enigma's characterizations of that thread.   Malwarebytes directs the Court to that thread, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.   Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 139.

6716415

1    140.    Denied.

2    141.    Malwarebytes admits the existence of a forum thread similar to the one referenced in

3    Paragraph 141, but otherwise denies Enigma's characterizations of that thread.  Malwarebytes directs

4    the Court to that thread, which speaks for itself and is the best evidence of its contents, for a true and

5    complete statement of its contents.  The allegations in Paragraph 141 set forth legal conclusions for

6    which no response is required, regarding whether comments are "officially legally binding comments

7    from Malwarebytes [that] deliberately and intentionally directed, encouraged, and induced an

8    existing ESG customer to cancel a contract with ESG."  To the extent further response is required,

9    and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 141.

10    142.    The allegations in Paragraph 142 set forth legal conclusions for which no response is

11    required, regarding whether certain entities are "Malwarebytes' representatives, spokespeople,

12    agents and/or advisors" and that "*Aura* was, and was held out to the public by Malwarebytes as, a

13    Malwarebytes representative, agent, and/or spokesperson, with the express and/or implied authority

14    to make legally binding statements for and/or on behalf of Malwarebytes."  The allegations in

15    Paragraph 142 also include reference to certain posts on the Malwarebytes forums.  Malwarebytes

16    directs the Court to such posts, which speak for themselves and are the best evidence of their contents,

17    for a true and complete statement of their contents.  To the extent a response is required, and except

18    as expressly admitted, Malwarebytes denies the allegations in Paragraph 142, including that the

19    referenced comments were "official legally binding comments from Malwarebytes."

20    **ESG Receives Complaints and Refund Requests from New and Existing Customers**

21    143.    Malwarebytes lacks sufficient information to admit or deny the allegations in

22    Paragraph 143 and denies them on that basis.

23    144.    Malwarebytes lacks sufficient information to admit or deny the allegations in

24    Paragraph 144 and denies them on that basis.

25    145.    Malwarebytes lacks sufficient information to admit or deny the allegations in

26    Paragraph 145 and denies them on that basis.

27    146.    Malwarebytes admits that it offers technical support and cybersecurity advice to users

28    of both free and paid versions of MBAM products through technical support teams. Malwarebytes

admits that Mr. Mercado was a Malwarebytes staff member in October 2016.  The allegations in Paragraph 146 set forth legal conclusions for which no response is required, including regarding whether the alleged technical support team and Mr. Mercado were "authorized by Malwarebytes directly and/or impliedly on Malwarebytes behalf and held out . . . as Malwarebytes' representatives, agents, and/or spokespersons" and had "express and implied authority to speak for and legally bind Malwarebytes."  To the extent further response is required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 146.

147.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 147 and denies them on that basis.

148.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 148 and denies them on that basis.

149.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 149 and denies them on that basis.

150.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 150 and denies them on that basis.

151.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 151 and denies them on that basis.

152.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 152 and denies them on that basis.

153.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 153 and denies them on that basis.

154.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 154 and denies them on that basis.  The allegations in Paragraph 154 also set forth legal conclusions for which no response is required, including regarding whether Mr. Mercado's alleged actions were taken "in his official role as a representative spokesperson, technical staff member, technical support agent, and/or agent of Malwarebytes."  To the extent further response is required, Malwarebytes denies the allegations in Paragraph 154.

155.    Malwarebytes lacks sufficient information to admit or deny the allegations in

6716415

1   Paragraph 155 and denies them on that basis.

2   156.    Malwarebytes lacks sufficient information to admit or deny the allegations in

3   Paragraph 156 and denies them on that basis.  The allegations in Paragraph 156 also set forth legal

4   conclusions for which no response is required, including regarding whether the alleged Support

5   Agent was acting "in his official role as a representative spokesperson, technical staff member,

6   technical support agent, and/or agent of Malwarebytes."  To the extent further response is required,

7   Malwarebytes denies the allegations in Paragraph 154.

8   157.    Malwarebytes lacks sufficient information to admit or deny the allegations in

9   Paragraph 157 and denies them on that basis.

10  158.    Malwarebytes lacks sufficient information to admit or deny the allegations in

11  Paragraph 158 and denies them on that basis.

12  159.    Malwarebytes lacks sufficient information to admit or deny the allegations in

13  Paragraph 159 and denies them on that basis.

14  160.    Malwarebytes lacks sufficient information to admit or deny the allegations in

15  Paragraph 160 and denies them on that basis.

16  161.    Malwarebytes lacks sufficient information to admit or deny the allegations in

17  Paragraph 161 and denies them on that basis.

18  162.    Malwarebytes lacks sufficient information to admit or deny the allegations in

19  Paragraph 162 and denies them on that basis.

20  163.    Malwarebytes lacks sufficient information to admit or deny the allegations in

21  Paragraph 163 and denies them on that basis.

22  164.    Malwarebytes denies that any of its statements or actions were false, deceptive, or

23  misleading.  Malwarebytes lacks sufficient information to admit or deny the remaining allegations

24  in Paragraph 164 and denies them on that basis.

25  **ESG Attempts to Mitigate the Harm from Malwarebytes' Unlawful Interference and**

26  **Malwarebytes Retaliates**

27  165.    Malwarebytes lacks sufficient information to admit or deny the allegations in

28  Paragraph 165 and denies them on that basis.

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

166.   Malwarebytes admits the existence of a press release published on December 20, 2016, consistent with allegations referenced in Paragraph 166.  The allegations in Paragraph 166 include a characterization of the press release.  Malwarebytes refers the Court to the press release, which speaks for itself and is the best evidence of its contents, for a true and complete statement of its contents.   To the extent further response is required, Malwarebytes admits that the quoted sentences are contained within the press release.  Malwarebytes does not thereby admit the truth of the statements in the press release.   Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 166, including its characterization that "the Countermeasure fully respects user choice."

167.   Malwarebytes admits that some time after the revision of its PUP criteria, the paid version of its MBAM products began blocking *.enigmasoftware.com domains.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 167.

168.   Malwarebytes admits that the paid version of its MBAM products blocked Enigma's publicly available website and domains.  Malwarebytes lacks sufficient information to admit or deny allegations regarding the functioning of Enigma's domains and servers and denies them on that basis. Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 168.

169.   Denied.

170.   Malwarebytes admits that its products later stopped detecting and blocking Enigma's domains.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 170.

**Malwarebytes Continues its Predatory Campaign Against ESG By Attacking EnigmaSoft and SpyHunter 5**

171.   Malwarebytes admits that the company EnigmaSoft Limited released a product called SpyHunter 5 in or around June 2018.  Except as expressly admitted, Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 171 and denies them on that basis.

172.   Malwarebytes admits that its products did not immediately designate and detect SpyHunter 5 as a PUP but that they later began doing so.   Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 172.

173.   Malwarebytes lacks sufficient information to admit or deny the allegations in

6716415

1    Paragraph 173 and denies them on that basis.

2          174.    Malwarebytes admits the existence of the alleged posts on the Malwarebytes forums.

3    The allegations in Paragraph 174 include characterizations of these posts.  Malwarebytes directs the

4    Court to such posts, which speak for themselves and are the best evidence of their contents, for a true

5    and complete statement of their contents.  Malwarebytes admits that, for a limited period of time, the

6    paid version of its MBAM products blocked access to HowToRemove.Guide, while providing users

7    with the option to exclude the website from the blocked list.   Malwarebytes admits that its products

8    later stopped blocking HowToRemove.Guide.  Except as expressly admitted, Malwarebytes denies

9    the allegations in Paragraph 174.

10          175.    Malwarebytes lacks sufficient information to admit or deny whether EnigmaSoft

11    "made any material alterations to SpyHunter 5" between June 21, 2018 and August 16, 2018 and

12    denies that allegation on that basis.  Malwarebytes denies the remaining allegations in Paragraph 175.

13          176.    Malwarebytes admits that MBAM products designated SpyHunter 5 as a PUP for

14    several months, and that during that time the paid version of its products quarantined SpyHunter 5

15    while giving users options to exclude such designations and/or enable SpyHunter 5's operation.

16    Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 176, including that

17    "EnigmaSoft had not made any material alterations to SpyHunter 5."

18          177.    The allegations in Paragraph 177 include characterizations of certain legal

19    proceedings.  Malwarebytes admits the existence of the legal proceedings but denies Enigma's

20    characterization of them.  Except as expressly admitted, Malwarebytes denies the allegations in

21    Paragraph 177.

22          178.    Denied.

23    **Malwarebytes' Purported Bases to Identify SpyHunter 4 and RegHunter 2 as "Threats" and**

24        **PUPs are Entirely False and Pretextual and are Driven By Anticompetitive Animus**

25          179.    Denied.

26          180.    The allegations in Paragraph 180 set forth legal conclusions for which no response is

27    required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 180.

28          181.    Denied.

182.   Malwarebytes admits that in certain reports that appear to have been commissioned by Enigma Software Group, AV-Test apparently wrote that Enigma's SpyHunter product (without specifying whether it was SpyHunter 4) slightly outperformed certain Malwarebytes products.  Malwarebytes admits that its marketing materials sometimes tout its products' AV-Test scores.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 182.

183.   The allegations in Paragraph 183 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 183.

184.   Malwarebytes denies the allegation that "[n]one of the other recognized anti-virus and anti-malware software publishers" have designated, quarantined, or blocked "ESG's products or domains as PUPs, threats, malware, malicious, or otherwise."  Malwarebytes lacks sufficient information to admit or deny whether or not each of the selectively listed companies in Paragraph 184 have designated, quarantined, or blocked Enigma's products or domains and denies those allegations on that basis.

185.   Malwarebytes admits that its designations of Enigma's software are justified for numerous reasons.  The allegations in Paragraph 185 set forth legal conclusions for which no response is required, regarding whether Malwarebytes' conduct was "malicious," "anticompetitive," and "unlawful."  To the extent further response is required, and except as expressly admitted, Malwarebytes denies the allegations in Paragraph 185.

186.   Malwarebytes admits that SpyHunter 4 uses deceptive and misleading color-coding but, because the SAC mischaracterizes the nature of this color-coding and why it is objectionable, otherwise denies the allegations in Paragraph 186.

187.   Malwarebytes admits that Enigma has flagged to users harmless operating system files and cookies as a component of its deceptive business practices.  Malwarebytes admits that it has not designated HitmanPro and SUPERAntiSpyware as PUPs, but denies that those programs bear similar characteristics to Enigma's programs warranting their designation as PUPs.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 187, including because the SAC mischaracterizes the nature of Enigma's flagging of cookies and why it is objectionable and because it mischaracterizes how Malwarebytes' PUP detection criteria function.

188.    Malwarebytes admits that its understanding is that many users have significant difficulties uninstalling SpyHunter 4 that appear to be part of a pattern and practice by Enigma to make it difficult for users to uninstall SpyHunter 4.  Malwarebytes admits that it does not identify as PUPs or malware all programs that might have occasional uninstall problems.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 188.

189.    Malwarebytes admits that RegHunter 2 bears indicia of being a registry cleaner and that it does not provide users with helpful, accurate information regarding performance gains.  Although Malwarebytes admits that many registry cleaners employ deceptive and unwanted behavior, Malwarebytes denies that it is "categorically opposed" to registry cleaners or that it claims that they are categorically a threat.  Malwarebytes admits that it does not designate all registry cleaners as PUPs but that it does designate the most egregious registry cleaners as PUPs.  Malwarebytes admits that third parties have sometimes marketed Malwarebytes products alongside other products, including registry cleaners, but denies any implication that it controls these third parties. Malwarebytes admits that it once detected System Mechanic as a PUP but denies that System Mechanic continues to qualify as a PUP after significant changes were made to its software.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 189.

190.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 190 and denies them on that basis.

191.    Malwarebytes admits that Enigma has deceptively used affiliate programs exhibiting dubious and deceptive business practices.  Malwarebytes admits that many affiliate programs are legitimate and not deceptive, but denies that Enigma's affiliate programs referenced in Paragraph 191 are legitimate and not deceptive.  Malwarebytes admits that it does not block affiliate programs that are legitimate and not deceptive.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 191.

192.    Malwarebytes admits that Enigma has injected advertising into uninstallation procedures, against Windows best practices.  Except as expressly admitted, Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 192 and denies them on that basis.

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

193.    Malwarebytes admits that SpyHunter 4 and RegHunter 2 have flagged harmless files and cookies in free scans to induce consumers to pay fees to "fix" these supposed threats.  Except as expressly admitted, Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 193 and denies them on that basis.

194.    Malwarebytes admits that Enigma has sent numerous cease and desist letters to and/or filed lawsuits against third parties who have expressed negative opinions about and experiences with Enigma's products, including several other anti-malware companies besides Malwarebytes. Malwarebytes admits that it has occasionally sent cease and desist letters to protect its intellectual property rights but denies that it has a history of threatening lawsuits against other security companies for their classification of Malwarebytes' products.  The allegations in Paragraph 194 set forth legal conclusions for which no response is required, including that statements from third parties were "defamatory" and that Enigma's actions were necessary "to protect and preserve its valid legal rights."  Except as expressly admitted, Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 194 and denies them on that basis.

195.    Malwarebytes admits that Enigma's products satisfy Malwarebytes' PUP criteria of "predominantly negative comments or ratings from the user community."  Malwarebytes admits that its PUP criteria necessarily contain subjective elements.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 195.

196.    Denied.

197.    Denied.

198.    Malwarebytes admits that, in limited instances, a small number of users may have had difficulty uninstalling certain MBAM products and may have complained on that basis but denies that there is any pattern of this occurring.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 198, including because the SAC mischaracterizes Malwarebytes' PUP criteria and the reasons why Enigma's products qualify as PUPs.

199.    Malwarebytes admits that it offers full functionality during a 14-day free trial of its paid MBAM products, and that after 14 days, if a customer chooses not to purchase the paid product, the customer's subscription reverts to the free version.  Malwarebytes admits that the free version,

1   although robust, does not have all of the same functions as the paid version. Except as expressly
2   admitted, Malwarebytes denies the allegations in Paragraph 199, including because the SAC
3   mischaracterizes Malwarebytes' PUP criteria and the reasons why Enigma's products qualify as
4   PUPs.

5       200.   Malwarebytes admits that it sometimes works with affiliates and offers commissions
6   to affiliates in certain circumstances but denies that its affiliate programs are similar to the
7   problematic and deceptive affiliate programs utilized by Enigma. Except as expressly admitted,
8   Malwarebytes denies the allegations in Paragraph 200, including because the SAC mischaracterizes
9   Malwarebytes' PUP criteria and the reasons why Enigma's products qualify as PUPs.

10      201.   Malwarebytes admits that it sometimes provides discounts to users for its products.
11  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 201, including
12  because the SAC mischaracterizes Malwarebytes' PUP criteria and the reasons why Enigma's
13  products qualify as PUPs.

14      202.   The allegations in Paragraph 202 include characterizations of certain online articles.
15  Malwarebytes denies the SAC's characterizations and directs the Court to such articles, which speak
16  for themselves and are the best evidence of their contents, for a true and complete statement of their
17  contents.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 202,
18  including because the SAC mischaracterizes Malwarebytes' PUP criteria and the reasons why
19  Enigma's products qualify as PUPs.

20      203.   Malwarebytes admits that, like many other software companies, Malwarebytes has
21  certain negative ratings and reviews online but denies that it has predominantly negative reviews.
22  The allegations in Paragraph 203 include characterizations of an exhibit purporting to contain
23  reviews of Malwarebytes and/or its products on one website.  Malwarebytes refers the Court to the
24  unmodified and unexcerpted website referenced, which speaks for itself and is the best evidence of
25  its contents, for a true and complete statement of its contents but denies that such website is
26  representative of the broader body of reviews of Malwarebytes.  Except as expressly admitted,
27  Malwarebytes denies the allegations in Paragraph 203, including because the SAC mischaracterizes
28  Malwarebytes' PUP criteria and the reasons why Enigma's products qualify as PUPs.

204.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 204 regarding Enigma's conduct, beliefs, and motivations and denies them on that basis. Malwarebytes denies all other allegations in Paragraph 204.

205.    Denied.

206.    The allegations in Paragraph 206 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 206.

207.    The allegations in Paragraph 207 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 207.

## Malwarebytes Has Harmed, and Continues to Harm, ESG

208.    Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 208 regarding Enigma's supposed "reasonable countermeasures," and denies them on that basis.  The remainder of the allegations in Paragraph 208 set forth legal conclusions for which no response is required, regarding Malwarebytes' "unlawful conduct" and the harm it allegedly has caused.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 208.

209.    The allegations in Paragraph 209 set forth legal conclusions for which no response is required, regarding Malwarebytes' "unlawfully identifying" Enigma's products as "threats" and PUPs and its alleged causal link to Enigma's claimed "drop in its sales and renewals of subscriptions for SpyHunter 4 and RegHunter 2."  To the extent a response is required, Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 209 and denies them on that basis.

210.    Malwarebytes denies the allegation that Malwarebytes "recommend[ed]" that users "delete SpyHunter 4 and RegHunter 2 because they are a 'threat' and PUP." Malwarebytes lacks sufficient information to admit or deny the other allegations in Paragraph 210 and denies them on that basis.

211.    Malwarebytes denies the allegation in Paragraph 211 that Malwarebytes acted maliciously in designating and quarantining Enigma's domains and programs.  Malwarebytes lacks sufficient information to admit or deny the other allegations in Paragraph 211 and denies them on that basis.

6716415

212.    The allegations in Paragraph 212 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 212.

**First Cause of Action**
(Violations of Lanham Act § 43(a))

213.    The allegations in Paragraph 213 characterize that the Enigma is realleging and incorporating by reference preceding paragraphs and require no response.  Except as expressly admitted, Malwarebytes denies the allegations in all such paragraphs.

214.    The allegations in Paragraph 214 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 214.

215.    The allegations in Paragraph 215 set forth legal conclusions for which no response is required, regarding whether Malwarebytes's alleged statements constitute "commercial advertisements and promotions."  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 215.

216.    The allegations in Paragraph 216 set forth legal conclusions for which no response is required, regarding whether Malwarebytes's alleged statements are "use[d] in commerce," are "false and misleading," and are "likely to deceive consumers."  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 216.

217.    Malwarebytes admits that is an expert in the field of cybersecurity on which consumers can rely to accurately identify and effectively protect against cybersecurity threats. Malwarebytes presently lacks sufficient information to admit or deny Enigma's allegations regarding certain unspecified "sworn testimony in court," and denies that allegation and related characterizations on that basis.  Malwarebytes likewise lacks sufficient information to admit or deny whether unspecified consumers "look to Malwarebytes, as with other anti-malware software providers, as an expert in the field of cybersecurity" and therefore denies the allegations and characterizations in Paragraph 217 to this end on that basis.  Except as expressly admitted, Malwarebytes denies the allegations in Paragraph 217.

218.    Malwarebytes lacks sufficient information to admit or deny how unspecified users view Malwarebytes' statements and therefore denies the allegations and characterizations in

1  Paragraph 218 to this end on that basis.  Malwarebytes denies that it repeatedly publicly pronounced

2  that its revised PUP criteria are "solely . . . objective and technical."  Malwarebytes denies Enigma's

3  characterization of how MBAM products operate.  The remainder of the allegations in Paragraph 218

4  set forth legal conclusions for which no response is required, regarding whether Malwarebytes's

5  statements are "statements of fact rather than opinions."  To the extent a response is required,

6  Malwarebytes denies the allegations in Paragraph 218.

7          219.   Malwarebytes lacks sufficient information to admit or deny how users view

8  Malwarebytes' statements and therefore denies the allegations and characterizations in Paragraph

9  219 to this end on that basis. Malwarebytes denies Enigma's characterization of how MBAM

10  products operate.  The remainder of the allegations in Paragraph 219 set forth legal conclusions for

11  which no response is required, including regarding the alleged falsity of Malwarebytes's designations

12  and the materiality of the alleged deception.  To the extent a response is required, Malwarebytes

13  denies the allegations in Paragraph 219.

14          220.   The allegations in Paragraph 220 set forth legal conclusions for which no response is

15  required, regarding whether Malwarebytes's statements "have actually deceived or have the capacity

16  to deceive a substantial portion of their intended audience" and who constitutes part of that audience.

17  Malwarebytes denies the allegations in Paragraph 220.

18          221.   Denied.

19          222.   Malwarebytes admits that its MBAM products detect when users download PUPs.

20  The remainder of the allegations in Paragraph 222 set forth legal conclusions for which no response

21  is required, regarding whether and to what extent Malwarebytes' statements were "published" to

22  users.  To the extent a response is required, Malwarebytes denies the remainder of Paragraph 222's

23  allegations.

24          223.   Malwarebytes denies Enigma's characterization of how MBAM products operate.

25  The allegations in Paragraph 223 set forth legal conclusions for which no response is required,

26  including regarding Malwarebytes's allegedly "false and misleading statements" and the "damages

27  ESG suffered" as a result.  To the extent a response is required, Malwarebytes denies the allegations

28  in Paragraph 223.

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

224.    Malwarebytes lacks sufficient information to admit or deny what unspecified "various statements" were allegedly made on Malwarebytes' website, forum, and Twitter, and denies that allegation on that basis.  The remainder of the allegations in Paragraph 224 set forth legal conclusions for which no response is required, regarding Malwarebytes's allegedly "false and misleading statements" and the "legal authority" of an unspecified Malwarebytes engineer to speak for and bind the company.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 224.

225.    The allegations in Paragraph 225 set forth legal conclusions for which no response is required, regarding Malwarebytes's allegedly "organized anticompetitive campaign" and its purported effects.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 225.

226.    The allegations in Paragraph 226 set forth legal conclusions for which no response is required, regarding causation and Enigma's alleged damages.  To the extent a response is required, Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 226, and denies them on that basis.

### Second Cause of Action
(Violations of New York General Business Law § 349)

227.    The allegations in Paragraph 227 characterize that Enigma is realleging and incorporating by reference preceding paragraphs and require no response.  Except as expressly admitted, Malwarebytes denies the allegations in all such paragraphs.

228.    Malwarebytes admits that Section 349 of New York's General Business Law exists and prohibits deceptive acts or practices in the manner described in the statutory text and interpreted in relevant case law.

229.    The allegations in Paragraph 229 set forth legal conclusions for which no response is required, regarding Malwarebytes's alleged "unfair competition tactics."  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 229.

230.    Malwarebytes admits that its MBAM products have identified SpyHunter 4 and RegHunter 2 as PUPs, but otherwise denies Enigma's characterization of MBAM's functionality.

1  Malwarebytes lacks sufficient to admit or deny unspecified MBAM users' experiences or ability to

2  navigate the MBAM program.  The remainder of the allegations in Paragraph 230 set forth legal

3  conclusions for which no response is required, regarding whether Malwarebytes's statements were

4  "false and deceptive."  To the extent a response is required, Malwarebytes denies the remainder of

5  Paragraph 230's allegations.

6  231.  Malwarebytes admits that its MBAM products have identified SpyHunter 4 and

7  RegHunter 2 as PUPs, but otherwise denies Enigma's characterization of MBAM's functionality, the

8  "quality" and "legitimacy" of Enigma's products, and comparisons between the two.  The remainder

9  of the allegations in Paragraph 231 set forth legal conclusions for which no response is required,

10  regarding whether Malwarebytes's statements "are materially misleading to consumers".  To the

11  extent a response is required, Malwarebytes denies the remainder of Paragraph 231's allegations.

12  232.  Malwarebytes lacks sufficient information to admit or deny how users view

13  Malwarebytes' statements or act in response and therefore denies the allegations and

14  characterizations in Paragraph 232 to this end on that basis. The remainder of the allegations in

15  Paragraph 232 set forth legal conclusions for which no response is required, regarding whether

16  Malwarebytes "intentionally misleads consumers."  To the extent a response is required,

17  Malwarebytes denies the allegations in Paragraph 232.

18  233.  The allegations in Paragraph 233 set forth legal conclusions for which no response is

19  required, regarding causation and Enigma's alleged damages.  To the extent a response is required,

20  Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 233, and

21  denies them on that basis.

22  **Third Cause of Action**
(Tortious Interference with Contractual Relations)

23

24  234.  This cause of action has been dismissed and therefore no response is required.

25  235.  This cause of action has been dismissed and therefore no response is required.

236.  This cause of action has been dismissed and therefore no response is required.

26  237.  This cause of action has been dismissed and therefore no response is required.

27  238.  This cause of action has been dismissed and therefore no response is required.

28

6716415

1    239.    This cause of action has been dismissed and therefore no response is required.

2    240.    This cause of action has been dismissed and therefore no response is required.

3    241.    This cause of action has been dismissed and therefore no response is required.

4    242.    This cause of action has been dismissed and therefore no response is required.

**Fourth Cause of Action**
(Tortious Interference with Business Relations)

243.    The allegations in Paragraph 243 characterize that Enigma is realleging and incorporating by reference preceding paragraphs and require no response.  Except as expressly admitted, Malwarebytes denies the allegations in all such paragraphs.

244.    Malwarebytes lacks sufficient information to admit or deny the intentions of unspecified "customers of ESG" with respect to whether or not to pay Enigma's license fees, and therefore denies the allegations and characterizations in Paragraph 244 on that basis.

245.    Malwarebytes lacks sufficient information to admit or deny its knowledge as to the intentions of some unspecified set of consumers and whether or not they may enter into a paid business relationship with Enigma, and therefore denies the allegations and characterizations in Paragraph 245 on that basis.

246.    The allegations in Paragraph 246 set forth legal conclusions for which no response is required, regarding whether Malwarebytes "intentionally interfered with [] prospective business relationships."  To the extent a response is required, Malwarebytes denies allegations in Paragraph 246.

247.    The allegations in Paragraph 247 set forth legal conclusions for which no response is required, regarding whether Malwarebytes "intentionally and maliciously induced consumers to choose not to install" Enigma's products.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 247.

248.    The allegations in Paragraph 248 set forth legal conclusions for which no response is required.  To the extent a response is required, Malwarebytes denies the allegations in Paragraph 248.

249.    Malwarebytes denies Enigma's characterization of MBAM's functionality.   The remainder of the allegations in Paragraph 249 set forth legal conclusions for which no response is

6716415

1  required, regarding whether Malwarebytes engaged in "improper and illegitimate means of

2  competition." To the extent a response is required, Malwarebytes denies the allegations in Paragraph

3  249.

4          250.    The allegations in Paragraph 250 set forth legal conclusions for which no response is

5  required, regarding causation and Enigma's alleged damages. To the extent a response is required,

6  Malwarebytes lacks sufficient information to admit or deny the allegations in Paragraph 250, and

7  denies them on that basis.

8                          **DEFENSES AND AFFIRMATIVE DEFENSES**

9          Defendant Malwarebytes asserts the following defenses and affirmative defenses without

10  assuming the burden of proof as to any issue or element that otherwise rests with Plaintiff. This

11  statement of defenses and affirmative defenses is based on Defendant's investigation to date, and

12  Defendants reserve the right to supplement or amend these defenses and affirmative defenses during

13  the course of this litigation.

14                              **FIRST AFFIRMATIVE DEFENSE**

15          The Complaint is barred, in whole or in part, because Malwarebytes acted in good faith at all

16  material times and in conformity with all applicable federal, state, and common law, including the

17  Lanham Act and the NYGBL. Malwarebytes designated the relevant Enigma products as PUPs and

18  used the accompanying labels because it reasonably believed that SpyHunter 4 and RegHunter 2

19  exhibited potentially unwanted characteristics, including characteristics of "scareware," warranting

20  the classification.

21                             **SECOND AFFIRMATIVE DEFENSE**

22          The Complaint is barred, in whole or in part, by the immunity provided under Section 230 of

23  the Communications Decency Act, 47 U.S.C. § 230(c)(2)(b). By classifying SpyHunter 4 and

24  RegHunter 2 as PUPs and equipping users with tools they could use to block and/or filter those

25  products, Malwarebytes engaged in "action[s] taken to enable or make available . . . the technical

26  means to restrict access to" third-party content within the meaning of the statute. It thus cannot be

27  subjected to civil liability for doing so. Malwarebytes did not act with the anti-competitive animus

28  required to take its PUP designation outside the scope of Section 230 immunity.

1

### THIRD AFFIRMATIVE DEFENSE

2    The Complaint is barred, in whole or in part, by the free speech provisions of the First

3    Amendment and corresponding portions of the California (Article I, Section 2) and/or New York

4    (Article I, Section 8) state constitutions.   These free speech protections apply because

5    Malwarebytes's designation of SpyHunter 4 and RegHunter 2 as PUPs and related labels are non-

6    actionable opinions that are, in any event, truthful and accurate as to the nature of those Enigma

7    products and the "scareware" characteristics they exhibit.

8

### FOURTH AFFIRMATIVE DEFENSE

9    The Complaint is barred, in whole or in part, because the claims therein are expressly or

10    impliedly preempted by federal law, including without limitation, Section 230 of the

11    Communications Decency Act and the First Amendment to the United States Constitution.

12

### FIFTH AFFIRMATIVE DEFENSE

13    The Complaint is barred, in whole or in part, because Malwarebytes's alleged misconduct

14    was privileged.   Malwarebytes denies that it is Enigma's competitor.   But to the extent the two

15    companies are in competition, the business competition privilege applies to Malwarebytes's alleged

16    wrongdoing, which at most constituted legitimate competition with Enigma to acquire its business

17    via the good faith, reasonable, and accurate designation of Enigma's "scareware" as a PUP.

18

### SIXTH AFFIRMATIVE DEFENSE

19    Enigma's claims and requests for relief are barred, in whole or in part, by the doctrine of

20    unclean hands.   Enigma has engaged in inequitable behavior by developing software products

21    exhibiting characteristics of "scareware," as well as through its pattern of threatening (and, here,

22    bringing) legal action against third parties like Malwarebytes to stifle any skepticism of Enigma's

23    suspect products and business practices.   Enigma also engaged in inequitable conduct through its

24    blocking of Malwarebytes's programs as part of Enigma's so-called "countermeasure" in response

25    to Malwarebytes's classification of RegHunter 2 and SpyHunter 4 as PUPs.

26

### SEVENTH AFFIRMATIVE DEFENSE

27    Enigma's claims are barred because Malwarebytes's alleged misconduct was neither the

28    proximate cause nor the cause in fact of plaintiffs' alleged losses, including because there were

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

intervening and/or superseding causes and/or other persons/entities caused the harm.  In particular, the independent decision making of individual consumers regarding whether or not to filter or block SpyHunter 4 and RegHunter 2, and relatedly whether or not to pay for or continue to pay for those products, sever the alleged causal effect of Malwarebytes's alleged misconduct.

## EIGHTH AFFIRMATIVE DEFENSE

Enigma's claims are barred, in whole or in part, to the extent they seek to impose liability based on actions by Malwarebytes' agents or employees, to the extent those actions were unforeseeable and/or outside the course and scope of that person's or entity's agency or employment; and because there are no facts to support any vicarious liability.  While Enigma makes various assertions regarding the statements of purported Enigma employees, forum members, and other individuals, those individuals did not have the authority to bind Malwarebytes or were otherwise acting outside the scope of their employment in making any wrongful statements about Enigma and its products.

## NINTH AFFIRMATIVE DEFENSE

Enigma's claims for injunctive relief are barred because, inter alia, there has been no violation of state, federal, or common law, and because there is no reasonable likelihood that any violation will be repeated.  Of particular note, Enigma itself has recognized that "Malwarebytes is no longer blocking Enigma's anti-malware software and thus, the case . . . will largely focus on liability and past damages (as opposed to ongoing/future damages or relief)."  (Dkt. 176.)  The injunctive relief claim is further barred because the adverse effects of an injunction far outweigh any benefit from an injunction.  Malwarebytes's PUP classifications and related labels provide consumers with information they can use to protect themselves and their computers from potentially unwanted programs and, specifically, Enigma's "scareware."

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred because the damages Enigma seeks are speculative and uncertain. Enigma alludes to a vague array of unidentified individuals—including current, former, and hypothetical future users of SpyHunter 4 and RegHunter 2—who supposedly were misled by Malwarebytes's PUP classification and related labels and then acted upon them to Enigma's

1   detriment.  But Enigma cannot even begin to describe how many such individuals exist or how it

2   intends to identify these individuals.  Even if it could, Enigma cannot show with the requisite degree

3   of certainty whether a given user would have paid (or would have continued to pay) for Enigma's

4   products, or for how long they would have made those recurring payments.

5                          **ELEVENTH AFFIRMATIVE DEFENSE**

6          Plaintiff's claims for punitive damages violate the due process clauses of the Fifth and

7   Fourteenth Amendments of US Constitution, as well as Article I, Section 6 of the New York

8   Constitution and Article I, Section 7 of California Constitution.  Any amount of punitive damages

9   awarded against Malwarebytes for its good faith and reasonable classification of Enigma's products

10  would constitute excessive and arbitrary punishment.

11                         **TWELFTH AFFIRMATIVE DEFENSE**

12         Plaintiff's claims for punitive damages fail to establish conduct upon which an award of

13  punitive damages may appropriately be based.   Malwarebytes's good faith and reasonable

14  classification of Enigma's products is not the sort of reprehensible conduct for which punitive

15  damages may be imposed; the retribution and deterrence purpose of punitive damages would not be

16  served by imposition of such damages here.   Moreover, punitive damages may not be awarded for

17  Lanham Act violations, *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal.

18  2012) ("Punitive damages are not recoverable under the Lanham Act[.]"), and such damages are

19  subject to a $1,000 limit under NYGBL § 349, *see, e.g.*, *Bristol Vill., Inc. v. La.–Pac. Corp.*, 916

20  F.Supp.2d 357, 371 (W.D.N.Y. 2013) (noting section 349 allows only "for the recovery of limited

21  punitive damages" and citing cases contemplating $1,000.00 as the relevant limit).

22                        **THIRTEENTH AFFIRMATIVE DEFENSE**

23         The Complaint fails to state a cause of action for which attorneys' fees may be awarded.

24  Malwarebytes's good faith and reasonable classification of Enigma's products does not constitute

25  the sort of "exceptional" case in which fees may be awarded under the Lanham Act.  *Harbor Breeze*

26  *Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 41 (9th Cir. 2022).  The California common

27  law similarly "provides that each party to a lawsuit must ordinarily pay his own attorney fees." *Jones*

28  *v. Goodman*, 57 Cal. App. 5th 521, 532 (2020).  This is likewise not the sort of alleged misconduct

1  warranting the Court's exercise of discretion to award attorneys under NYGBL 349.  *See* N.Y. Gen.

2  Bus. Law § 349 ("The court *may* award reasonable attorney's fees" (emphasis added)).

3  <u>**FOURTEENTH AFFIRMATIVE DEFENSE**</u>

4  Plaintiffs' claims and requests for relief are barred, in whole or in part, by Plaintiffs' failure

5  to exercise reasonable diligence in mitigating any claimed damages.  Instead of addressing

6  Malwarebytes's "scareware" concerns or otherwise attempting to address or rebut Malwarebytes's

7  good faith and reasonable classification of SpyHunter 4 and RegHunter 2 in the marketplace, Enigma

8  instead sought to bully Malwarebytes into changing its PUP criteria, culminating in the filing of this

9  lawsuit.

10  <u>**FIFTEENTH AFFIRMATIVE DEFENSE**</u>

11  Malwarebytes hereby gives notice that it intends to rely upon such other and further defenses

12  as may become available or apparent during pretrial proceedings in this action and hereby reserves

13  all rights to amend this Answer and all such defenses.

14

15  <u>**MALWAREBYTES INC.'S COUNTERCLAIMS**</u>

16  Defendant Malwarebytes Inc. ("Malwarebytes" or "Counter-Plaintiff") asserts these

17  counterclaims against Plaintiff Enigma Software Group USA, LLC ("Enigma," "ESG," or "Counter-

18  Defendant") as follows:

19  <u>**General Allegations**</u>

20

21  1.  For the last eight years, Enigma has tried to use this litigation to force Malwarebytes

22  to rewrite its software to benefit Enigma and to describe Enigma's products only in terms that Enigma

23  approves.  Instead of changing the deceptive business practices that led Malwarebytes to classify

24  Enigma's products as Potentially Unwanted Programs ("PUPs"), Enigma has tried to bully

25  Malwarebytes into recanting the latter's protected speech.  All the while, Enigma has engaged in the

26  very misconduct it wrongly alleges Malwarebytes committed.

27  2.  In October 2016, Malwarebytes revised its Potentially Unwanted Program ("PUP")

28  criteria to keep pace with the constantly evolving PUP landscape and protect its users.  Enigma's

1    SpyHunter 4 and RegHunter 2 programs—long recognized by members of the cybersecurity industry

2    as exhibiting the potentially unwanted characteristics of "scareware"—met Malwarebytes's new

3    criteria and were thus classified as PUPs.

4         3.     Enigma, in response, retaliated by launching a new SpyHunter 4 installer designed to

5    entirely delete Malwarebytes's products from a user's computer at the click of a button (the "MBAM

6    Uninstaller").    In an accompanying December 2016 press release, Enigma touted the MBAM

7    Uninstaller as merely "disabl[ing] MBAM, with user consent."   In actuality, the tool does not just

8    disable MBAM, but *removes* it from the user's computer altogether.   Worse yet, it does so by using

9    Malwarebytes's own, copyrighted software without permission—coupling consumer deception with

10   misuse of Malwarebytes's intellectual property rights and violation of its licensing agreement.

11        4.     The MBAM Uninstaller and press release also mislead consumers as to the nature and

12   functioning of MBAM, and what it means for MBAM to have classified SpyHunter 4 and RegHunter

13   2 as a PUP.  It deceptively claims MBAM and SpyHunter 4 cannot coexist on the same computer,

14   and that "[i]n order to install and use SpyHunter, you must uninstall MBAM."  Such assertions are

15   flatly false.  It is up to the Malwarebytes user whether to quarantine Enigma's products in the first

16   place, and even if they do, users can later choose to restore SpyHunter 4 from quarantine.  Far from

17   being fundamentally incompatible, MBAM and SpyHunter 4 can run side-by-side without issue if a

18   user so chooses—at least until a consumer uses the MBAM Uninstaller.

19        5.     Enigma's purpose in publishing and promoting this deceptive and harmful MBAM

20   Uninstaller—which remains available and operative to this day—was to benefit itself to the detriment

21   of both consumers and Malwarebytes.  By misleadingly characterizing what the MBAM Uninstaller

22   does in its press release, and then similarly manufacturing a non-existent "incompatibility" it blamed

23   on Malwarebytes's "unfair" acts, Enigma gave Malwarebytes users the false impression that

24   Malwarebytes was using unfair practices to the users' detriment, that they needed to download the

25   MBAM Uninstaller if they wanted to use Enigma's products, *and* that they then had to choose

26   between using MBAM and SpyHunter. In this way, Enigma pushed users to delete MBAM and use

27   (and ultimately purchase) SpyHunter.

28

6716415

6. If the foregoing sounds familiar, it should. Enigma has engaged in the very sort of false advertising, unfair competition, and tortious interference of which it meritlessly accuses Malwarebytes. To be clear, Malwarebytes does *not* concede liability in the underlying action or that its PUP classification and accompanying labels are actionable. Nothing in this counterclaim concedes that Enigma can satisfy any of the elements of its Lanham Act, NYGBL, or tortious interference claims. But, at a minimum, if Enigma is able to hold Malwarebytes liable, then Enigma is itself liable for engaging in much the same supposed wrongdoing. Malwarebytes therefore seeks, in the alternative, to recover for the harm it suffered, and continues to suffer, as a result of Enigma's malicious and retaliatory creation, promotion, and implementation of the MBAM Uninstaller.

**A. <u>The Parties</u>**

7. Counterclaimant Malwarebytes Inc. is a Delaware limited liability company with its principal place of business in Santa Clara, California.

8. Upon information and belief, counterclaim defendant Enigma is a Florida limited liability company with its principal place of business in Clearwater, Florida.

**B. <u>Jurisdiction and Venue</u>**

9. This Court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Additionally, the Court has subject matter jurisdiction because the case involves federal law (the Lanham Act, 15 U.S.C. § 1125(a)) and related state claims (such as California's Unfair Competition Law). *See* 28 U.S.C. §§ 1331, 1338.

10. This Court has personal jurisdiction over Enigma first because Enigma consented to this Court's jurisdiction by continuing to litigate its complaint following the case's transfer from the Southern District of New York.

11. Malwarebytes's counterclaims are compulsory and arise from the same transaction or occurrence as Enigma's Second Amended Complaint. Indeed, Enigma's allegations expressly reference, albeit in inaccurate faction, the subject matter of Malwarebytes's Counterclaims and rely on the same set of facts to support the claim that it attempted to mitigate its supposed damages. *See* Dkt. 140 ¶¶ 165-166. *See Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1141 (N.D. Cal.

1    2003) (plaintiff/counterclaim defendant "filed this action, and has therefore waived any objection to

2    personal jurisdiction with respect to compulsory counterclaims").

3          12.    Moreover, upon information and belief, the Northern District of California has

4    personal jurisdiction over Enigma for the additional reason that Enigma (i) regularly transacts

5    business in California and the Northern District of California; (ii) has committed tortious acts

6    purposefully directed toward harming—and in fact harming—Malwarebytes, a company

7    headquartered in the Northern District of California; (iii) has committed those tortious acts in

8    California and the Northern District of California by wrongly promoting and making available the

9    MBAM Uninstaller to remove MBAM on computers physically located in California and the

10   Northern District of California and/or by physically removing Malwarebytes's products from

11   computers physically located in California; and (iv) has committed tortious acts that have misled and

12   deceived consumers and businesses in California and the Northern District of California, and have

13   disrupted Malwarebytes's business relationships and disabled use of Malwarebytes's programs in

14   California.

15         13.    Venue is proper in this District because Enigma's claims in the underlying suit are

16   pending before this Court.  Additionally, a substantial portion of the events or omissions giving rise

17   to this action occurred and are occurring in this District, and Malwarebytes was harmed in this

18   District, where it is headquartered. *See* 28 U.S.C. §§ 1391(b)-(c).

19   **C. <u>Factual Background</u>**

20         14.    Malwarebytes is a leading software company that provides Internet security software.

21   Malwarebytes' programs protect customers from a variety of online threats, including among other

22   things malicious software (also known as malware) and potentially unwanted programs, or "PUPs."

23   Due to the ever-evolving nature of software, malware, and PUPs, Malwarebytes continuously

24   develops its criteria for detecting PUPs and updates those criteria as developers change their

25   programs to circumvent detection.

26         15.    To protect its users, on October 5, 2016, Malwarebytes revised and published new

27   criteria for identifying PUPs—as it had on many previous occasions.  Under these new criteria, a

28   program could be identified as a PUP if it used scare tactics or misleading alerts that induce users,

1    particularly less sophisticated ones, to purchase software or upgrades with the mistaken belief that

2    doing so is necessary to repair or protect their computers.

3        16.    PUPs of this sort are referred to as "scareware."  Scareware takes advantage of

4    Internet users who are less experienced in recognizing and safely navigating online scams, including

5    minors and elderly persons. These deceptive scare tactics exploit consumers' fear about spyware and

6    other threats, even when none exists, to trick them into entering costly subscriptions. Malwarebytes

7    also may identify programs that a user unintentionally installs, such as through bundled software, or

8    that are difficult to uninstall. Among its criteria, Malwarebytes also considers actual harm to

9    consumers by reviewing whether users have given a program predominantly negative feedback.

10       17.    Over the course of the past decade, Enigma has engaged in precisely such "scareware"

11   tactics, peddling to unsuspecting consumers software designed to deceive them into unnecessarily

12   purchasing its products.  Enigma's SpyHunter 4 and RegHunter 2 programs, specifically, met

13   Malwarebytes's revised PUP criteria, including but not limited to the fact that they confront users

14   with advertising when they attempted to uninstall Enigma's software, detect non-harmful operating

15   system files and browser cookies from reputable websites as "harmful malware objects" and

16   "threats," and received significant negative consumer feedback.

17

18

19

20

21

22

23

24

25

26

27

28

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415

18.     As just one illustrative example, SpyHunter 4 shows common Travelocity browser cookies as multiple threats and displays spiders (associated by many people with fear and danger) to deceive users into thinking their system is severely infected:



19.     Malwarebytes was not alone in classifying Enigma's products as "potentially unwanted" or similar based on the foregoing characteristics.  For example, AppEsteem—a software certification company whose credentials Enigma touts in its complaint—for a time labeled RegHunter 2 as a "Deceptor," which means AppEsteem considered that program to "engage in deceptive and risky behaviors that could harm consumers."  AppEsteem noted, in particular, that RegHunter 2 "exaggerates temp files and registry keys as errors . . . thereby misleading or scaring users to take action."

20.     Consumers have even sued Enigma for some of the very tactics that qualified its scareware for Malwarebytes' PUP classification.  And regulators like the FTC have made clear that the sort of "dark pattern" tactics employed by Enigma—i.e., digital design techniques meant to trick users into subscriptions or to trap them when they try to cancel—are against the law.[1]

---

[1] *See, e.g.*, "FTC to Ramp up Enforcement against Illegal Dark Patterns that Trick or Trap Consumers (Continued...)

1    21.    In response to these critiques, Enigma has carried out a long-term campaign of

2  threatening and suing those who dare express skepticism of its business practices.  It has sent cease

3  and desist letters to numerous reputable cybersecurity companies including Symantec, BitDefender,

4  CheckPoint Software, GRISOFT (now AVG Technologies), BullGuard, IKARUS Software, and G

5  Data Software for expressing unfavorable opinions or classifications of Enigma and/or its software.

6  And it has sued entities and individuals who have refused to comply with the terms of those threats.

7  *See, e.g.*, *Enigma Software Group USA LLC, v. Doyle*, 2:14-CV-00558 (D.Ariz.) (suit against

8  individual website owner for calling SpyHunter 4 "malware" and "scareware," among other

9  descriptions); *Enigma Software Group, Inc. v. Stark et al.*, 1:04-CV-07127 (S.D.N.Y.) (suit against

10  Lavasoft for classifying Enigma's products as "spyware").  It has even threatened a minor with

11  litigation for daring to express a negative experience with Enigma's software.  It was thus no surprise

12  that, just two days after Malwarebytes revised its PUP criteria, Enigma brought the underlying

13  lawsuit against Malwarebytes.

14    22.    Yet Enigma's bullying tactics did not stop there.   Instead, it developed and

15  implemented the MBAM Uninstaller, a tool that would install SpyHunter 4 and, in the process,

16  completely uninstall a user's Malwarebytes products.

17    23.    Enigma launched the MBAM Uninstaller on December 20, 2016.  Alongside the

18  launch, Enigma issued a press release stating that it "began notifying its customers today that

19  Malwarebytes . . . has begun intentionally blocking the installation and operation of ESG's

20  programs" and that this "created an immediate incompatibility between SpyHunter or RegHunter

21  coexisting on the same PC With MBAM."  The press release then extolled Enigma's purported

22  credentials and certifications, before going on to state that "ESG is notifying its customers that it has

23  developed an alternative SpyHunter installer that will enable those customers who wish to use

24  SpyHunter instead of MBAM to do so. The installer disables MBAM, with user consent, and allows

25  customers to install and use SpyHunter."  The press release also included a link to the MBAM

26  Uninstaller.

27

28  into Subscriptions," available at https://www.ftc.gov/news-events/news/press-releases/2021/10/ftc-
ramp-enforcement-against-illegal-dark-patterns-trick-or-trap-consumers-subscriptions.

1

24.     These representations were false, misleading, and deceptive on multiple levels.

2

25.     As an initial matter, the installer did not merely "disable[] MBAM" but uninstalled it

3

entirely.  A user who downloads the MBAM Uninstaller and then attempts to run it alongside MBAM

4

encounters the following message:

5

6

7

8

9

10



11

26.     Clicking "OK" begins a complete uninstallation of applicable MBAM products with

12

no further prompts, customization options, or user input.

13

27.     To accomplish this uninstallation, Enigma employs, without permission,

14

Malwarebytes's own uninstallation software: mbam-clean.exe.  Malwarebytes published the mbam-

15

clean.exe application in 2016 as part of the then-operative version of MBAM.  Despite having no

16

right to use this copyrighted intellectual property, Enigma copied the mbam-clean.exe program and

17

embedded it in its entirety in the MBAM Uninstaller.  Indeed, Enigma's conduct violated the End

18

User License Agreement ("EULA") that Malwarebytes includes with its products as a condition of

19

use.  The EULA requires each user to agree that the software is for personal consumer use only and

20

may not be used for business purposes. On information and belief, Enigma agreed to the EULA in

21

order to access the mbam-clean.exe software but nonetheless used that software for impermissible

22

business purposes, in violation of the EULA's terms, to drive consumers away from Malwarebytes.

23

24

25

26

27

28

1

28.    The MBAM Uninstaller then automatically initiates the SpyHunter regular installer:



29.    This is not the same as the promised "disabl[ing]" of MBAM, which suggests to the contrary that MBAM would remain (albeit in non-functional fashion) on the user's computer in case they wish to return to using it.  The true nature of the MBAM Uninstaller is only revealed to a user who goes through the trouble of downloading the tool and then reading Enigma's message.

30.    Likewise, Enigma's claims regarding the supposed "immediate incompatibility" between Enigma's products and MBAM, as well as Malwarebytes's purported "intentional[] blocking," are false, misleading, and deceptive.  These statements give users the impression that this is a zero-sum choice created by Malwarebytes's "unfair conduct," when in fact it is entirely possible to run SpyHunter 4 and MBAM alongside one another.

31.    Malwarebytes users who wish to run both Malwarebytes' software and PUPs like SpyHunter 4 and RegHunter 2 side by side can do so easily.  After users are told that Malwarebytes considered Enigma's programs as "potentially unwanted," users are given a choice about what to do next. Users can choose to "ignore" Malwarebytes' warning and continue running Enigma's program. Or they can choose to have Malwarebytes' software quarantine Enigma's program on their computer. And, even after choosing to quarantine a program, an MBAM user can choose to undo that decision at any time through MBAM's settings, or even to exempt Enigma's programs from PUP detection altogether.

32.     Malwarebytes's PUP designation thus creates no "immediate incompatibility" nor has Malwarebytes "intentionally block[ed]" anything by designating SpyHunter 4 and RegHunter 2 as such or engaged in "unfair conduct."  The consumer, not Malwarebytes, decides what to do with Enigma's programs.  Enigma's representations to the contrary, both in its press release and in the MBAM Uninstaller itself, are false and misleading.

33.     By making these false and misleading statements about the MBAM Uninstaller, and about Malwarebytes and MBAM itself, Enigma deceives Malwarebytes users as to both how the tool operates and the reason for it—pushing Malwarebytes users to uninstall MBAM in favor of Enigma's products in the process.

34.     By suggesting first that the MBAM Uninstaller merely "disable[d]" MBAM, Enigma increased the likelihood that a Malwarebytes user would download and employ the tool.  It did so by lowering the stakes of the user's decision, since the term "disable[d]" suggests MBAM would remain available on the user's computer should a user change their mind as to which program they wanted to use.

35.     By mischaracterizing the non-existent "incompatibility" created by Malwarebytes's designation of Enigma's products as PUPs, Enigma gave Malwarebytes users the false impression that they both needed to download the MBAM Uninstaller if they wanted to use Enigma's products *and* that they then had to choose between using MBAM and SpyHunter.

36.     Furthermore, Enigma's statements were intended to, and did, give the false and misleading impression that Malwarebytes was engaging in "unfair conduct," to the users' detriment.  Enigma's statements thereby misled users to believe it was necessary to disable (or, as was ultimately the case, uninstall) Malwarebytes's MBAM product.

37.     This multi-tiered deception was intended to and did drive users away from Malwarebytes and to Enigma.  Setting up a false choice between Malwarebytes and Enigma and claiming that this incompatibility is the result of Malwarebytes's "unfair" conduct—all while touting Enigma's credentials and certifications in the accompanying press release—evinces Enigma's intent to mislead users into uninstalling MBAM in favor of SpyHunter 4 and RegHunter 2.

6716415

38.    Enigma's misstatements had their intended effect on the targeted Malwarebytes's customers.    As a result of Enigma's implementation and misleading promotion of the MBAM Uninstaller, Malwarebytes suffered a drop in its sales and renewals of subscriptions for MBAM. Malwarebytes users who fell prey to Enigma's deception and used Enigma's MBAM Uninstaller did not just have MBAM blocked or quarantined—MBAM was *entirely removed* from their computers. These users therefore ceased using and paying for MBAM.

39.    The MBAM Uninstaller and accompanying misstatements remain available online and thus Malwarebytes continues to suffer harm based on the continued deception of consumers who view these misstatements and/or use the MBAM Uninstaller.

40.    Malwarebytes has no adequate remedy at law for certain of the relief requested below.

41.    Given the foregoing facts, it is evident that Enigma has engaged in the very misconduct it wrongly alleges against Malwarebytes.    Malwarebytes, to reiterate, does not concede Enigma's claims are actionable or that Enigma can meet any of the elements of its claims.    But, at a minimum, if Malwarebytes is liable then so is Enigma for its unlawful statements and conduct in connection with the MBAM Uninstaller.

## First Cause of Action

### (Lanham Act - 15 U.S.C. § 1125(a))

42.    Malwarebytes restates and realleges the foregoing factual allegations of its Counterclaim as if fully set forth herein.

43.    Enigma's use in commerce of false and misleading statements about Malwarebytes and its products—including but not limited to statements that Malwarebytes is "intentionally blocking SpyHunter and RegHunter," that Malwarebytes "creat[ed] an immediate incompatibility between SpyHunter and MBAM coexisting on the same PC," that Malwarebytes engaged in "unfair conduct," and that "[i]n order to install and use SpyHunter, you must uninstall MBAM"—constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

44.    Enigma has disseminated its false and misleading statements about Malwarebytes and MBAM in commercial advertisements and promotions, including through its December 20, 2016

1    press release, the direct communications with Enigma users referenced therein, and via the MBAM

2    Uninstaller itself.

3        45.    Enigma's use in commerce of false and misleading statements about Malwarebytes

4    and MBAM, as well as the associated need for and effect of Enigma's MBAM Uninstaller, is likely

5    to deceive (and has deceived) a substantial portion of their intended audience (Malwarebytes users

6    who also use or are considering using Enigma's products) as to the nature and function of MBAM

7    products, including causing consumers to believe that MBAM products are unfairly interfering with

8    users' cybersecurity options and that they must remove MBAM if they want to use Enigma's

9    products.

10        46.    Such deception is material because it is likely to influence consumers to uninstall

11    MBAM via the MBAM Uninstaller and thus cease doing business with Malwarebytes and, instead,

12    to utilize and subscribe to Enigma's products.  Indeed, that is the express (and false) message

13    presented by the MBAM Uninstaller tool and accompanying press release—you *must* choose

14    between Enigma and Malwarebytes because of what Malwarebytes has done, and you should choose

15    Enigma.

16        47.    Enigma's false and misleading statements are part of its organized, longstanding

17    anticompetitive campaign meant to stifle criticism and inaccurately present itself as a legitimate

18    member of the Internet security industry.  In this instance, that scheme has manifested in an effort to

19    unfairly drive consumers away from Malwarebytes and to Enigma, including to its paid SpyHunter

20    4 and RegHunter 2 products.

21        48.    As a direct and proximate result of Enigma's unlawful acts, Malwarebytes has

22    suffered and will continue to suffer monetary and reputational injury, including losses of sales and a

23    lessening of goodwill associated with its products, in amounts that will be proven at trial.

24                        **Second Cause of Action**

25    (Violation of California's Unfair Competition Law ("UCL") under California Business and
                        Professions Code §§ 17200, *et seq.*)

26        49.    Malwarebytes restates and realleges the foregoing factual allegations of its

27    Counterclaim as if fully set forth herein.

28

6716415

50.    California's UCL provides a private right of action against any person who engages in "unfair competition." Any person who has "suffered injury in fact and has lost money or property as a result of the unfair competition" may bring suit. The UCL has three "prongs," prohibiting any "unlawful," "fraudulent" or "unfair" business act or practice.

51.    Enigma has violated the "unlawful prong" because its misconduct violates several state and federal laws and regulations. Enigma's misleading statements regarding MBAM and Malwarebytes in connection with the MBAM Uninstaller violate California's False Advertising Law and the Federal Lanham Act, as alleged herein.

52.    Enigma has violated the "fraudulent prong" by misleading the public. Enigma engaged in a concerted effort to mislead consumers as to the nature and operation of MBAM, deceiving Malwarebytes users into believing Malwarebytes was forcing them to choose between SpyHunter/RegHunter and MBAM and thereby diverting sales away from Malwarebytes and to Enigma.

53.    Enigma has violated the "unfair prong" because its conduct violates public policy. As embodied in California's False Advertising Law, California has a strong policy in favor of truthful advertising—interests that are heightened still further by the fact that Enigma's deception arises in the context of Internet security. Enigma's conduct also violates this prong because it is unethical and unscrupulous. It has implemented a scheme to harm Malwarebytes by making false claims about MBAM and misleading users into believing they must uninstall MBAM if they wish to continue using Enigma's products.  It has done so, moreover, by copying Malwarebytes's protected intellectual property without permission.

54.    Enigma's unlawful, unfair, and fraudulent practices have caused and continue to cause substantial and irreparable commercial injury to Malwarebytes. Malwarebytes has lost and will continue to lose sales, profits, and goodwill as a result of Enigma's conduct.

55.    These substantial injuries are not outweighed by any countervailing benefits to consumers, particularly because of California's policy in favor of truthful advertising.

56.    Unless restrained, Enigma will continue to cause further competitive and commercial harm to Malwarebytes.

57.    Malwarebytes has no adequate remedy at law and is entitled to injunctive relief and restitution.

### Third Cause of Action

(Violation of California's False Advertising Law ("FAL") under California Business and Professions Code §§ 17500, *et seq.*)

58.    Malwarebytes restates and realleges the foregoing factual allegations of its Counterclaim as if fully set forth herein.

59.    California's FAL prohibits "untrue or misleading" statements in "any advertising device . . . or in any other manner or means whatever, including over the internet" concerning "any circumstance or manner of fact" about a product.

60.    Enigma has advertised its MBAM Uninstaller via the Internet, including a press release, direct communication with users, and via MBAM Uninstaller itself, with the intent to increase the sales of its SpyHunter and RegHunter products in California and to induce users to purchase the paid versions of those products.

61.    Enigma's conduct violates the FAL. It has made false and misleading descriptions of fact about MBAM and Malwarebytes. Those statements misrepresent the nature and characteristics of MBAM, as well as the effect of and reason for Malwarebytes's PUP classification—statements that are expressly false, impliedly false, or both—all while simultaneously misrepresenting effect of the MBAM Uninstaller and the efficacy of its own products more generally.

62.    Enigma knew or should have known that its advertising activities are false, misleading, and deceptive.

63.    Enigma's false and misleading statements have deceived and have the tendency to deceive a substantial segment of their intended audience—Malwarebytes users who also use or are considering using Enigma's products—about matters material to those users' purchasing decisions.

64.    Enigma's violations have proximately harmed Malwarebytes. As a result of Enigma's violations, Malwarebytes has suffered and will continue to suffer damage to its business and goodwill. Malwarebytes has lost and will continue to lose sales and profits and incur increased advertising and marketing costs.

65.    Enigma has acted with oppression, fraud, or malice, entitling Malwarebytes to an award of punitive damages.

66.    Enigma has acted willfully, in bad faith, and with malice. Unless restrained, Enigma will continue to cause further irreparable competitive and commercial injury to Malwarebytes.

67.    Malwarebytes has no adequate remedy at law and is entitled to injunctive relief and restitution.

**Fourth Cause of Action**

(Intentional Interference with Contractual Relations)

68.    Malwarebytes restates and realleges the foregoing factual allegations of its Counterclaim as if fully set forth herein.

69.    Malwarebytes has contractual relations with paid users of its MBAM product across the United States, including California. Malwarebytes offers free downloads of its MBAM and other products, as well as a "premium" version of those products available for purchase.  Customers pay a monthly fee for the "premium" version of MBAM, which includes additional detection and protection features depending on the subscription type.  In order to become a paid subscriber, MBAM premium users agree to Malwarebytes's Software License Agreement, which specifies the various terms and conditions of the contractual relationship between the parties.[2]  These subscriptions are sold in one and two-year terms.

70.    At all relevant times, Enigma knew or should have known of these contracts. It is well known in the Internet security industry that companies like Malwarebytes offer paid versions of its products.  Enigma's Second Amended Complaint in the underlying proceeding evinces its awareness of Malwarebytes's paid "premium" MBAM product.

71.    Enigma intentionally and improperly have interfered and continue to interfere with Malwarebytes's contractual relations with users.  The purpose of the MBAM Uninstaller was to entirely remove MBAM from a Malwarebytes user's computer.  It is axiomatic that removal of the

---

[2] https://www.malwarebytes.com/eula

1  MBAM product disrupts the relationship between Malwarebytes and the former user of MBAM,

2  particularly if the former user was a paid user.

3      72. By disrupting Malwarebytes's contractual relations in this way, Enigma sought to

4  convert MBAM users into SpyHunter users by immediately thereafter beginning the SpyHunter 4

5  installation process upon removal of MBAM.

6      73. There is no legitimate justification for Enigma's tortious interference with

7  Malwarebytes's contractual relations with users.

8      74. As a proximate result of Enigma's interference, Malwarebytes has suffered and will

9  suffer irreparable harm and monetary damages by, among things, (i) losing revenue and profits, (ii)

10 losing sales of its products, (iii) damage to its reputation and goodwill, and (iv) damage to its

11 relationships with its users.

12     75. Enigma has acted willfully, in bad faith, with malice, or with the intent to oppress

13 Malwarebytes. Malwarebytes is entitled to injunctive relief, compensatory damages, and punitive

14 damages.

15                 **Fifth Cause of Action**

16       (Intentional Interference with Prospective Economic Relations)

17     76. Malwarebytes restates and realleges the foregoing factual allegations of its

18 Counterclaim as if fully set forth herein.

19     77. As noted above, Malwarebytes has contractual relations with paid users of its MBAM

20 product across the United States, including California. Malwarebytes offers free downloads of its

21 MBAM and other products, as well as a "premium" version of those products available for purchase.

22 Customers pay a monthly fee for the "premium" version of MBAM, which includes additional

23 detection and protection features depending on the subscription type.

24     78. At all relevant times, Enigma knew or should have known of these contracts. It is well

25 known in the Internet security industry that companies like Malwarebytes offer paid versions of its

26 products. Enigma's Second Amended Complaint in the underlying proceeding evinces its awareness

27 of Malwarebytes's free and paid "premium" MBAM product, and users' subscriptions thereto. *E.g.*,

28 Dkt. 140 ¶¶ 64-66.

79. It is well known that free users of Malwarebytes's products may choose to upgrade their Malwarebytes experience by purchasing a subscription to the "premium" MBAM product. It is also well known that such premium MBAM subscriptions, by definition, require renewal to remain in effect. Enigma's Second Amended Complaint in the underlying proceeding evinces its awareness of the fact that Malwarebytes users may upgrade to the paid "premium" MBAM subscription, and that those users thereafter must renew their subscriptions every so often. *E.g.*, Dkt. 140 ¶¶ 64-66.

80. Enigma has intentionally and improperly interfered, and continues to interfere, with Malwarebytes's economic relations with its users. The purpose of the MBAM Uninstaller was to entirely remove MBAM from a Malwarebytes user's computer. It is axiomatic that removal of the MBAM product disrupts the relationship between Malwarebytes and the former user of MBAM, including by causing a free Malwarebytes user to cease using MBAM and thus not decide to upgrade to a paid subscription and by causing paid Malwarebytes subscribers to cease using MBAM and thus end and/or not renew their subscriptions.

81. There is no legitimate justification for Enigma's tortious interference with Malwarebytes's economic relations with its own users. And Enigma's interference was independently wrongful because it accomplished this interference by violating the Lanham Act and California's Unfair Competition and False Advertising Laws.

82. As a proximate result of Enigma's wrongful interference, Malwarebytes has suffered and will suffer irreparable harm and monetary damages by, among things, (i) losing revenue and profits, (ii) losing sales of its products, (iii) damage to its reputation and goodwill, and (iv) damage to its relationships with users.

83. Enigma has acted willfully, in bad faith, with malice, or with the intent to oppress Malwarebytes. Malwarebytes is entitled to injunctive relief, monetary damages to compensate for the loss benefits of its reasonable business expectancies, consequential damages caused by Enigma's intentional interference, compensatory damages, and punitive damages.

### Sixth Cause of Action

(Breach of End User License Agreement)

6716415

84.     Malwarebytes restates and realleges the foregoing factual allegations of its Counterclaim as if fully set forth herein.

85.     Malwarebytes requires as a condition of use of its software that the user agree to the EULA.  The EULA prohibits the user from using Malwarebytes' software, including the mbam-clean.exe software, for business purposes.

86.     On information and belief, Enigma agreed to the terms of the EULA in order to gain access to the mbam-clean.exe software.

87.     Contrary to the terms of the EULA, Enigma used the mbam-clean.exe software for the impermissible business purpose of copying and reproducing it to create the MBAM Uninstaller as part of its scheme to divert consumers from Malwarebytes to Enigma.

88.     As a proximate result of Enigma's breach of the EULA, Malwarebytes has suffered and continues to suffer damages and irreparable harm, including by, among things, (i) losing revenue and profits, (ii) losing sales of its products, (iii) damage to its reputation and goodwill, and (iv) damage to its relationships with its users.

## **PRAYER FOR RELIEF**

Defendant/Counter-Plaintiff prays for judgment in their favor, and against Enigma, as follows:

1.     That judgment be entered in favor of Defendant, and against Enigma on all of Enigma's causes of action, and that Enigma's action be dismissed in its entirety with prejudice;

2.     That Enigma take nothing by this action;

3.     That the Court award Defendant/Counter-Plaintiff compensatory and punitive damages, in an amount to be proven at trial;

4.     That the Court award Defendant/Counter-Plaintiff statutory damages as available under applicable law;

5.     That the Court grant pre-judgment interest to Defendant/Counter-Plaintiff on all such damages, monetary, or otherwise;

6.     That the Court grant injunctive relief barring Enigma from engaging in the unlawful

1    conduct described in the Counterclaims;

2        7.        That the Court award Defendant/Counter-Plaintiff its costs and expenses, including

3    attorneys' fees, incurred in connection with this action, to the full extent permitted by law; and

4        8.        That the Court award such other and further relief as it may deem just and proper.

5

6

7    Dated:  August 5, 2024                    HUESTON HENNIGAN LLP

8

9

10                                    By:  _____

11                                    Moez. M. Kaba
                                        Michael H. Todisco
12                                    Spencer Schmider
                                        Warren Crandall
13                                    Hueston Hennigan LLP
                                        Attorneys for Defendant
14                                    MALWAREBYTES INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>NOTICE OF SERVICE</u>**

2    I certify that on August 5, 2024, the forgoing was filed electronically using CM/ECF.  Notice

3  of this filing will be sent to all parties by operation of the Court's electronic filing system.

4    <u>/s/ Moez M. Kaba                    </u>
Moez M. Kaba
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MALWAREBYTES INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

6716415